

1   JOHN BALESTRIERE*

2   CRAIG STUART LANZA*
    **BALESTRIERE LANZA PLLC**

3   225 Broadway, Suite 2900
    New York, NY 10007

4   Telephone: (212) 374-5404

5   Facsimile:  (212) 208-2613
    * *Pro Hac Vice* application pending

6

7   MATTHEW A. SIROKA (CASBN 233050)
    **LAW OFFICE OF MATTHEW A. SIROKA**

8   600 Townsend Street, Suite 233050
    San Francisco, CA 94103

9   Telephone: (415) 522-1105

10  Facsimile:  (415) 522-1506
    *Liaison Counsel*

11

12  **FILED**
    JUN - 8 2009
    RICHARD W. WIEKING
    CLERK, U.S. DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA

    **SEALED**
    **BY COURT ORDER**

    **BZ**

    **UNITED STATES DISTRICT COURT FOR THE**
    **NORTHERN DISTRICT OF CALIFORNIA**

13  **CV  09      2457**

14  **JOHN C. PRATHER**  on behalf of himself and
    the **UNITED STATES OF AMERICA** and the

15  several states of  **CALIFORNIA, DELAWARE,**
    **FLORIDA, ILLINOIS, INDIANA,**

16  **MASSACHUSETTS, NEVADA, NEW**
    **HAMPSHIRE, NEW JERSEY, NEW MEXICO,**

17  **NEW YORK, RHODE ISLAND, VIRGINIA,** as
    well as the **DISTRICT OF COLUMBIA**

18

19                                        Plaintiff/Relator,

20

21               -against-

22  **AT&T INC., CELLCO PARTNERSHIP** d/b/a
    **VERIZON COMMUNICATIONS, QWEST**

23  **COMMUNICATIONS INTERNATIONAL,**
    **INC., SPRINT NEXTEL CORP.,** and

24  **TELEPHONE AND DATA SYSTEMS, INC.**

25                                        Defendants.

Case No.: _____
(Federal and State-*Qui tam*)

**FILED UNDER SEAL**

**COMPLAINT**

**JURY TRIAL DEMANDED**

26

27

28

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

JOHN C. PRATHER, *ex rel. v.* AT&T, INC., *et al.* - COMPLAINT
Case No:

RELATOR JOHN C. PRATHER ("Relator" or "Prather") brings this *qui tam* action on behalf of the United States, to recover monies paid by the Federal Bureau of Investigations ("FBI") and the Department of Justice ("DOJ"), and State Law Enforcement Agencies (State and Federal Government Law Enforcement Agencies, collectively "the Law Enforcement Agencies") on the basis of false claims submitted by the nation's telecommunication carriers ("Telecoms" or "Defendants")—to the federal government under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and the thirteen States of California, Delaware, Florida, Illinois, Massachusetts, New Hampshire, New Jersey, New Mexico, New York, Nevada, Rhode Island, Virginia, as well as the District of Columbia (thirteen states and the District of Columbia, collectively, "the States") under the States' individual false claims acts, as enumerated below, by and through his attorneys Balestriere Lanza PLLC, and respectfully alleges as follows upon information and belief:

## PRELIMINARY STATEMENT

1.      For over a decade, the Nation's Telecommunications Carriers ("Telecoms" or "Carriers") have defrauded America's prosecutors.  The Telecoms have overcharged the federal government as well as various state and local governments (States' and local governments and the federal government, collectively "the Governments") and the Law Enforcement Agencies for the use of lawful eavesdropping.  Specifically, the Telecoms have overcharged the Law Enforcement Agencies – the FBI, the DOJ, both state and federal prosecutors and police departments – for the costs involved in "wiretapping" – the electronic capturing of phone conversations to which law enforcement is not a party

– and similar electronic capturing of illicit communications information (collectively "eavesdropping" or "electronic surveillance").  An unavoidable result is that the Law Enforcement Agencies, strapped for cash since they've overpaid for eavesdropping, do not have enough funds to conduct all the investigations they need to conduct.  This means that there is not enough money to fund eavesdropping in some criminal investigations which would be helped tremendously by electronic surveillance.  Even more disturbing is that the type of investigations that call for eavesdropping usually involve the most serious crimes:  terrorism, drug trafficking, and organized crime.  The risk to the Nation from Defendants' misconduct is as obvious as it is grave.

2.      In 1994, President Clinton signed into law the Communications Assistance to Law Enforcement Agencies Act ("CALEA"), designed to update the eavesdropping capabilities of the Nation's Law Enforcement Agencies. The Telecoms have responded to CALEA, intended to make eavesdropping more accessible to the Governments, by engaging in a massive overcharging fraud for two reasons:  first, the eavesdropping budget of the Governments are not generally scrutinized by the media or public; and, second, the average citizen or even legislator does not understand the mechanics of eavesdropping sufficiently to question the charges the way an individual prosecutor, such as the Relator here, has been able to do after seeing outrageously high and unjustified invoices.

3.      Defendants' scheme is simple: in clear violation of the law, acting in parallel, the Telecoms have charged the Governments decidedly more than the reasonable expenses for eavesdropping services.  The prices charged to the Governments

are enormously more than those companies would charge a reasonable businessperson for the exact same equipment or communications service. Although private individuals obviously are not in the business of legal eavesdropping, the equipment and services involved are very similar to general communications goods and services which the Defendants provide, at a substantially lower price, in a competitive market, to private citizens and companies.

4.     Suggesting a possible conspiracy, the Defendants, normally competitors, have all engaged in the same fraud. Defendants are acting in the apparently correct belief that, generally, a prosecutorial or investigative agency will simply pay its eavesdropping bills with little question as to price when taking on terrorism and organized crime.

5.     The harm resulting from Defendants' behavior should not be underestimated and cannot be dismissed. This is not a typical *qui tam* action, where the "only" harm done is that taxpayers are being ripped off and the Government's trust in a company is abused. It is far worse.

6.     This false claims action seeks to end this ongoing practice, allowing the defrauded Governments' agencies to spend their limited resources more productively, and force the Telecoms to pay back the tens, if not hundreds, of millions of dollars, that Defendants have insidiously squeezed from the Federal Government and various States across the Nation.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

TABLE OF CONTENTS ........................................................................................... 4

JURISDICTION AND VENUE ................................................................................ 7

Subject Matter Jurisdiction ...................................................................................... 7

Personal Jurisdiction ................................................................................................. 7

Venue 7

Specific Statutes ......................................................................................................... 8

Service upon the Governments ............................................................................... 9

Original Information .................................................................................................. 9

PARTIES ..................................................................................................................... 10

Relator 10

Carrier Defendants .................................................................................................... 11

STATEMENT OF FACTS .......................................................................................... 12

Manual and Digital Wiretaps ................................................................................. 12

The Impact of the Communications Assistance for Law Enforcement Act ...... 13

Telecoms Exploited the Governments by Withholding Pricing Information and

    Massively Overcharging the Government ........................................................ 15

Defendants Still Submit False Claims, Overcharging for Intercept Costs. ....... 17

    Carriers Overcharge Individual Prosecutors for Eavesdropping Services. ....... 17

    Carriers Choose the Most Expensive Method to Provide the Eavesdropping

        Service. ............................................................................................................. 18

Details of the Telecoms' Fraud Pursuant To Rule 9(B) ...................................... 19

    Carriers Submitted False Claims to the Governments .................................... 19

Relator's Personal, Non-Public Knowledge and Evidence Provides the ......... 20

Government with the Key to Prevent Continued Abuse ...................................... 20

    The Hard Evidence ............................................................................................ 20

1    Personal Knowledge ....................................................................................... 22

2    CLAIMS AGAINST ALL DEFENDANTS ..................................................... 23

3    FEDERAL CLAIMS AGAINST CARRIERS ................................................. 23

4    FIRST CAUSE OF ACTION ............................................................................ 23

5        Violation of Federal False Claims Act, *inter alia*, 31 U.S.C. § 3729, *et seq* ........... 23

6    STATE CLAIMS AGAINST CARRIERS, BY STATE ................................... 24

7    SECOND CAUSE OF ACTION ...................................................................... 24

8        Violation of California False Claims Act, Cal. Govt. Code §§ 12650 - 12655 ...... 24

9    THIRD CAUSE OF ACTION ........................................................................... 25

10       Violation of Delaware False Claims Act, Del. Code Ann. Tit. 6 §§ 1201 – 1209. 25

11   FOURTH CAUSE OF ACTION ....................................................................... 25

12       Violation of District of Columbia False Claims Act, D.C. Code §§ 2-308.03 – 2-

13       308.21 ....................................................................................................... 25

14   FIFTH CAUSE OF ACTION ........................................................................... 25

15       Violation of Florida State False Claims Act, Fla. Stat. Ann. §§ 68.081 – 68.093 .. 25

16   SIXTH CAUSE OF ACTION ........................................................................... 26

17       Violation of Illinois False Claims Act, Ill. Comp Stat. Ann. 740 ILCS §§ 175/3 -

18       175/8 ......................................................................................................... 26

19   SEVENTH CAUSE OF ACTION ..................................................................... 26

20       Violation of Chicago False Claims Act, Municipal Code of Chicago, Title 1,

21       Chapter 1-22 .............................................................................................. 26

22   EIGHTH CAUSE OF ACTION ....................................................................... 27

23       Violation of Indiana False Claims Act, Ind. Code. Ann. §§ 5-11-5.5-2 – 5-11-5.5-

24       18 .............................................................................................................. 27

25   NINTH CAUSE OF ACTION ........................................................................... 27

26       Violation of Massachusetts False Claims Act, Mass. Gen. Laws Ann. Ch. 12 §5c

27       ................................................................................................................. 27

28   TENTH CAUSE OF ACTION .......................................................................... 28

Violation of Nevada False Claims Act, Nev. Rev. Stat. Ann. §§357.010 – 357.250 .................................................................................................... 28

ELEVENTH CAUSE OF ACTION ........................................................................ 28

Violation of New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §167:61 .. 28

TWELFTH CAUSE OF ACTION .......................................................................... 28

Violation of New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1 ................. 28

THIRTEENTH CAUSE OF ACTION ................................................................... 29

Violation of New Mexico False Claims Act, N.M. Stat. § 44-9-3 ........................... 29

FOURTEENTH CAUSE OF ACTION ................................................................. 29

Violation of New York False Claims Act, N.Y. State Fin. Law § 189 ................... 29

FIFTEENTH CAUSE OF ACTION ....................................................................... 30

Violation of New York City False Claims Act, Title 7, Chapter 8 §7-803 ........... 30

SIXTEENTH CAUSE OF ACTION ....................................................................... 30

Violation of Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-3 ................ 30

SEVENTEENTH CAUSE OF ACTION................................................................ 31

Violation of Virginia False Claims Act, VA. Code Ann. § 8.01-216.1 ................... 31

PRAYER FOR RELIEF............................................................................................ 32

## JURISDICTION AND VENUE

7.     This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("Federal Act") and the various states' false claims acts ("States' Acts") as detailed below. (Federal Act and States' Acts, collectively, "the Acts"). (See Compilation of the Acts, attached hereto as Exhibit A.)

### Subject Matter Jurisdiction

8.     This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question).

### Personal Jurisdiction

9.     This Court has personal jurisdiction over Defendants AT&T, Verizon, Qwest, Sprint Nextel, and TDS because, pursuant to 31 U.S.C. § 3732(a), this action is brought under 31 U.S.C. § 3730 against multiple defendants, at least one of which transacts business in California.

### Venue

10.     Venue is proper in the Northern District of California pursuant to 31 U.S.C. § 3732(a) because many Defendants transact business in this District, and many of the acts proscribed in 31 U.S.C. § 3729 occurred in the State of California and in this District. Given California's status as the most populous state in the Nation, with robust federal and local law enforcement investigators, more intercept transactions took place in California than in any other state in 2007, the last year for which data is currently available.

11.     This District Court has jurisdiction over all claims brought under the

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

various States' Acts for recovery of funds paid by each of the States pursuant to 31 U.S.C. § 3732 (b) since the actions arise out of the same occurrence as the action brought under 31 U.S.C. § 3730 of the Federal False Claims Act.

## Specific Statutes

12.     This is a civil action Plaintiff brings on behalf of the United States (under the Federal False Claims Act 31. U.S.C. § 3729(a)(1)) and on behalf of the States of California, Delaware, Florida, Illinois, Indiana, Massachusetts, New Hampshire, New Jersey, New Mexico, New York, Nevada, Rhode Island, Virginia as well as the District of Columbia and against Defendants under the States' Acts, specifically, the California False Claims Act, C.G.C. § 12650; the Delaware False Claims and Reporting Act, 6 D.C. § 1201; the Florida False Claims Act, F.S. § 68.081; the Illinois Whistleblower Reward and Protection Act, I.C. § 5-11; the Massachusetts False Claims Act, M.G.L. ch. 159 § 18; the New Hampshire False Claims Act, N.H. R.S. § 167:61; the New Jersey False Claims Act, N.J.S. § 2A: 32C-1; the New Mexico Fraud Against Taxpayers Act, N.M.S. § 44-9-3; the New York False Claims Act, N.Y.S. Fin. L. § 189 (McKinney); the Nevada Submission of False Claims to State or Local Government Act, N.R.S. § 357.010; the Rhode Island State False Claims Act, R.I. G.L. § 9.1; the Virginia Fraud Against Taxpayers Act, VA. Code § 8.01; as well as the District of Columbia False Claims Act, DC CODE § 2-308.03, respectively. (See Exhibit A.)

13.     While the Defendants have apparently defrauded nearly all, if not all, fifty States in the Nation, only the States listed here have non-Medicaid related false claims acts which give rise to false claims causes of action. The Telecoms' misconduct has

1    touched every corner of the country.

## Service upon the Governments

14.    Relator has served a copy of the Complaint to the United States (to both the United States Attorney for this District and to the United States Department of Justice in Washington, D.C.), as well as to the states of California, Delaware, Florida, Illinois, Massachusetts, New Hampshire, New Jersey, New Mexico, New York, Nevada, Rhode Island, Virginia, as well as the District of Columbia, together with a written disclosure statement setting forth and enclosing all material evidence and information he possesses, pursuant to the requirements of 31 U.S.C. § 3730(b)(2) and Rule 4 of the Federal Rules of Civil Procedure. (See Disclosure Statement Dated December 9, 2008, and List of Agencies served, attached hereto as Exhibit B.)

15.    Relator has complied with all other conditions precedent to bringing this action.

## Original Information

16.    This claim satisfies the jurisdictional requirements of the Federal Act, 31 U.S.C. § 3730(e), and all of the States' Acts.  None of the claims in this Complaint are based upon publicly disclosed allegations or transactions.    Although supporting information contained in this Complaint has been compiled using sources enumerated by 31 U.S.C. § 3730(e)(4), those reports did not specifically allege fraud, and contain only limited information regarding the nature of eavesdropping charges.

17.    Relator brings this claim pursuant to 31 U.S.C. § 3729, et seq., as a former organized crime prosecutor knowledgeable about eavesdropping and government

investigations and with specific documentary evidence of the action. Relator is acting as a dutiful citizen regarding matters of public concern and does not base this Complaint on publicly disclosed allegations or transactions.

## PARTIES

### Relator

18.     Relator is a citizen of New York and a career prosecutor who has been in government service for more than three decades. Relator currently serves as the Deputy Inspector General for Investigation in the office of the Metropolitan Transportation Authority, Office of the Inspector General. From September, 2002, until June, 2008, Relator served as the Deputy Attorney General in charge of the Statewide Organized Crime Task Force ("OCTF") at the New York Attorney General's office.

19.     Relator has direct knowledge of Telecoms fraudulent overcharging of the Government and brings this action on behalf of himself as well as the United States of America, the States of California, Delaware, Florida, Illinois, Massachusetts, New Hampshire, New Jersey, New Mexico, New York, Nevada, Rhode Island, Virginia, and the District of Columbia.

20.     Relator's extensive knowledge of eavesdropping and his interest in this action are the result of a career which, before OCTF, include, working in the North Carolina Attorney General's Office, as an Assistant to the District Attorney ("ADA") in the New York County District Attorney's Office ("DANY"), and as an Assistant Attorney General in both the North Carolina and New York State Office of the Attorney General.

21.     By 1989, Relator was serving as Deputy Chief of the Frauds Bureau at DANY, and by 1992 he was a Senior Investigative Counsel in the Rackets Bureau. In 1996, Relator became the First Assistant and Counsel in the School Construction Authority Inspector General's Office, where he played a role in the John Gotti Investigation, and also assisted the Rackets Bureau from this position in dealing with wiretaps.

22.     In 1999, Relator joined the New York State Attorney General's Office as an Assistant Attorney General and Deputy Chief of the Criminal Division.

23.     Then, in October of 1999, Relator was dispatched to White Plains to assist the then Deputy Attorney General in charge of OCTF. In 2002, New York Republican Governor George Pataki and Democratic Attorney General Eliot Spitzer jointly appointed Relator to the position of Deputy Attorney General in charge of OCTF. In this capacity Relator was invited to take part in the Law Enforcement Executive Forum at the FBI's CALEA unit headquarters, discussing issues with the CALEA statute and proposed amendments, as well as the various practices of Telecoms regarding CALEA compliance and cost. Relator, working with staff from the Department of Justice and the United States Department of State, was sent to teach a crash course on wiretapping and other techniques used in investigating organized crime to police and prosecutors in Skopje, Macedonia.

### Carrier Defendants

24.     AT&T is a telecommunications provider formed in November, 2005 with the acquisition of AT&T Corp. ("AT&T Corp.") by SBC in 1999. AT&T is one of the

largest telecommunications companies in the United States and consequently is responsible for a substantial percentage of eavesdropping overcharges. The company is currently headquartered in Dallas, Texas, and reported $118.9 billion total revenue for 2007.

25.    Verizon is a telecommunications provider based in Basking Ridge, New Jersey. In conjunction with Vodafone Group, PLC ("Vodafone"), it formed Verizon Wireless ("VW") in 2000, maintaining 55% of VW while Vodafone owns 45%. VW served 65.7 million customers domestically and reported $43.9 billion in revenue in 2007. Verizon reported $93.8 billion total revenue in 2007.

26.    Sprint Nextel is a telecommunications provider based in Overland Park, KS. It formed with the August, 2005 purchase of Nextel Communications by Sprint Corp. Sprint Nextel served 52 million wireless customers domestically in 2007 with revenue of $40.15 billion.

27.    Qwest is a telecommunications carrier and device manufacturer based in Denver, CO. As a provider, it served 13 million consumers in 2007.

28.    TDS is a telecommunications provider based in Chicago, Illinois. It does business through two units, US Cellular and TDS Telecommunications Corp. ("TDS Telecom") and served 7.3 million customers in 2007 with revenue of $3.7 billion.

## STATEMENT OF FACTS

### Manual and Digital Wiretaps

29.    Until the mid-1990s, wiretaps require the manual "bugging" of a particular telephone line. This means that a law enforcement technician had to physically attach a

device to the phone wires of the target phone (either in the residence or, more commonly, on a telephone pole outside), or place a "bug" inside the phone. Thus, after obtaining a court order, the technician would drive to a telephone pole near the target, climb to the top, and install a device permitting the Law Enforcement Agency to record the conversations on that telephone line. As telecommunications technology began to shift to digital signals and cellular devices, which had no physical wires to link into, this manual method became useless.

30.     Responding to pleas from various law enforcement agencies, CALEA was enacted by Congress in 1994 to ensure that law enforcement would be able to continue to conduct wiretaps in the context of new technologies. CALEA required Telecoms to redesign their network structures so that all eavesdropping is now done digitally.

31.     This digital upgrade means that all current wiretaps are performed by a simple flick of a switch by the Telecoms. This switch duplicates the call information from the targeted line (including both audio information and information such as caller identification) and forwards it along the Telecom's network to a Law Enforcement call center, after which point the Telecom performs no additional role in the eavesdropping service.

**The Impact of the Communications Assistance for Law Enforcement Act**

32.     The significance of appropriate use of eavesdropping funds cannot be overlooked in an age when terrorist and criminal groups routinely use advanced communication technologies, designed to outsmart law enforcement, in order to plan illegal activity. CALEA was enacted to preserve the Governments' ability to lawfully

intercept communications and related information involving advanced technologies, while protecting the privacy of communications.

33.    Federal, state, and local law enforcement often depend upon these court-approved eavesdropping capabilities not only to collect evidence of crimes and conspiracies, but also to prevent criminal acts from occurring.  Court approved wiretaps are used by law enforcement to combat terrorism, organized crime, illegal drug trafficking, violent crime, white collar crime, and espionage.  The majority of court approved wiretaps are obtained by state and local law enforcement. (See 2003 - 2007 Wiretap Reports, Table 2, attached hereto as Exhibit C.)  Consequently, the use of surveillance technology is a major priority for law enforcement agencies nationwide.

34.    Telecoms maintain all pricing information regarding their services privately, and since CALEA did not specifically mandate that this information be turned over during negotiations, the Telecoms refused to provide it to Government authorities. As a result, until now the Government has had no way of assessing reasonable costs.

35.    However, understandably more concerned that their investigations proceed without delay, the Governments have, in the end, agreed to pay whatever price the Telecoms charged — a price the Telecoms could never have obtained in the open market.

36.    Pursuant to CALEA, the DOJ Office of the Inspector General ("OIG") is required to report to Congress every year on the number of wiretaps installed nationwide, as well as the type of case for which the request was made (e.g., narcotics, homicide, or organized crime).  The last report was issued on March 2008. (See DOJ

Audit 08-20, attached hereto as Exhibit D.) The report indicates that, over the claim period, the various governments have made use of tens of thousands of wiretaps at an average cost of almost $50,000 each. Given this information, the total amount paid by the Governments to the Telecoms is potentially hundreds of millions of dollars.

**The Law Mandates Reasonable Cost for Eavesdropping Services**

37.     Federal eavesdropping regulations are laid out in CALEA and preceding sections of the United States Code.   While these address the capabilities required of Telecoms for providing eavesdropping services, they are also very clear when speaking of the amount which Telecoms are permitted to charge for these wiretaps.

38.     CALEA permits Telecoms to charge "reasonable expenses" for the use of eavesdropping services. 18 U.S. §2518 (4). The CFR defines a reasonable cost for the purposes of CALEA as one that "in its nature and amount . . . does not exceed that which would be incurred by a prudent person in the conduct of a competitive business . . . ." 28 CFR §100.12.

39.     Moreover, CALEA states that "[a]ny provider of wire or electronic communication service, landlord, custodian or other person furnishing such facilities or technical assistance shall be compensated therefor by the applicant for *reasonable expenses* incurred in providing such facilities or assistance." 18 U.S. §2518 (4), emphasis added.

**Telecoms Exploited the Governments by Withholding Pricing Information and**

**Massively Overcharging the Government**

40.     The costs submitted by Telecoms to the Governments were fraudulent. They were monstrously more than what the Telecoms could ever hope to charge for

similar services in an open, competitive market and the costs charged to the Governments by Telecoms did not represent reasonable prices as defined in the Code of Federal Regulations.

41.     The Telecoms have a responsibility under the Federal and State False Claims Acts to act in good faith when submitting expenses to the Governments.  This responsibility is especially important because the main purpose of CALEA is to <u>aid</u> law enforcement, particularly in law enforcement's fight against organized crime and terrorism.  Instead, the Telecoms took advantage of the Governments causing them to sustain severe financial loss.

42.     At no point have Telecoms provided pricing information to the Governments.  If their services were the product of fair and normal business practices, then the Telecoms should have had no problem with disclosing their actual cost data. Instead, the invoices submitted to Law Enforcement Agencies contain one lump sum without itemizing the costs.

43.     A substantial reason for the Telecoms' ability to hoodwink the Government has been that they refuse to itemize their bills. Without itemization, it is very difficult when reviewing any one invoice to determine that the costs are inflated. While the FBI and DOJ have cited these ambiguous costs and questioned whether the costs presented by the Telecoms are valid, they have made no conclusive findings. (See Exhibit D.)

**Defendants Still Submit False Claims, Overcharging for Intercept Costs.**

Carriers Overcharge Individual Prosecutors for Eavesdropping Services.

44.    The Carriers continue to submit false claims – month after month after month – for their provision of services to investigators simply by inflating the monthly bills for eavesdropping charged to the Governments on the federal and state level.

45.    Prosecutors nationwide are charged exorbitant rates for eavesdropping services from Carriers that refuse to itemize their invoices. The prosecutors have no way of knowing if the fees actually represent the services provided to them during that billing cycle.

46.    Due to the extreme expense of a CALEA wiretap – the average cost for a wiretap last year was almost $50,000, more than 2000% greater than the cost of a wiretap performed in the early and mid-1990s – many law enforcement agencies cannot afford to do all of the wiretapping they would like to do. This thwarts the very purpose of CALEA, which was to allow for the quick, cost effective use of wiretaps by law enforcement agencies.

47.    DOJ Audit 06-13 indicated that as of 2006 electronic surveillance was not affordable by 23% of state and local law enforcement agencies. (See DOJ Audit Report 06-13, attached hereto as Exhibit E.)

48.    Carriers refuse to provide itemized bills which detail the charges for each intercept because the law does not require them to do so. (See Exhibit D.) Law enforcement agencies can only verify that a wiretap was active on the day for which they are billed, but they have no way of understanding how the final bill is calculated.

(See Exhibit D.)

<u>Carriers Choose the Most Expensive Method to Provide the Eavesdropping Service.</u>

49.     Besides simply charging inflated fees to the Governments with a pricing structure apparently untethered to actual costs, the Carriers also always choose the most expensive method of providing eavesdropping services.

50.     There are four methods of delivery for wiretaps: dial out, Virtual Private Network ("VPN"), frame relay, and T-1.

51.     Carriers have the discretion to decide which connection to install and generally choose the most expensive method of delivery – even if any of the four mentioned services would provide perfectly adequate, and even preferred, service to the Government agency conducting the investigation.

52.     T-1 is the most expensive of the options mentioned above.  Some carriers, namely those in California and Florida only deliver data via a T-1 line.   This is impractical for many law enforcement agencies because of the expense.   Installation alone of a T-1 line costs about $1,300 and it can take up to two months to install.

53.     In contrast, a dial out connection can generally be installed in 2 or 3 days and costs about $60 per line, about one twentieth of the monthly cost of a T-1.  A dial out connection can accommodate most CALEA features and is the most cost effective.

54.     Law Enforcement Agencies have expressed the desire to have the dial out method mandated by law since Carrier Defendants cannot be trusted to make the right decision.  (See Exhibit E).   However, these pleas have gone unaddressed.   Carriers continue to abuse their discretion to overcharge the Governments.

55.     The Law Enforcement Agencies have little choice but to pay for the exorbitantly costly T-1 delivery method for their most vital cases, leaving other important issues unresolved as a lack of funding.  Carriers exacerbate this fraud because they refuse to itemize their wiretap bills, which could, at least, give the Governments the ability to challenge the excessive billing.

## Details of the Telecoms' Fraud Pursuant To Rule 9(B)

### Carriers Submitted False Claims to the Governments

56.     Carrier Defendants knowingly submitted false claims for payment to Federal, State, and Local Governments regarding the costs involved in conducting ongoing eavesdropping activities.

57.     Carriers have continuously overcharged the Governments for eavesdropping from 1994 to the present.  This overcharge is ongoing and experienced by Law Enforcement Agencies nationwide even as the Complaint is filed.

58.     Carriers are able to defraud the Governments by refusing to itemize the wiretap bills submitted to law enforcement agencies.  This makes it difficult, if not impossible for prosecutors to know whether or not the bills actually reflect the services provided to them each month.  By keeping law enforcement in the dark about their pricing and giving no choice as to which delivery method is used for CALEA wiretaps, Carriers have been able to charge law enforcement agencies exorbitant fees for eavesdropping.

**Relator's Personal, Non-Public Knowledge and Evidence Provides the**

**Government with the Key to Prevent Continued Abuse**

59.     Defendants' scheme has been permitted to continue because the Telecoms have done an excellent job of concealing any evidence regarding the true price of the services they provide from the Governments.   While there have been suspicions of overpricing in the past, actual evidence of the fraud has been impossible to find and is nowhere in the public domain.

60.     Relator now has the evidence necessary to cast blame upon the Defendant Telecoms in two specific non-public documents, as well as non-documentary evidence gained in person.

## The Hard Evidence

61.     The documents specifically speak to two issues.   The first document lists a rationale for the charges imposed by the Telecoms which, if true, would be illegal.   The second is an itemization of the Telecoms' charges.   This is the very information cited by the Federal Government as a reason for being unable to determine if the charges were fraudulent in the FBI Report 06-13. (See Exhibit E.)   Now that the information is in the Relator's possession, he can say with surety that the charges are indeed fraudulent and subject to a false claims action.

## Letter from Nextel

62.     The first document, a letter from Nextel to George Quinlan, one of the Relator's deputies, dated May 26, 2000, outlines Nextel's supposed rationale for high fees. (See Nextel Letter, attached hereto as Exhibit F.)   In this letter, Nextel claims that

1    the fees are based on an amortization of the cost of CALEA upgrades.

2        63.    If this amortization were the case, it would be illegal. The *only* government

3    funding authorized for the upgrade of Telecom equipment to CALEA-compliance came

4

5    from the Telecommunications Carrier Compliance Fund ("TCCF"), a $500 million

6    resource authorized by Congress in 1997. *See* 47 U.S.C. §1008 *and* CALEA Title 1, Section

7    110. Telecoms depleted $450 million of this by 2001.  Congress then considered the issue

8
     settled, withdrawing the remaining funds.
9

10       64.    This letter is a sham which proves the fraud. Nextel presents an illegal and

11   untrue reason for overcharging in an unsuccessful attempt to justify the fraudulently

12   high charges. The simple truth is that Nextel massively overcharged for its services.
13

14                              Letter from Verizon

15       65.    The second document is another letter, this time from Verizon to the Office

16   of the Attorney General, dated September 25, 2000.  (See Verizon Letter, attached hereto

17   as Exhibit G.)  This letter lays out the fee-breakdown imposed by Verizon for wiretaps. It

18
     itemizes the services provided to the Attorney General's Office for each wiretap.
19

20       66.    The presence of a fee-breakdown is significant because, in the FBI and

21   United States Inspector General reports, the Federal Government was very specific in

22   declaring that no breakdown of costs was available.  However, Verizon's general fee

23
     schedule, available only to the Relator, details the purported costs-per-call, a unique
24

25   insight that shows clearly the unreasonable nature of the Telecoms' practices.

26       67.    This fee schedule is significant because it shows that the Telecoms charge

27   exorbitant fees for individual transactions that require no effort on their part.   For

28

instance, while private consumers receive unlimited free calling within the Verizon network, every call intercepted by Law Enforcement Agencies using the same technology costs a minimum of ten dollars, and frequently much more than that. (See Exhibit G.)

<u>Personal Knowledge</u>

68.     Besides the two above-mentioned non-public letters, the Relator also had several telephone calls with representatives of the Telecoms in which even more theories for the unjustified, illegal, high charges were presented.

69.     Indeed, in such conversations, a representative of Sprint Corporation claimed simply to base their price on the average charged by *other* Telecoms.   Another conversation with the same company yielded the claim that some of the charges were submitted for attorneys' fees from transaction attorneys who reviewed Court rulings on wire taps.   Any such review would have been both unnecessary and illegal, and claiming any such review is a sham comparable to Nextel's, presented above..

70.     Moreover, Relator had a number of non-public conversations with government employees which shed even greater light on the Telecoms' false claims. FBI staff, as well as representatives from other state agencies, have complained to him over the years about their own experiences with claims presented by the Telecoms.   One FBI attorney, for instance, informed Prather that the FBI had recently been billed more than $100,000 for a single, one month wiretap.   Likewise, conversations with officials from the District Attorney's Office in Baltimore revealed that that law enforcement agency had completely refused to pay for wiretaps because they found the expenses unrealistic.

71.     In comparison, as Relator can attest from personal knowledge, in the early and mid-1990s a wiretap cost, at the most, slightly over $2000 per month and frequently as little as several hundred dollars per month.

## CLAIMS AGAINST ALL DEFENDANTS

### FEDERAL CLAIMS AGAINST CARRIERS

### FIRST CAUSE OF ACTION

#### Violation of Federal False Claims Act, *inter* alia, 31 U.S.C. § 3729, *et seq*

72.     Plaintiff repeats and re alleges paragraphs 1 through 71 above as though fully set forth herein.

73.     At all times relevant to this Complaint, it was a violation of *inter alia,* 31 U.S.C. § 3729(a)(1) to present or cause to be presented  to an officer or employee of the United States Government a false or fraudulent claim for payment or approval by the Government.

74.     At all times relevant to this Complaint, it was a violation of *inter alia,* 31 U.S.C. § 3729(a)(2) to make or cause to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

75.     Carrier defendants consist of telecommunications carriers who are responsible for providing surveillance services to law enforcement agencies nationwide.

76.     Carrier defendants knowingly submitted fraudulently high invoices to law enforcement agencies nationwide for eavesdropping services.

77.     Carriers also deliberately refuse to itemize their invoices with the purpose of making it extremely difficult for prosecutors to dispute any of the excessive charges.

1   Prosecutors have no way of knowing whether or not the bill they receive actually

2   corresponds with the services provided to them each billing cycle.  These false claims for

3
4   payment submitted by carrier defendants have caused to the Governments to sustain

5   extreme financial loss.

6          78.     Plaintiff has reported this information to the Governments as provided

7   herein and seeks damages against Telecoms on behalf of himself as well as the Federal

8
9   Government and various State Governments.  The damages sought include but are not

10  limited to disgorgement of all monies obtained by Telecoms in excess of their reasonable

11  costs incurred during eavesdropping activities as well as pre-judgment interests and

12  costs.

13                     **STATE CLAIMS AGAINST CARRIERS, BY STATE**

14                             **SECOND CAUSE OF ACTION**

15
16         <u>Violation of California False Claims Act, Cal. Govt. Code §§ 12650 - 12655</u>

17         79.     Relator repeats and realleges each allegation of paragraph 1 through 78

18  above.

19
20         80.     Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to

21  be presented to an officer or employee of the State of California a claim for payment.

22         81.     The Claim for payment was false.

23
24         82.     Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims

25  were false.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD CAUSE OF ACTION**

Violation of Delaware False Claims Act, Del. Code Ann. Tit. 6 §§ 1201 – 1209

83.    Relator repeats and realleges each allegation of paragraph 1 through 82 above.

84.    Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the Government of Delaware a claim for payment.

85.    The Claim for payment was false.

86.    Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

**FOURTH CAUSE OF ACTION**

Violation of District of Columbia False Claims Act, D.C. Code §§ 2-308.03 – 2-308.21

87.    Relator repeats and realleges each allegation of paragraph 1 through 86 above.

88.    Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the District of Columbia a claim for payment.

89.    The Claim for payment was false.

90.    Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

**FIFTH CAUSE OF ACTION**

Violation of Florida State False Claims Act, Fla. Stat. Ann. §§ 68.081 – 68.093

91.    Relator repeats and realleges each allegation of paragraph 1 through 90

1   above.

2   92.   Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to

3   be presented to an officer or employee of the State of Florida a claim for payment.

4

5   93.   The Claim for payment was false.

6   94.   Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims

7   were false.

8                            **SIXTH CAUSE OF ACTION**

9   Violation of Illinois False Claims Act, Ill. Comp Stat. Ann. 740 ILCS §§ 175/3 - 175/8

10

11  95.   Relator repeats and realleges each allegation of paragraph 1 through 94

12  above.

13  96.   Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to

14  be presented to an officer or employee of the State of Illinois a claim for payment.

15

16  97.   The Claim for payment was false.

17  98.   Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims

18  were false.

19

20                         **SEVENTH CAUSE OF ACTION**

21  Violation of Chicago False Claims Act, Municipal Code of Chicago, Title 1, Chapter 1-22

22  99.   Relator repeats and realleges each allegations of paragraph 1 through 98

23  above.

24  100.  Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to

25  be presented to an officer or employee of the City of Chicago a claim for payment

26

27  101.  The Claim for payment was false.

28

BALESTRIERE
LANZA PLLC
ATTORNEYS AT LAW

JOHN C. PRATHER, *ex rel. v.* AT&T, INC., *et al.* - COMPLAINT         26
Case No:

102. Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

## EIGHTH CAUSE OF ACTION

### Violation of Indiana False Claims Act, Ind. Code. Ann. §§ 5-11-5.5-2 – 5-11-5.5-18

103. Relator repeats and realleges each allegation of paragraph 1 through 102 above.

104. Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the State of Indiana a claim for payment.

105. The Claim was false.

106. Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

## NINTH CAUSE OF ACTION

### Violation of Massachusetts False Claims Act, Mass. Gen. Laws Ann. Ch. 12 §5c

107. Relator repeats and realleges each allegation of paragraph 1 through 106 above.

108. Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the Commonwealth of Massachusetts a claim for payment.

109. The Claim for payment was false.

110. Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

1

**TENTH CAUSE OF ACTION**

2

Violation of Nevada False Claims Act, Nev. Rev. Stat. Ann. §§357.010 – 357.250

3

4

      111.   Relator repeats and realleges each allegation of paragraph 1 through 110

5

above.

6

      112.   Defendants Verizon, ATT, and Sprint Nextel presented or caused to be

7

presented to an officer or employee of the State of Nevada a claim for payment.

8

      113.   The Claim for payment was false.

9

10

      114.   Defendants Verizon, ATT, and Sprint Nextel knew that such claims were

11

false.

12

**ELEVENTH CAUSE OF ACTION**

13

Violation of New Hampshire False Claims Act, N.H. Rev. Stat. Ann. §167:61

14

15

      115.   Relator repeats and realleges each allegation of paragraph 1 through 114

16

above.

17

      116.   Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to

18

be presented to an officer or employee of the State of New Hampshire a claim for

19

20

payment.

21

      117.   The Claim for payment was false.

22

      118.   Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims

23

were false.

24

**TWELFTH CAUSE OF ACTION**

25

26

Violation of New Jersey False Claims Act, N.J. Stat. Ann. § 2A:32C-1

27

      119.   Relator repeats and realleges each allegation of paragraph 1 through 118

28

above.

120. Defendants Verizon, ATT, and Sprint Nextel presented or caused to be presented to an officer or employee of the State of New Jersey a claim for payment.

121. The Claim for payment was false.

122. Defendants Verizon, ATT, and Sprint Nextel knew that such claims were false.

### · THIRTEENTH CAUSE OF ACTION

### Violation of New Mexico False Claims Act, N.M. Stat. § 44-9-3

123. Relator repeats and realleges each allegation of paragraph 1 through 122 above.

124. Defendants Verizon, ATT, and Sprint Nextel presented or caused to be presented to an officer or employee of the State of New Mexico a claim for payment.

125. The Claim for payment was false.

126. Defendants Verizon, ATT, and Sprint Nextel knew that such claims were false.

### FOURTEENTH CAUSE OF ACTION

### Violation of New York False Claims Act, N.Y. State Fin. Law § 189

127. Relator repeats and realleges each allegation of paragraph 1 through 126 above.

128. Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the State of New York a claim for payment.

129. The Claim for payment was false.

130.    Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

## FIFTEENTH CAUSE OF ACTION

### Violation of New York City False Claims Act, Title 7, Chapter 8 §7-803

131.    Relator repeats and realleges each allegation of paragraph 1 through 130 above.

132.    Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the City of New York a claim for payment.

133.    The Claim for payment was false

134.    Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

## SIXTEENTH CAUSE OF ACTION

### Violation of Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-3

135.    Relator repeats and realleges each allegation of paragraph 1 through 134 above.

136.    Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the State of Rhode Island a claim for payment.

137.    The Claim for payment was false.

138.    Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

## SEVENTEENTH CAUSE OF ACTION

<u>Violation of Virginia False Claims Act, VA. Code Ann. § 8.01-216.1</u>

139.    Relator repeats and realleges each allegation of paragraph 1 through 138 above.

140.    Defendants Verizon, ATT, Sprint Nextel, and TDS presented or caused to be presented to an officer or employee of the Commonwealth of Virginia a claim for payment.

141.    The Claim for payment was false.

142.    Defendants Verizon, ATT, Sprint Nextel, and TDS knew that such claims were false.

**PRAYER FOR RELIEF**

WHEREFORE, Relator John C. Prather, on behalf of the United States and the thirteen States of California, Delaware, Florida, Illinois, Massachusetts, New Hampshire, New Jersey, New Mexico, New York, Nevada, Rhode Island, Virginia, as well as the District of Columbia, demands judgment against Defendants AT&T, Verizon, Qwest, Sprint Nextel, and TDS as follows:

    (a) that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' violations of the False Claims Act;

    (b) punitive damages in an amount to be determined at trial;

    (c) that Relator John C. Prather recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

    (d) that in the event the United States Government proceeds with this action, Relator John C. Prather be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

    (e) that in the event the United States Government does not proceed with this action, Relator John C. Prather be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

    (f) that Relator John C. Prather be awarded prejudgment interest;

    (g) costs, disbursements and reasonable attorneys' fees related to this action; and

    (h) that a trial by jury be held on all issues so triable;

1       (i)   such other and further relief as to this Court may seem just, proper and

2      equitable.

3

4

Dated:   San Francisco, California      Respectfully submitted,
5         June 3, 2009

6

7                         MATTHEW A. SIROKA (CASBN 233050)

8                         **LAW OFFICE OF MATTHEW A. SIROKA**

9                         600 Townsend Street, Suite 233050

                         San Francisco, CA 94103

10                       Telephone:  (415) 522-1105

                       Facsimile:  (415) 522-1506

11                       Email:      mas@defendergroup.com

12                       JOHN BALESTRIERE*

                       CRAIG STUART LANZA*

13                       **BALESTRIERE LANZA PLLC**

14                       225 Broadway, Suite 2900

                       New York, NY 10007

15                       Telephone: (212) 374-5404

16                       Facsimile:  (212) 208-2613

                       * *Pro Hac Vice* application pending

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

# GOVERNMENT CODE
# SECTION 12650-12656

12650.  (a) This article shall be known and may be cited as the
False Claims Act.
   (b) For purposes of this article:
   (1) "Claim" includes any request or demand for money, property, or
services made to any employee, officer, or agent of the state or of
any political subdivision, or to any contractor, grantee, or other
recipient, whether under contract or not, if any portion of the
money, property, or services requested or demanded issued from, or
was provided by, the state (hereinafter "state funds") or by any
political subdivision thereof (hereinafter "political subdivision
funds").
   (2) "Knowing" and "knowingly" mean that a person, with respect to
information, does any of the following:
   (A) Has actual knowledge of the information.
   (B) Acts in deliberate ignorance of the truth or falsity of the
information.
   (C) Acts in reckless disregard of the truth or falsity of the
information.
   Proof of specific intent to defraud is not required.
   (3) "Political subdivision" includes any city, city and county,
county, tax or assessment district, or other legally authorized local
governmental entity with jurisdictional boundaries.
   (4) "Prosecuting authority" refers to the county counsel, city
attorney, or other local government official charged with
investigating, filing, and conducting civil legal proceedings on
behalf of, or in the name of, a particular political subdivision.
   (5) "Person" includes any natural person, corporation, firm,
association, organization, partnership, limited liability company,
business, or trust.


12651.  (a) Any person who commits any of the following acts shall
be liable to the state or to the political subdivision for three
times the amount of damages which the state or the political
subdivision sustains because of the act of that person. A person who
commits any of the following acts shall also be liable to the state
or to the political subdivision for the costs of a civil action
brought to recover any of those penalties or damages, and may be
liable to the state or political subdivision for a civil penalty of
not less than five thousand dollars ($5,000) and not more than ten
thousand dollars ($10,000) for each false claim:
   (1) Knowingly presents or causes to be presented to an officer or
employee of the state or of any political subdivision thereof, a
false claim for payment or approval.
   (2) Knowingly makes, uses, or causes to be made or used a false
record or statement to get a false claim paid or approved by the

state or by any political subdivision.

(3) Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision.

(4) Has possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly delivers or causes to be delivered less property than the amount for which the person receives a certificate or receipt.

(5) Is authorized to make or deliver a document certifying receipt of property used or to be used by the state or by any political subdivision and knowingly makes or delivers a receipt that falsely represents the property used or to be used.

(6) Knowingly buys, or receives as a pledge of an obligation or debt, public property from any person who lawfully may not sell or pledge the property.

(7) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision.

(8) Is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

(b) Notwithstanding subdivision (a), the court may assess not less than two times and not more than three times the amount of damages which the state or the political subdivision sustains because of the act of the person described in that subdivision, and no civil penalty, if the court finds all of the following:

(1) The person committing the violation furnished officials of the state or of the political subdivision responsible for investigating false claims violations with all information known to that person about the violation within 30 days after the date on which the person first obtained the information.

(2) The person fully cooperated with any investigation by the state or a political subdivision of the violation.

(3) At the time the person furnished the state or the political subdivision with information about the violation, no criminal prosecution, civil action, or administrative action had commenced with respect to the violation, and the person did not have actual knowledge of the existence of an investigation into the violation.

(c)  Liability under this section shall be joint and several for any act committed by two or more persons.

(d) This section does not apply to any controversy involving an amount of less than five hundred dollars ($500) in value. For purposes of this subdivision, "controversy" means any one or more false claims submitted by the same person in violation of this article.

(e) This section does not apply to claims, records, or statements made pursuant to Division 3.6 (commencing with Section 810) of Title 1 or to workers' compensation claims filed pursuant to Division 4 (commencing with Section 3200) of the Labor Code.

(f) This section does not apply to claims, records, or statements made under the Revenue and Taxation Code.

12652.  (a) (1) The Attorney General shall diligently investigate
violations under Section 12651 involving state funds.  If the
Attorney General finds that a person has violated or is violating
Section 12651, the Attorney General may bring a civil action under
this section against that person.
     (2) If the Attorney General brings a civil action under this
subdivision on a claim involving political subdivision funds as well
as state funds, the Attorney General shall, on the same date that the
complaint is filed in this action, serve by mail with "return
receipt requested" a copy of the complaint on the appropriate
prosecuting authority.
     (3) The prosecuting authority shall have the right to intervene in
an action brought by the Attorney General under this subdivision
within 60 days after receipt of the complaint pursuant to paragraph
(2).  The court may permit intervention thereafter upon a showing
that all of the requirements of Section 387 of the Code of Civil
Procedure have been met.
     (b) (1) The prosecuting authority of a political subdivision shall
diligently investigate violations under Section 12651 involving
political subdivision funds.  If the prosecuting authority finds that
a person has violated or is violating Section 12651, the prosecuting
authority may bring a civil action under this section against that
person.
     (2) If the prosecuting authority brings a civil action under this
section on a claim involving state funds as well as political
subdivision funds, the prosecuting authority shall, on the same date
that the complaint is filed in this action, serve a copy of the
complaint on the Attorney General.
     (3) Within 60 days after receiving the complaint pursuant to
paragraph (2), the Attorney General shall do either of the following:

     (A) Notify the court that it intends to proceed with the action,
in which case the Attorney General shall assume primary
responsibility for conducting the action and the prosecuting
authority shall have the right to continue as a party.
     (B) Notify the court that it declines to proceed with the action,
in which case the prosecuting authority shall have the right to
conduct the action.
     (c) (1) A person may bring a civil action for a violation of this
article for the person and either for the State of California in the
name of the state, if any state funds are involved, or for a
political subdivision in the name of the political subdivision, if
political subdivision funds are exclusively involved.  The person
bringing the action shall be referred to as the qui tam plaintiff.
Once filed, the action may be dismissed only with the written consent
of the court, taking into account the best interests of the parties
involved and the public purposes behind this act.
     (2) A complaint filed by a private person under this subdivision
shall be filed in superior court in camera and may remain under seal
for up to 60 days.  No service shall be made on the defendant until
after the complaint is unsealed.

(3) On the same day as the complaint is filed pursuant to paragraph (2), the qui tam plaintiff shall serve by mail with "return receipt requested" the Attorney General with a copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses.

(4) Within 60 days after receiving a complaint and written disclosure of material evidence and information alleging violations that involve state funds but not political subdivision funds, the Attorney General may elect to intervene and proceed with the action.

(5) The Attorney General may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal pursuant to paragraph (2). The motion may be supported by affidavits or other submissions in camera.

(6) Before the expiration of the 60-day period or any extensions obtained under paragraph (5), the Attorney General shall do either of the following:

(A) Notify the court that it intends to proceed with the action, in which case the action shall be conducted by the Attorney General and the seal shall be lifted.

(B) Notify the court that it declines to proceed with the action, in which case the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action.

(7) (A) Within 15 days after receiving a complaint alleging violations that exclusively involve political subdivision funds, the Attorney General shall forward copies of the complaint and written disclosure of material evidence and information to the appropriate prosecuting authority for disposition, and shall notify the qui tam plaintiff of the transfer.

(B) Within 45 days after the Attorney General forwards the complaint and written disclosure pursuant to subparagraph (A), the prosecuting authority may elect to intervene and proceed with the action.

(C) The prosecuting authority may, for good cause shown, move for extensions of the time during which the complaint remains under seal. The motion may be supported by affidavits or other submissions in camera.

(D) Before the expiration of the 45-day period or any extensions obtained under subparagraph (C), the prosecuting authority shall do either of the following:

(i) Notify the court that it intends to proceed with the action, in which case the action shall be conducted by the prosecuting authority and the seal shall be lifted.

(ii) Notify the court that it declines to proceed with the action, in which case the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action.

(8) (A) Within 15 days after receiving a complaint alleging violations that involve both state and political subdivision funds, the Attorney General shall forward copies of the complaint and written disclosure to the appropriate prosecuting authority, and shall coordinate its review and investigation with those of the prosecuting authority.

(B) Within 60 days after receiving a complaint and written disclosure of material evidence and information alleging violations

(3) On the same day as the complaint is filed pursuant to paragraph (2), the qui tam plaintiff shall serve by mail with "return receipt requested" the Attorney General with a copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses.

(4) Within 60 days after receiving a complaint and written disclosure of material evidence and information alleging violations that involve state funds but not political subdivision funds, the Attorney General may elect to intervene and proceed with the action.

(5) The Attorney General may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal pursuant to paragraph (2).  The motion may be supported by affidavits or other submissions in camera.

(6) Before the expiration of the 60-day period or any extensions obtained under paragraph (5), the Attorney General shall do either of the following:

(A) Notify the court that it intends to proceed with the action, in which case the action shall be conducted by the Attorney General and the seal shall be lifted.

(B) Notify the court that it declines to proceed with the action, in which case the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action.

(7) (A) Within 15 days after receiving a complaint alleging violations that exclusively involve political subdivision funds, the Attorney General shall forward copies of the complaint and written disclosure of material evidence and information to the appropriate prosecuting authority for disposition, and shall notify the qui tam plaintiff of the transfer.

(B) Within 45 days after the Attorney General forwards the complaint and written disclosure pursuant to subparagraph (A), the prosecuting authority may elect to intervene and proceed with the action.

(C) The prosecuting authority may, for good cause shown, move for extensions of the time during which the complaint remains under seal.
  The motion may be supported by affidavits or other submissions in camera.

(D) Before the expiration of the 45-day period or any extensions obtained under subparagraph (C), the prosecuting authority shall do either of the following:

(i) Notify the court that it intends to proceed with the action, in which case the action shall be conducted by the prosecuting authority and the seal shall be lifted.

(ii) Notify the court that it declines to proceed with the action, in which case the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action.

(8) (A) Within 15 days after receiving a complaint alleging violations that involve both state and political subdivision funds, the Attorney General shall forward copies of the complaint and written disclosure to the appropriate prosecuting authority, and shall coordinate its review and investigation with those of the prosecuting authority.

(B) Within 60 days after receiving a complaint and written disclosure of material evidence and information alleging violations

that involve both state and political subdivision funds, the Attorney General or the prosecuting authority, or both, may elect to intervene and proceed with the action.

(C) The Attorney General or the prosecuting authority, or both, may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). The motion may be supported by affidavits or other submissions in camera.

(D) Before the expiration of the 60-day period or any extensions obtained under subparagraph (C), the Attorney General shall do one of the following:

(i) Notify the court that it intends to proceed with the action, in which case the action shall be conducted by the Attorney General and the seal shall be lifted.

(ii) Notify the court that it declines to proceed with the action but that the prosecuting authority of the political subdivision involved intends to proceed with the action, in which case the seal shall be lifted and the action shall be conducted by the prosecuting authority.

(iii) Notify the court that both it and the prosecuting authority decline to proceed with the action, in which case the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action.

(E) If the Attorney General proceeds with the action pursuant to clause (i) of subparagraph (D), the prosecuting authority of the political subdivision shall be permitted to intervene in the action within 60 days after the Attorney General notifies the court of its intentions. The court may authorize intervention thereafter upon a showing that all the requirements of Section 387 of the Code of Civil Procedure have been met.

(9) The defendant shall not be required to respond to any complaint filed under this section until 30 days after the complaint is unsealed and served upon the defendant pursuant to Section 583.210 of the Code of Civil Procedure.

(10) When a person brings an action under this subdivision, no other person may bring a related action based on the facts underlying the pending action.

(d) (1) No court shall have jurisdiction over an action brought under subdivision (c) against a Member of the State Senate or Assembly, a member of the state judiciary, an elected official in the executive branch of the state, or a member of the governing body of any political subdivision if the action is based on evidence or information known to the state or political subdivision when the action was brought.

(2) A person may not bring an action under subdivision (c) that is based upon allegations or transactions that are the subject of a civil suit or an administrative civil money penalty proceeding in which the state or political subdivision is already a party.

(3) (A) No court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless the action is

brought by the Attorney General or the prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information.

(B) For purposes of subparagraph (A), "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based, who voluntarily provided the information to the state or political subdivision before filing an action based on that information, and whose information provided the basis or catalyst for the investigation, hearing, audit, or report that led to the public disclosure as described in subparagraph (A).

(4) No court shall have jurisdiction over an action brought under subdivision (c) based upon information discovered by a present or former employee of the state or a political subdivision during the course of his or her employment unless that employee first, in good faith, exhausted existing internal procedures for reporting and seeking recovery of the falsely claimed sums through official channels and unless the state or political subdivision failed to act on the information provided within a reasonable period of time.

(e) (1) If the state or political subdivision proceeds with the action, it shall have the primary responsibility for prosecuting the action.  The qui tam plaintiff shall have the right to continue as a full party to the action.

(2) (A) The state or political subdivision may seek to dismiss the action for good cause notwithstanding the objections of the qui tam plaintiff if the qui tam plaintiff has been notified by the state or political subdivision of the filing of the motion and the court has provided the qui tam plaintiff with an opportunity to oppose the motion and present evidence at a hearing.

(B) The state or political subdivision may settle the action with the defendant notwithstanding the objections of the qui tam plaintiff if the court determines, after a hearing providing the qui tam plaintiff an opportunity to present evidence, that the proposed settlement is fair, adequate, and reasonable under all of the circumstances.

(f) (1) If the state or political subdivision elects not to proceed, the qui tam plaintiff shall have the same right to conduct the action as the Attorney General or prosecuting authority would have had if it had chosen to proceed under subdivision (c).  If the state or political subdivision so requests, and at its expense, the state or political subdivision shall be served with copies of all pleadings filed in the action and supplied with copies of all deposition transcripts.

(2) (A) Upon timely application, the court shall permit the state or political subdivision to intervene in an action with which it had initially declined to proceed if the interest of the state or political subdivision in recovery of the property or funds involved is not being adequately represented by the qui tam plaintiff.

(B) If the state or political subdivision is allowed to intervene under paragraph (A), the qui tam plaintiff shall retain principal responsibility for the action and the recovery of the parties shall be determined as if the state or political subdivision had elected not to proceed.

(g) (1) (A) If the Attorney General initiates an action pursuant

to subdivision (a) or assumes control of an action initiated by a
prosecuting authority pursuant to subparagraph (A) of paragraph (3)
of subdivision (b), the office of the Attorney General shall receive
a fixed 33 percent of the proceeds of the action or settlement of the
claim, which shall be used to support its ongoing investigation and
prosecution of false claims.

   (B) If a prosecuting authority initiates and conducts an action
pursuant to subdivision (b), the office of the prosecuting authority
shall receive a fixed 33 percent of the proceeds of the action or
settlement of the claim, which shall be used to support its ongoing
investigation and prosecution of false claims.

   (C) If a prosecuting authority intervenes in an action initiated
by the Attorney General pursuant to paragraph (3) of subdivision (a)
or remains a party to an action assumed by the Attorney General
pursuant to subparagraph (A) of paragraph (3) of subdivision (b), the
court may award the office of the prosecuting authority a portion of
the Attorney General's fixed 33 percent of the recovery under
subparagraph (A), taking into account the prosecuting authority's
role in investigating and conducting the action.

   (2) If the state or political subdivision proceeds with an action
brought by a qui tam plaintiff under subdivision (c), the qui tam
plaintiff shall, subject to paragraphs (4) and (5), receive at least
15 percent but not more than 33 percent of the proceeds of the action
or settlement of the claim, depending upon the extent to which the
qui tam plaintiff substantially contributed to the prosecution of the
action.  When it conducts the action, the Attorney General's office
or the office of the prosecuting authority of the political
subdivision shall receive a fixed 33 percent of the proceeds of the
action or settlement of the claim, which shall be used to support its
ongoing investigation and prosecution of false claims made against
the state or political subdivision.  When both the Attorney General
and a prosecuting authority are involved in a qui tam action pursuant
to subparagraph (C) of paragraph (6) of subdivision (c), the court
at its discretion may award the prosecuting authority a portion of
the Attorney General's fixed 33 percent of the recovery, taking into
account the prosecuting authority's contribution to investigating and
conducting the action.

   (3) If the state or political subdivision does not proceed with an
action under subdivision (c), the qui tam plaintiff shall, subject
to paragraphs (4) and (5), receive an amount that the court decides
is reasonable for collecting the civil penalty and damages on behalf
of the government.  The amount shall be not less than 25 percent and
not more than 50 percent of the proceeds of the action or settlement
and shall be paid out of these proceeds.

   (4) If the action is one provided for under paragraph (4) of
subdivision (d), the present or former employee of the state or
political subdivision is not entitled to any minimum guaranteed
recovery from the proceeds.  The court, however, may award the qui
tam plaintiff those sums from the proceeds as it considers
appropriate, but in no case more than 33 percent of the proceeds if
the state or political subdivision goes forth with the action or 50
percent if the state or political subdivision declines to go forth,
taking into account the significance of the information, the role of
the qui tam plaintiff in advancing the case to litigation, and the

scope of, and response to, the employee's attempts to report and gain
recovery of the falsely claimed funds through official channels.

   (5) If the action is one that the court finds to be based
primarily on information from a present or former employee who
actively participated in the fraudulent activity, the employee is not
entitled to any minimum guaranteed recovery from the proceeds.  The
court, however, may award the qui tam plaintiff any sums from the
proceeds that it considers appropriate, but in no case more than 33
percent of the proceeds if the state or political subdivision goes
forth with the action or 50 percent if the state or political
subdivision declines to go forth, taking into account the
significance of the information, the role of the qui tam plaintiff in
advancing the case to litigation, the scope of the present or past
employee's involvement in the fraudulent activity, the employee's
attempts to avoid or resist the activity, and all other circumstances
surrounding the activity.

   (6) The portion of the recovery not distributed pursuant to
paragraphs (1) to (5), inclusive, shall revert to the state if the
underlying false claims involved state funds exclusively and to the
political subdivision if the underlying false claims involved
political subdivision funds exclusively.  If the violation involved
both state and political subdivision funds, the court shall make an
apportionment between the state and political subdivision based on
their relative share of the funds falsely claimed.

   (7) For purposes of this section, "proceeds" include civil
penalties as well as double or treble damages as provided in Section
12651.

   (8) If the state, political subdivision, or the qui tam plaintiff
prevails in or settles any action under subdivision (c), the qui tam
plaintiff shall receive an amount for reasonable expenses that the
court finds to have been necessarily incurred, plus reasonable costs
and attorney's fees.  All expenses, costs, and fees shall be awarded
against the defendant and under no circumstances shall they be the
responsibility of the state or political subdivision.

   (9) If the state, a political subdivision, or the qui tam
plaintiff proceeds with the action, the court may award to the
defendant its reasonable attorney's fees and expenses against the
party that proceeded with the action if the defendant prevails in the
action and the court finds that the claim was clearly frivolous,
clearly vexatious, or brought solely for purposes of harassment.

   (h) The court may stay an act of discovery of the person
initiating the action for a period of not more than 60 days if the
Attorney General or local prosecuting authority show that the act of
discovery would interfere with an investigation or a prosecution of a
criminal or civil matter arising out of the same facts, regardless
of whether the Attorney General or local prosecuting authority
proceeds with the action.  This showing shall be conducted in camera.

   The court may extend the 60-day period upon a further showing in
camera that the Attorney General or local prosecuting authority has
pursued the criminal or civil investigation or proceedings with
reasonable diligence and any proposed discovery in the civil action
will interfere with the ongoing criminal or civil investigation or
proceedings.

   (i) Upon a showing by the Attorney General or local prosecuting

authority that unrestricted participation during the course of the
litigation by the person initiating the action would interfere with
or unduly delay the Attorney General's or local prosecuting authority'
s prosecution of the case, or would be repetitious, irrelevant, or
for purposes of harassment, the court may, in its discretion, impose
limitations on the person's participation, including the following:
    (1) Limiting the number of witnesses the person may call.
    (2) Limiting the length of the testimony of the witnesses.
    (3) Limiting the person's cross-examination of witnesses.
    (4) Otherwise limiting the participation by the person in the
litigation.
    (j) The False Claims Act Fund is hereby created in the State
Treasury.  Proceeds from the action or settlement of the claim by the
Attorney General pursuant to this article shall be deposited into
this fund.  Moneys in this fund, upon appropriation by the
Legislature, shall be used by the Attorney General to support the
ongoing investigation and prosecution of false claims in furtherance
of this article.


12652.5.  Notwithstanding any other provision of law, the University
of California shall be considered  a political subdivision, and the
General Counsel of the University of California shall be considered a
prosecuting authority for the purposes of this article, and shall
have the right to intervene in an action brought by the Attorney
General or a private party or investigate and bring an action,
subject to Section 12652, if it is determined that the claim involves
the University of California.


12653.  (a) No employer shall make, adopt, or enforce any rule,
regulation, or policy preventing an employee from disclosing
information to a government or law enforcement agency or from acting
in furtherance of a false claims action, including investigating,
initiating, testifying, or assisting in an action filed or to be
filed under Section 12652.
    (b) No employer shall discharge, demote, suspend, threaten,
harass, deny promotion to, or in any other manner discriminate
against, an employee in the terms and conditions of employment
because of lawful acts done by the employee on behalf of the employee
or others in disclosing information to a government or law
enforcement agency or in furthering a false claims action, including
investigation for, initiation of, testimony for, or assistance in, an
action filed or to be filed under Section 12652.
    (c) An employer who violates subdivision (b) shall be liable for
all relief necessary to make the employee whole, including
reinstatement with the same seniority status that the employee would
have had but for the discrimination, two times the amount of back
pay, interest on the back pay, compensation for any special damage
sustained as a result of the discrimination, and, where appropriate,
punitive damages.  In addition, the defendant shall be required to
pay litigation costs and reasonable attorneys' fees.  An employee may
bring an action in the appropriate superior court of the state for

the relief provided in this subdivision.

(d) An employee who is discharged, demoted, suspended, harassed, denied promotion, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of participation in conduct which directly or indirectly resulted in a false claim being submitted to the state or a political subdivision shall be entitled to the remedies under subdivision (c) if, and only if, both of the following occur:

(1) The employee voluntarily disclosed information to a government or law enforcement agency or acted in furtherance of a false claims action, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed.

(2) The employee had been harassed, threatened with termination or demotion, or otherwise coerced by the employer or its management into engaging in the fraudulent activity in the first place.

12654.  (a) A civil action under Section 12652 may not be filed more than three years after the date of discovery by the official of the state or political subdivision charged with responsibility to act in the circumstances or, in any event, no more than 10 years after the date on which the violation of Section 12651 is committed.

(b) A civil action under Section 12652 may be brought for activity prior to January 1, 1988, if the limitations period set in subdivision (a) has not lapsed.

(c) In any action brought under Section 12652, the state, the political subdivision, or the qui tam plaintiff shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.

(d) Notwithstanding any other provision of law, a guilty verdict rendered in a criminal proceeding charging false statements or fraud, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, except for a plea of nolo contendere made prior to January 1, 1988, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subdivision (a), (b), or (c) of Section 12652.

(e) Subdivision (b) of Section 47 of the Civil Code shall not be applicable to any claim subject to this article.

12655.  (a) The provisions of this article are not exclusive, and the remedies provided for in this article shall be in addition to any other remedies provided for in any other law or available under common law.

(b) If any provision of this article or the application thereof to any person or circumstance is held to be unconstitutional, the remainder of the article and the application of the provision to other persons or circumstances shall not be affected thereby.

(c) This article shall be liberally construed and applied to promote the public interest.

12656.  (a) If a violation of this article is alleged or the
application or construction of this article is in issue in any
proceeding in the Supreme Court of California, a state court of
appeal, or the appellate division of a superior court, the person or
political subdivision that commenced that proceeding shall serve a
copy of the notice or petition initiating the proceeding, and a copy
of each paper, including briefs, that the person or political
subdivision files in the proceeding within three days of the filing,
on the Attorney General, directed to the attention of the False
Claims Section in Sacramento, California.
     (b) Timely compliance with the three-day time period is a
jurisdictional prerequisite to the entry of judgment, order, or
decision construing or applying this article by the court in which
the proceeding occurs, except that within that three-day period or
thereafter, the time for compliance may be extended by the court for
good cause.
     (c) The court shall extend the time period within which the
Attorney General is permitted to respond to an action subject to this
section by at least the same period of time granted for good cause
pursuant to subdivision (b) to the person or political subdivision
that commenced the proceeding.



HOME ⌂ | PAGE  < | PAGE  > | TOC  ☰

§ 1201. | § 1202. | § 1203. | § 1204. | § 1205. | § 1206. | § 1207. | § 1208. | § 1209.

# TITLE 6

## Commerce and Trade

### SUBTITLE II

### Other Laws Relating to Commerce and Trade

### CHAPTER 12. DELAWARE FALSE CLAIMS AND REPORTING ACT

### § 1201. Liability for certain acts.

(a) Any person who:

(1) Knowingly presents, or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval;

(2) Knowingly makes, uses or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved;

(3) Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

(4) Has possession, custody or control of property or money used or to be used by the Government and, intending to defraud the Government or willfully to conceal the property, delivers or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5) Is authorized to make or deliver a document certifying receipt of property used or to be used by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6) Knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government who the person knows may not lawfully sell or pledge the property; or

(7) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, increase or decrease an obligation to pay or transmit money or property to or from the Government

shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of actual damages which the Government sustains because of the act of that person.

(b) Notwithstanding the foregoing, the court may assess not less than 2 times the amount of damages which the Government sustains because of the act of the person, if:

(1) The person committing the violation of this subsection furnished officials of

the Government responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;

(2) Such person fully cooperated with any government investigation of such violations; and

(3) At the time such person furnished the Government with the information about the violation, no criminal prosecution, civil action, investigation or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violations.

A person violating this subsection shall also be liable for the costs of a civil action brought to recover any such penalty or damages, including payment of reasonable attorneys fees and costs.

(c) The Superior Court shall have jurisdiction of all offenses under this chapter. (72 Del. Laws, c. 370, § 1.)

### § 1202. Definitions.

(1) "Affected person, entity or organization" includes an employee or former employee of a person who is liable under § 1201 of this title, or a "labor organization" as defined by § 1107A(d) of Title 19.

(2) "Claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee or other recipient where the Government provides, directly or indirectly, any portion of the money or property which is requested or demanded, or where the Government will, directly or indirectly, reimburse such contractor, grantee or other recipient for any portion of the money or property which is requested or demanded.

(3) "Government" includes all departments, boards or commissions of the executive branch of the State, all political subdivisions of the State, the Delaware Department of Transportation and all state and municipal authorities, all organizations created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function, and all organizations, entities or persons receiving funds of the State where the act complained of pursuant to this chapter relates to the use of such funds of the State.

(4) "Knowing" and "knowingly" mean that a person, with respect to information:

a. Has actual knowledge of the information;

b. Acts in deliberate ignorance of the truth or falsity of the information; or

c. Acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. (72 Del. Laws, c. 370, § 1.)

### § 1203. Civil actions for false claims.

(a) Responsibilities of the Attorney General. -- The Attorney General shall diligently investigate suspected violations under this chapter. If the Attorney General finds that a person has violated or is violating the provisions of this chapter, the Attorney General may bring a civil action under this section against the person.

(b) Private actions. --

(1) A private civil action may be brought by any affected person, entity or organization (hereinafter "private party" or "party") for a violation of this chapter on behalf of the party bringing suit and for the Government. The action shall be brought in the name of the Government. Unless dismissed pursuant to paragraph (2) of this subsection, the action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the private party possesses shall be served on the Attorney General pursuant to Rules 4 and 5 of the Superior Court Civil Rules. The complaint shall be filed in camera and shall remain under seal for at least 60 days. The complaint shall not be served on the defendant until the expiration of 60 days or any extension approved under paragraph (3) of this subsection. Within 60 days after receiving a copy of the complaint, the Attorney General shall conduct an investigation of the factual allegations and legal contentions made in the complaint, shall make a written determination of whether there is substantial evidence that a violation of this chapter has occurred, and shall provide the affected person, entity or organization, and the Government, with a copy of the determination. The Government may elect to intervene and proceed with the action within 60 days after it receives the complaint, the material evidence and information, and the written determination of the Attorney General. If the Attorney General determines that there is not substantial evidence that a violation of this chapter occurred, then the complaint shall be dismissed.

(3) The Government or the Attorney General may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2) of this subsection. Any such motion may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Superior Court Civil Rules. The complaint shall be deemed unsealed at the expiration of the 60-day period in the absence of a court approved extension of the time frame.

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3) of this subsection, the Government shall:

a. Proceed with the action, in which case the action shall be conducted by the Government; or

b. Notify the court that it declines to take over the action, in which case the private party bringing the action shall have the right to conduct the action if, pursuant to paragraph (2) of this subsection, the Attorney General determined that there is substantial evidence that a violation of this chapter has occurred.

(5) When a party brings an action under this subsection, no party other than the Government may intervene or bring a related action based on the facts underlying the pending action. (72 Del. Laws, c. 370, § 1.)

### § 1204. Rights of the parties to qui tam actions.

(a) If the Government proceeds with the action, it shall have the exclusive responsibility for prosecuting the action, and shall not be bound by an act of the party bringing the action. Such party shall have the right to continue as a nominal party to the action, but, except as provided in subsections (b) and (c) of this section, such party shall not have

the right to participate in the litigation except as a witness.

(b) The Government may dismiss the action notwithstanding the objections of the party initiating the action if the party has been notified by the Government of the filing of the motion and the court has provided the party with an opportunity for a hearing on the motion.

(c) The Government may settle the action with the defendant notwithstanding the objections of the party initiating the action if the court determines after a hearing that the proposed settlement is fair, adequate and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

(d) If the Government elects not to proceed with the action, the party who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of the pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense). When a party proceeds with the action, the court, without limiting the status and rights of the party initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

(e) Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the party initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days. Such a showing shall be conducted in camera. The court may extend the 60-day period upon a further showing in camera that the Government has pursued the criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings. (72 Del. Laws, c. 370, § 1.)

### § 1205. Award to qui tam plaintiff.

(a) If the Government proceeds with an action brought by a party under § 1203(b) of this title, such party shall, subject to the 2nd sentence of this subsection, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the party substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the party bringing the action) relating to allegations or transactions in a criminal, civil or administrative hearing, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the party bringing the action in advancing the case to litigation. Any payment to a party under the 1st or 2nd sentence of this paragraph shall be made from the proceeds. Any such party shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. In determining the amount of reasonable attorneys' fees and costs, the court shall consider, without limitation, whether such fees and costs were necessary to the prosecution of the action, were incurred for activities which were duplicative of the activities of the Government in prosecuting the case, or were repetitious, irrelevant or for purposes of harassment, or caused the defendant undue burden or unnecessary expense. All such expenses, fees and costs shall be awarded against the defendant.

(b) If the Government does not proceed with an action under this chapter, the party bringing the action or settling the claim shall receive an amount which the court decides is

reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such party shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. In determining the amount of reasonable attorneys' fees and costs, the court shall consider, without limitation, whether such fees and costs were necessary to the prosecution of the action, were incurred for activities which were repetitious, irrelevant or for purposes of harassment, or caused the defendant undue burden or unnecessary expense. All such expenses, fees, and costs shall be awarded against the defendant.

(c) Whether or not the Government proceeds with the action, if the court finds that the action was brought by a party who planned and initiated the violation upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the party would otherwise receive under subsection (a) or (b) of this section, taking into account the role of that party in advancing the case to litigation and any relevant circumstances pertaining to the violation. If the party bringing the action is convicted of criminal conduct arising from that party's own role in the violation of this chapter, that party shall be dismissed from the civil action and shall not receive any share of the proceeds of the action. Such dismissal shall not prejudice the right of the State to continue the action, represented by the Attorney General's Office.

(d) If the Government does not proceed with the action and the party bringing the action conducts the action, the court may award to the defendant its reasonable attorneys fees and expenses if the defendant prevails in the action and the court finds that the claim of the party bringing the action was:

(1) Filed for any improper purpose, such as to harass or to vex;

(2) Not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law; or

(3) Based on allegations or factual contentions not supported by the evidence of record. (72 Del. Laws, c. 370, § 1; 70 Del. Laws, c. 186, § 1.)

## § 1206. Certain actions barred.

(a) No court shall have jurisdiction of an action brought pursuant to this chapter against a State Government official if the action is substantially based on evidence or information known to the Government when the action was brought.

(b) In no event may a party bring an action under this chapter which is substantially based upon allegations or transactions which are the subject of a civil suit or an administrative proceeding in which the Government is already a party.

(c) No court shall have jurisdiction over an action under this chapter substantially based upon the public disclosure of allegations or actions in a criminal civil or administrative hearing, or from the news media, unless the action is brought by the Attorney General or the party bringing the action is an original source of this information.

For purposes of this subsection, "original source" means the party bringing suit who has independent knowledge, including knowledge based on its own investigation of the defendant's conduct, of the information on which the allegations are based and has voluntarily provided or verified the information on which the allegations are based or has

voluntarily provided the information to the Government before filing an action under this section which is based on the information. (72 Del. Laws, c. 370, § 1.)

## § 1207. Government not liable for certain expenses.

No Government shall be liable for expenses which a party incurs in bringing an action under this chapter. (72 Del. Laws, c. 370, § 1.)

## § 1208. Employee protection.

Any employee who is discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this chapter, including investigation for, initiation of, testimony for or assistance in an action filed or to be filed under this chapter, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate court of the State for the relief provided in this subsection. (72 Del. Laws, c. 370, § 1; 70 Del. Laws, c. 186, § 1.)

## § 1209. False claims and reporting procedure.

(a) A civil action under this chapter may not be brought:

(1) More than 6 years after the date on which the violation is committed; or

(2) More than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the Government charged with responsibility to act in the circumstances,

but in no event more than 10 years after the date on which the violation is committed, whichever occurs last.

(b) In any action brought under this chapter, the Government or the private party shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.

(c) Notwithstanding any other provision of law, the Delaware Rules of Criminal Procedure, or the Delaware Rules of Civil Procedure, a final judgment rendered in favor of the Government in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under this chapter. (72 Del. Laws, c. 370, § 1.)

NOTICE: The Delaware Code appearing on this site was prepared by the Division of Research of Legislative Council of the General Assembly with the assistance of the Government Information Center, under the supervision of the Delaware Code Revisors and the editorial staff of LexisNexis, includes all acts up to and including 76 Del. Laws, c. 422, effective October 31, 2008.

DISCLAIMER: Please Note: With respect to the Delaware Code documents available from this site or server, neither the State of Delaware nor any of its employees, makes any warranty, express or implied, including the warranties of merchantability and fitness for a particular purpose, or assumes any legal liability or responsibility for the accuracy, completeness, or usefulness of any information, apparatus, product, or process disclosed, or represents that its use would not infringe privately-owned rights. This information is provided for informational purposes only. Please seek legal counsel for help on interpretation of individual statutes.

Select Year: 2008 ▾ Go

# The 2008 Florida Statutes

| Title VI | Chapter 68 | View Entire Chapter |
|---|---|---|
| CIVIL PRACTICE AND PROCEDURE | MISCELLANEOUS PROCEEDINGS | |

**68.083 Civil actions for false claims.--**

(1)  The department may diligently investigate a violation under s. 68.082. If the department finds that a person has violated or is violating s. 68.082, the department may bring a civil action under the Florida False Claims Act against the person. The Department of Financial Services may bring a civil action under this section if the action arises from an investigation by that department and the Department of Legal Affairs has not filed an action under this act.

(2)  A person may bring a civil action for a violation of s. 68.082 for the person and for the affected agency. Civil actions instituted under this act shall be governed by the Florida Rules of Civil Procedure and shall be brought in the name of the State of Florida. Prior to the court unsealing the complaint under subsection (3), the action may be voluntarily dismissed by the person bringing the action only if the department gives written consent to the dismissal and its reasons for such consent.

(3)  The complaint shall be identified on its face as a qui tam action and shall be filed in the circuit court of the Second Judicial Circuit, in and for Leon County. Immediately upon the filing of the complaint, a copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Attorney General, as head of the department, and on the Chief Financial Officer, as head of the Department of Financial Services, by registered mail, return receipt requested. The department, or the Department of Financial Services under the circumstances specified in subsection (4), may elect to intervene and proceed with the action, on behalf of the state, within 60 days after it receives both the complaint and the material evidence and information.

(4)  If a person brings an action under subsection (2) and the action is based upon the facts underlying a pending investigation by the Department of Financial Services, the Department of Financial Services, instead of the department, may take over the action on behalf of the state. In order to take over the action, the Department of Financial Services must give the department written notification within 20 days after the action is filed that the Department of Financial Services is conducting an investigation of the facts of the action and that the Department of Financial Services, instead of the department, will take over the action filed under subsection (2). If the Department of Financial Services takes over the action under this subsection, the word "department" as used in this act means the Department of Financial Services, and that department, for purposes of that action, shall have all rights and standing granted the department under this act.

(5)  The department may, for good cause shown, request the court to extend the time during which the complaint remains under seal under subsection (2). Any such motion may be supported by affidavits or other submissions in camera. The defendant is not required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant in accordance with law.

(6)  Before the expiration of the 60-day period or any extensions obtained under subsection (5), the department shall:

(a)  Proceed with the action, in which case the action is conducted by the department on behalf of the state; or

(b)  Notify the court that it declines to take over the action, in which case the person bringing the action has the right to conduct the action.

(7)  When a person files an action under this section, no person other than the department on behalf of the state may intervene or bring an action under this act based on the facts underlying the pending action.

**History.**--s. 3, ch. 94-316; s. 103, ch. 2003-261; s. 3, ch. 2007-236.

---

Copyright © 1995-2008 The Florida Legislature • <u>Privacy Statement</u> • <u>Contact Us</u>

12/4/2008                                  [PART II

## [PART II.]   QUI TAM ACTIONS OR RECOVERY OF
## FALSE CLAIMS TO THE STATE

**§661-21   Actions for false claims to the State; qui tam actions.** (a)  Notwithstanding section 661-7 to the contrary, any person who:

(1) Knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;

(2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

(3) Conspires to defraud the State by getting a false or fraudulent claim allowed or paid;

(4) Has possession, custody, or control of property or money used, or to be used, by the State and, intending to defraud the State or wilfully to conceal the property, delivers, or causes to be delivered, less property than the amount for which the person receives a certificate or receipt;

(5) Is authorized to make or deliver a document certifying receipt of property used, or to be used by the State and, intending to defraud the State, makes or delivers the receipt without completely knowing that the information on the receipt is true;

(6) Knowingly buys, or receives as a pledge of an obligation or debt, public property from any officer or employee of the State who may not lawfully sell or pledge the property;

(7) Knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the State; or

(8) Is a beneficiary of an inadvertent submission of a false claim to the State, who subsequently discovers the falsity of the claim, and fails to disclose the false claim to the State within a reasonable time after discovery of the false claim;

shall be liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages that the State sustains due to the act of that person.
     (b)   If the court finds that a person who has violated subsection (a):

(1) Furnished officials of the State responsible for investigating false claims violations with all information known to the person about the violation within thirty days after the date on which the defendant first obtained the information;

(2) Fully cooperated with any state investigation of such violation; and

(3) At the time the person furnished the State with the information about the violation, no criminal

prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation;

the court may assess not less than two times the amount of damages that the State sustains because of the act of the person.  A person violating subsection (a), shall also be liable to the State for the costs and attorneys' fees of a civil action brought to recover the penalty or damages.

(c)   Liability under this section shall be joint and several for any act committed by two or more persons.

(d)   This section shall not apply to any controversy involving an amount of less than $500 in value.  For purposes of this subsection, "controversy" means the aggregate of any one or more false claims submitted by the same person in violation of this part.  Proof of specific intent to defraud is not required.

(e)   For purposes of this section:

"Claim" includes any request or demand, whether under a contract or otherwise, for money or property that is made to a contractor, grantee, or other recipient if the State provides any portion of the money or property that is requested or demanded, or if the government will reimburse the contractor, grantee, or other recipient for any portion of the money or property that is requested or demanded.

"Knowing" and "knowingly" means that a person, with respect to information:

(1)  Has actual knowledge of the information;

(2)  Acts in deliberate ignorance of the truth or falsity of the information; or

(3)  Acts in reckless disregard of the truth or falsity of the information;

and no proof of specific intent to defraud is required.

(f)   This section shall not apply to claims, records, or statements for which procedures and remedies are otherwise specifically provided for under chapter 231. [L 2000, c 126, pt of §1; am L 2001, c 55, §28(1)]

## Case Notes

Defendants' motion for summary judgment granted as to plaintiffs' claim under the federal and state False Claims Acts (claim analyzed under the federal Act); there were no genuine issues of material fact as to whether defendant knowingly submitted false claims to medicare under the "incident to" rules.  490 F. Supp. 2d 1062.

# Illinois General Assembly

Home   Legislation & Laws   Senate   House   My Legislation   Site Map

Bills & Resolutions

Compiled Statutes

Public Acts

Legislative Reports

IL Constitution

Legislative Guide

Legislative Glossary

**Search By Number**
(example: HB0001)

[ Go ] Search Tips

**Search By Keyword**

[ Go ]
☐ Alternate Search

Search Tips

Advanced Search





## Illinois Compiled Statutes

**Back to Act Listing   Public Acts   Search   Guide   Disclaimer   Printer-Friendly Version**

## CIVIL LIABILITIES
## (740 ILCS 175/) Whistleblower Reward and Protection Act.

(740 ILCS 175/1) (from Ch. 127, par. 4101)
Sec. 1. This Act may be cited as the Whistleblower Reward and Protection Act.
(Source: P.A. 87-662.)

(740 ILCS 175/2) (from Ch. 127, par. 4102)
Sec. 2. Definitions. As used in this Act:
(a) "State" means the State of Illinois; any agency of State government; the system of State colleges and universities, any school district, community college district, county, municipality, municipal corporation, unit of local government, and any combination of the above under an intergovernmental agreement that includes provisions for a governing body of the agency created by the agreement.
(b) "Guard" means the Illinois National Guard.
(c) "Investigation" means any inquiry conducted by any investigator for the purpose of ascertaining whether any person is or has been engaged in any violation of this Act.
(d) "Investigator" means a person who is charged by the Department of State Police with the duty of conducting any investigation under this Act, or any officer or employee of the State acting under the direction and supervision of the Department of State Police, through the Division of Operations or the Division of Internal Investigation, in the course of an investigation.
(e) "Documentary material" includes the original or any copy of any book, record, report, memorandum, paper, communication, tabulation, chart, or other document, or data compilations stored in or accessible through computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations, and any product of discovery.
(f) "Custodian" means the custodian, or any deputy custodian, designated by the Attorney General under subsection (i)(1) of Section 6.
(g) "Product of discovery" includes:
(1) the original or duplicate of any deposition, interrogatory, document, thing, result of the inspection of land or other property, examination, or admission, which is obtained by any method of discovery in any judicial or administrative proceeding of an adversarial nature;
(2) any digest, analysis, selection, compilation, or derivation of any item listed in paragraph (1); and
(3) any index or other manner of access to any item listed in paragraph (1).
(Source: P.A. 95-128, eff. 1-1-08.)

12/4/2008

Case3:09-cv-02457-BZ   Document1-1   Filed06/03/09   Page61 of 84
./40 ILCS 175/ Whistleblower Rewar...

(740 ILCS 175/3) (from Ch. 127, par. 4103)
Sec. 3. False claims.
(a) Liability for certain acts. Any person who:
    (1) knowingly presents, or causes to be presented,
        to an officer or employee of the State or a member of the
        Guard a false or fraudulent claim for payment or approval;
        (2) knowingly makes, uses, or causes to be made or
    used, a false record or statement to get a false or
    fraudulent claim paid or approved by the State;
        (3) conspires to defraud the State by getting a
    false or fraudulent claim allowed or paid;
        (4) has possession, custody, or control of property
    or money used, or to be used, by the State and, intending
    to defraud the State or willfully to conceal the property,
    delivers, or causes to be delivered, less property than
    the amount for which the person receives a certificate or
    receipt;
        (5) authorized to make or deliver a document
    certifying receipt of property used, or to be used, by the
    State and, intending to defraud the State, makes or
    delivers the receipt without completely knowing that the
    information on the receipt is true;
        (6) knowingly buys, or receives as a pledge of an
    obligation or debt, public property from an officer or
    employee of the State, or a member of the Guard, who
    lawfully may not sell or pledge the property;
        (7) knowingly makes, uses, or causes to be made or
    used, a false record or statement to conceal, avoid or
    decrease an obligation to pay or transmit money or
    property to the State;
        (8) knowingly takes adverse employment action against
    an employee for disclosing information to a government or
    law enforcement agency, if the employee has reasonable
    cause to believe that the information discloses a
    violation of State or federal law, rule, or regulation; or
        (9) knowingly retaliates against an employee who has
    disclosed information in a court, an administrative
    hearing, before a legislative commission or committee, or
    in another proceeding and discloses information, if the
    employee has reasonable cause to believe that the
    information discloses a violation of State or federal law,
    rule, or regulation,
is liable to the State for a civil penalty of not less than
$5,500 and not more than $11,000, plus 3 times the amount of
damages which the State sustains because of the act of that
person. A person violating this subsection (a) shall also be
liable to the State for the costs of a civil action brought to
recover any such penalty or damages.
    (b) Knowing and knowingly defined. As used in this
Section, the terms "knowing" and "knowingly" mean that a
person, with respect to information:
        (1) has actual knowledge of the information;
        (2) acts in deliberate ignorance of the truth or
    falsity of the information; or
        (3) acts in reckless disregard of the truth or
    falsity of the information, and no proof of specific

intent to defraud is required.

(c) Claim defined. As used in this Section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the State provides any portion of the money or property which is requested or demanded, or if the State will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. A claim also includes a request or demand for money damages or injunctive relief on behalf of an employee who has suffered an adverse employment action taken in violation of paragraphs (8) or (9) of subsection (a).

(d) Exclusion. This Section does not apply to claims, records, or statements made under the Illinois Income Tax Act. (Source: P.A. 94-1059, eff. 7-31-06; 95-128, eff. 1-1-08.)

(740 ILCS 175/4) (from Ch. 127, par. 4104)

Sec. 4. Civil actions for false claims.

(a) Responsibilities of the Attorney General and the Department of State Police. The Department of State Police shall diligently investigate a civil violation under Section 3, except for civil violations under Section 3 that relate to and adversely affect primarily the system of State colleges and universities, any school district, any public community college district, any municipality, municipal corporations, units of local government, or any combination of the above under an intergovernmental agreement that includes provisions for a governing board of the agency created by the agreement. The Attorney General may bring a civil action under this Section against any person that has violated or is violating Section 3.

(b) Actions by private persons.

(1) A person may bring a civil action for a violation of Section 3 for the person and for the State. The action shall be brought in the name of the State. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

(2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the State. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The State may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

(3) The State may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this Section until 20 days after the complaint is unsealed and served upon the defendant.

(4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the State

shall:

    (A) proceed with the action, in which case the action shall be conducted by the State; or

    (B) notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

  (5) When a person brings an action under this subsection (b), no person other than the State may intervene or bring a related action based on the facts underlying the pending action.

  (c) Rights of the parties to Qui Tam actions.

  (1) If the State proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

    (2) (A) The State may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the State of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

    (B) The State may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

    (C) Upon a showing by the State that unrestricted participation during the course of the litigation by the person initiating the action would interfere with or unduly delay the State's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment, the court may, in its discretion, impose limitations on the person's participation, such as:

      (i) limiting the number of witnesses the person may call:

      (ii) limiting the length of the testimony of such witnesses;

      (iii) limiting the person's cross-examination of witnesses; or

      (iv) otherwise limiting the participation by the person in the litigation.

    (D) Upon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

    (3) If the State elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the State so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition

transcripts (at the State's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the State to intervene at a later date upon a showing of good cause.

(4) Whether or not the State proceeds with the action, upon a showing by the State that certain actions of discovery by the person initiating the action would interfere with the State's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days. Such a showing shall be conducted in camera. The court may extend the 60-day period upon a further showing in camera that the State has pursued the criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

(5) Notwithstanding subsection (b), the State may elect to pursue its claim through any alternate remedy available to the State, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this Section. Any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties to an action under this Section. For purposes of the preceding sentence, a finding or conclusion is final if it has been finally determined on appeal to the appropriate court, if all time for filing such an appeal with respect to the finding or conclusion has expired, or if the finding or conclusion is not subject to judicial review.

(d) Award to Qui Tam plaintiff.

(1) If the State proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15% but not more than 25% of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or Auditor General's report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10% of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph (1) shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. The

State shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred by the Attorney General, including reasonable attorneys' fees and costs, and the amount received shall be deposited in the Whistleblower Reward and Protection Fund created under this Act. All such expenses, fees, and costs shall be awarded against the defendant. When the system of State colleges and universities, any school district, any public community college district, any municipality, any municipal corporation, any unit of local government, or any combination of the above under an intergovernmental agreement has been adversely affected by a defendant, the court may award such sums as it considers appropriate to the affected entity, specifying in its order the amount to be awarded to the entity from the net proceeds that are deposited in the Whistleblower Reward and Protection Fund.

(2) If the State does not proceed with an action under this Section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25% and not more than 30% of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

(3) Whether or not the State proceeds with the action, if the court finds that the action was brought by a person who planned and initiated the violation of Section 3 upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive under paragraph (1) or (2) of this subsection (d), taking into account the role of that person in advancing the case to litigation and any relevant circumstances pertaining to the violation. If the person bringing the action is convicted of criminal conduct arising from his or her role in the violation of Section 3, that person shall be dismissed from the civil action and shall not receive any share of the proceeds of the action. Such dismissal shall not prejudice the right of the State to continue the action.

(4) If the State does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

(e) Certain actions barred.

(1) No court shall have jurisdiction over an action brought by a former or present member of the Guard under subsection (b) of this Section against a member of the Guard arising out of such person's service in the Guard.

(2) (A) No court shall have jurisdiction over an action brought under subsection (b) against a member

of the General Assembly, a member of the judiciary, or an exempt official if the action is based on evidence or information known to the State when the action was brought.

(B) For purposes of this paragraph (2), "exempt official" means any of the following officials in State service: directors of departments established under the Civil Administrative Code of Illinois, the Adjutant General, the Assistant Adjutant General, the Director of the State Emergency Services and Disaster Agency, members of the boards and commissions, and all other positions appointed by the Governor by and with the consent of the Senate.

(3) In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the State is already a party.

(4) (A) No court shall have jurisdiction over an action under this Section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or Auditor General's report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph (4), "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State before filing an action under this Section which is based on the information.

(f) State not liable for certain expenses. The State is not liable for expenses which a person incurs in bringing an action under this Section.

(g) Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this Section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this Section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate circuit court for the relief provided in this subsection (g).

(Source: P.A. 89-260, eff. 1-1-96.)


(740 ILCS 175/5) (from Ch. 127, par. 4105)
Sec. 5. False claims procedure.
(a) A subpoena requiring the attendance of a witness at a

trial or hearing conducted under Section 4 of this Act may be served at any place in the State.

(b) A civil action under Section 4 may not be brought:

(1) more than 6 years after the date on which the violation of Section 3 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the State charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

(c) In any action brought under Section 4, the State shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence.

(d) Notwithstanding any other provision of law, a final judgement rendered in favor of the State in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of Section 4.

(Source: P.A. 87-662.)


(740 ILCS 175/6) (from Ch. 127, par. 4106)

Sec. 6. Subpoenas.

(a) In general.

(1) Issuance and service. Whenever the Attorney General has reason to believe that any person may be in possession, custody, or control of any documentary material or information relevant to an investigation, the Attorney General may, before commencing a civil proceeding under this Act, issue in writing and cause to be served upon such person, a subpoena requiring such person:

(A) to produce such documentary material for inspection and copying,

(B) to answer, in writing, written interrogatories with respect to such documentary material or information,

(C) to give oral testimony concerning such documentary material or information, or

(D) to furnish any combination of such material, answers, or testimony.

The Attorney General may delegate the authority to issue subpoenas under this subsection (a) to the Department of State Police subject to conditions as the Attorney General deems appropriate. Whenever a subpoena is an express demand for any product of discovery, the Attorney General or his or her delegate shall cause to be served, in any manner authorized by this Section, a copy of such demand upon the person from whom the discovery was obtained and shall notify the person to whom such demand is issued of the date on which such copy was served.

(1.5) Where a subpoena requires the production of documentary material, the respondent shall produce the original of the documentary material, provided, however,

that the Attorney General may agree that copies may be substituted for the originals. All documentary material kept or stored in electronic form, including electronic mail, shall be produced in hard copy, unless the Attorney General agrees that electronic versions may be substituted for the hard copy. The production of documentary material shall be made at the respondent's expense.

(2) Contents and deadlines. Each subpoena issued under paragraph (1):

(A) Shall state the nature of the conduct constituting an alleged violation that is under investigation and the applicable provision of law alleged to be violated.

(B) Shall identify the individual causing the subpoena to be served and to whom communications regarding the subpoena should be directed.

(C) Shall state the date, place, and time at which the person is required to appear, produce written answers to interrogatories, produce documentary material or give oral testimony. The date shall not be less than 10 days from the date of service of the subpoena. Compliance with the subpoena shall be at the Office of the Attorney General in either the Springfield or Chicago location or at other location by agreement.

(D) If the subpoena is for documentary material or interrogatories, shall describe the documents or information requested with specificity.

(E) Shall notify the person of the right to be assisted by counsel.

(F) Shall advise that the person has 20 days from the date of service or up until the return date specified in the demand, whichever date is earlier, to move, modify, or set aside the subpoena pursuant to subparagraph (j)(2)(A) of this Section.

(b) Protected material or information.

(1) In general. A subpoena issued under subsection (a) may not require the production of any documentary material, the submission of any answers to written interrogatories, or the giving of any oral testimony if such material, answers, or testimony would be protected from disclosure under:

(A) the standards applicable to subpoenas or subpoenas duces tecum issued by a court of this State to aid in a grand jury investigation; or

(B) the standards applicable to discovery requests under the Code of Civil Procedure, to the extent that the application of such standards to any such subpoena is appropriate and consistent with the provisions and purposes of this Section.

(2) Effect on other orders, rules, and laws. Any such subpoena which is an express demand for any product of discovery supersedes any inconsistent order, rule, or provision of law (other than this Section) preventing or restraining disclosure of such product of discovery to any person. Disclosure of any product of discovery pursuant to any such subpoena does not constitute a waiver of any right or privilege which the person making such disclosure

may be entitled to invoke to resist discovery of trial preparation materials.

(c) Service in general. Any subpoena issued under subsection (a) may be served by any person so authorized by the Attorney General or by any person authorized to serve process on individuals within Illinois, through any method prescribed in the Code of Civil Procedure or as otherwise set forth in this Act.

(d) Service upon legal entities and natural persons.

(1) Legal entities. Service of any subpoena issued under subsection (a) or of any petition filed under subsection (j) may be made upon a partnership, corporation, association, or other legal entity by:

(A) delivering an executed copy of such subpoena or petition to any partner, executive officer, managing agent, general agent, or registered agent of the partnership, corporation, association or entity;

(B) delivering an executed copy of such subpoena or petition to the principal office or place of business of the partnership, corporation, association, or entity; or

(C) depositing an executed copy of such subpoena or petition in the United States mails by registered or certified mail, with a return receipt requested, addressed to such partnership, corporation, association, or entity as its principal office or place of business.

(2) Natural person. Service of any such subpoena or petition may be made upon any natural person by:

(A) delivering an executed copy of such subpoena or petition to the person; or

(B) depositing an executed copy of such subpoena or petition in the United States mails by registered or certified mail, with a return receipt requested, addressed to the person at the person's residence or principal office or place of business.

(e) Proof of service. A verified return by the individual serving any subpoena issued under subsection (a) or any petition filed under subsection (j) setting forth the manner of such service shall be proof of such service. In the case of service by registered or certified mail, such return shall be accompanied by the return post office receipt of delivery of such subpoena.

(f) Documentary material.

(1) Sworn certificates. The production of documentary material in response to a subpoena served under this Section shall be made under a sworn certificate, in such form as the subpoena designates, by:

(A) in the case of a natural person, the person to whom the subpoena is directed, or

(B) in the case of a person other than a natural person, a person having knowledge of the facts and circumstances relating to such production and authorized to act on behalf of such person.

The certificate shall state that all of the documentary material required by the demand and in the possession, custody, or control of the person to whom the subpoena is directed has been produced and made available to the

Attorney General.

(2) Production of materials. Any person upon whom any subpoena for the production of documentary material has been served under this Section shall make such material available for inspection and copying to the Attorney General at the place designated in the subpoena, or at such other place as the Attorney General and the person thereafter may agree and prescribe in writing, or as the court may direct under subsection (j)(1). Such material shall be made so available on the return date specified in such subpoena, or on such later date as the Attorney General may prescribe in writing. Such person may, upon written agreement between the person and the Attorney General, substitute copies for originals of all or any part of such material.

(g) Interrogatories. Each interrogatory in a subpoena served under this Section shall be answered separately and fully in writing under oath and shall be submitted under a sworn certificate, in such form as the subpoena designates by:

(1) in the case of a natural person, the person to whom the subpoena is directed, or

(2) in the case of a person other than a natural person, the person or persons responsible for answering each interrogatory.

If any interrogatory is objected to, the reasons for the objection shall be stated in the certificate instead of an answer. The certificate shall state that all information required by the subpoena and in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted. To the extent that any information is not furnished, the information shall be identified and reasons set forth with particularity regarding the reasons why the information was not furnished.

(h) Oral examinations.

(1) Procedures. The examination of any person pursuant to a subpoena for oral testimony served under this Section shall be taken before an officer authorized to administer oaths and affirmations by the laws of this State or of the place where the examination is held. The officer before whom the testimony is to be taken shall put the witness on oath or affirmation and shall, personally or by someone acting under the direction of the officer and in the officer's presence, record the testimony of the witness. The testimony shall be taken stenographically and shall be transcribed. When the testimony is fully transcribed, the officer before whom the testimony is taken shall promptly transmit a certified copy of the transcript of the testimony in accordance with the instructions of the Attorney General. This subsection shall not preclude the taking of testimony by any means authorized by, and in a manner consistent with, the Code of Civil Procedure.

(2) Persons present. The investigator conducting the examination shall exclude from the place where the examination is held all persons except the person giving the testimony, the attorney for and any other representative of the person giving the testimony, the attorney for the State, any person who may be agreed upon

by the attorney for the State and the person giving the testimony, the officer before whom the testimony is to be taken, and any stenographer taking such testimony.

(3) Where testimony taken. The oral testimony of any person taken pursuant to a subpoena served under this Section shall be taken in the county within which such person resides, is found, or transacts business, or in such other place as may be agreed upon by the Attorney General and such person.

(4) Transcript of testimony. When the testimony is fully transcribed, the Attorney General or the officer before whom the testimony is taken shall afford the witness, who may be accompanied by counsel, a reasonable opportunity to review and correct the transcript, in accordance with the rules applicable to deposition witnesses in civil cases. Upon payment of reasonable charges, the Attorney General shall furnish a copy of the transcript to the witness, except that the Attorney General may, for good cause, limit the witness to inspection of the official transcript of the witness' testimony.

(5) Conduct of oral testimony.

(A) Any person compelled to appear for oral testimony under a subpoena issued under subsection (a) may be accompanied, represented, and advised by counsel, who may raise objections based on matters of privilege in accordance with the rules applicable to depositions in civil cases. If such person refuses to answer any question, a petition may be filed in circuit court under subsection (j)(1) for an order compelling such person to answer such question.

(B) If such person refuses any question on the grounds of the privilege against self-incrimination, the testimony of such person may be compelled in accordance with Article 106 of the Code of Criminal Procedure of 1963.

(6) Witness fees and allowances. Any person appearing for oral testimony under a subpoena issued under subsection (a) shall be entitled to the same fees and allowances which are paid to witnesses in the circuit court.

(i) Custodians of documents, answers, and transcripts.

(1) Designation. The Attorney General or his or her delegate shall serve as custodian of documentary material, answers to interrogatories, and transcripts of oral testimony received under this Section.

(2) Except as otherwise provided in this Section, no documentary material, answers to interrogatories, or transcripts of oral testimony, or copies thereof, while in the possession of the custodian, shall be available for examination by any individual, except as determined necessary by the Attorney General and subject to the conditions imposed by him or her for effective enforcement of the laws of this State, or as otherwise provided by court order.

(3) Conditions for return of material. If any documentary material has been produced by any person in the course of any investigation pursuant to a subpoena

under this Section and:

(A) any case or proceeding before the court or grand jury arising out of such investigation, or any proceeding before any State agency involving such material, has been completed, or

(B) no case or proceeding in which such material may be used has been commenced within a reasonable time after completion of the examination and analysis of all documentary material and other information assembled in the course of such investigation,

the custodian shall, upon written request of the person who produced such material, return to such person any such material which has not passed into the control of any court, grand jury, or agency through introduction into the record of such case or proceeding.

(j) Judicial proceedings.

(1) Petition for enforcement. Whenever any person fails to comply with any subpoena issued under subsection (a), or whenever satisfactory copying or reproduction of any material requested in such demand cannot be done and such person refuses to surrender such material, the Attorney General may file, in the circuit court of any county in which such person resides, is found, or transacts business, or the circuit court of the county in which an action filed pursuant to Section 4 of this Act is pending if the action relates to the subject matter of the subpoena and serve upon such person a petition for an order of such court for the enforcement of the subpoena.

(2) Petition to modify or set aside subpoena.

(A) Any person who has received a subpoena issued under subsection (a) may file, in the circuit court of any county within which such person resides, is found, or transacts business, and serve upon the Attorney General a petition for an order of the court to modify or set aside such subpoena. In the case of a petition addressed to an express demand for any product of discovery, a petition to modify or set aside such demand may be brought only in the circuit court of the county in which the proceeding in which such discovery was obtained is or was last pending. Any petition under this subparagraph (A) must be filed:

(i) within 20 days after the date of service of the subpoena, or at any time before the return date specified in the subpoena, whichever date is earlier, or

(ii) within such longer period as may be prescribed in writing by the Attorney General.

(B) The petition shall specify each ground upon which the petitioner relies in seeking relief under subparagraph (A), and may be based upon any failure of the subpoena to comply with the provisions of this Section or upon any constitutional or other legal right or privilege of such person. During the pendency of the petition in the court, the court may stay, as it deems proper, the running of the time allowed for compliance with the subpoena, in whole or in part, except that the person filing the petition shall

comply with any portion of the subpoena not sought to be modified or set aside.

(3) Petition to modify or set aside demand for product of discovery. In the case of any subpoena issued under subsection (a) which is an express demand for any product of discovery, the person from whom such discovery was obtained may file, in the circuit court of the county in which the proceeding in which such discovery was obtained is or was last pending, a petition for an order of such court to modify or set aside those portions of the subpoena requiring production of any such product of discovery, subject to the same terms, conditions, and limitations set forth in subparagraph (j)(2) of this Section.

(4) Jurisdiction. Whenever any petition is filed in any circuit court under this subsection (j), such court shall have jurisdiction to hear and determine the matter so presented, and to enter such orders as may be required to carry out the provisions of this Section. Any final order so entered shall be subject to appeal in the same manner as appeals of other final orders in civil matters. Any disobedience of any final order entered under this Section by any court shall be punished as a contempt of the court.

(k) Disclosure exemption. Any documentary material, answers to written interrogatories, or oral testimony provided under any subpoena issued under subsection (a) shall be exempt from disclosure under the Illinois Administrative Procedure Act.
(Source: P.A. 93-579, eff. 1-1-04; 94-940, eff. 1-1-07.)


(740 ILCS 175/7) (from Ch. 127, par. 4107)
Sec. 7. Procedure. The Code of Civil Procedure shall apply to all proceedings under this Act, except when that Code is inconsistent with this Act.
(Source: P.A. 87-662.)


(740 ILCS 175/8) (from Ch. 127, par. 4108)
Sec. 8. Funds; Grants.
(a) There is hereby created the Whistleblower Reward and Protection Fund as a special fund in the State Treasury. All proceeds of an action or settlement of a claim brought under this Act shall be deposited in the Fund.

(b) Monies in the Fund shall be allocated, subject to appropriation, as follows: One-sixth of the monies shall be paid to the Attorney General and one-sixth of the monies shall be paid to the Department of State Police for State law enforcement purposes. The remaining two-thirds of the monies in the Fund shall be used for payment of awards to Qui Tam plaintiffs, for attorneys' fees and expenses, and as otherwise specified in this Act. The Attorney General shall direct the State Treasurer to make disbursement of funds as provided in court orders setting those awards, fees, and expenses. The State Treasurer shall transfer any fund balances in excess of those required for these purposes to the General Revenue Fund.
(Source: P.A. 87-662.)

Top

---

Home | Legislation & Laws | House | Senate | My Legislation | Disclaimers | Email

---



This site is maintained for the Illinois General Assembly by the
Legislative Information System, 705 Stratton Building, Springfield, Illinois 62706
217-782-3944   217-782-2050 (TTY)

🔲                                                        ☐ ☐ ☐ ☐ **Go**

---

**Information Maintained by the Office of Code Revision Indiana Legislative Services Agency**
12/04/2008 12:27:23 PM EST

## IC 5-11-5.5
Chapter 5.5. False Claims and Whistleblower Protection

## IC 5-11-5.5-1
**Definitions**
    Sec. 1. The following definitions apply throughout this chapter:
    (1) "Claim" means a request or demand for money or property that is made to a contractor, grantee, or other recipient if the state:
        (A) provides any part of the money or property that is requested or demanded; or
        (B) will reimburse the contractor, grantee, or other recipient for any part of the money or property that is requested or demanded.
    (2) "Documentary material" means:
        (A) the original or a copy of a book, record, report, memorandum, paper, communication, tabulation, chart, or other document;
        (B) a data compilation stored in or accessible through computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret the data compilations; and
        (C) a product of discovery.
    (3) "Investigation" means an inquiry conducted by an investigator to ascertain whether a person is or has been engaged in a violation of this chapter.
    (4) "Knowing", "knowingly", or "known" means that a person, regarding information:
        (A) has actual knowledge of the information;
        (B) acts in deliberate ignorance of the truth or falsity of the information; or
        (C) acts in reckless disregard of the truth or falsity of the information.
    (5) "Person" includes a natural person, a corporation, a firm, an association, an organization, a partnership, a limited liability company, a business, or a trust.
    (6) "Product of discovery" means the original or duplicate of:
        (A) a deposition;
        (B) an interrogatory;
        (C) a document;
        (D) a thing;
        (E) a result of the inspection of land or other property; or
        (F) an examination or admission;
    that is obtained by any method of discovery in a judicial or an administrative proceeding of an adversarial nature. The term includes a digest, an analysis, a selection, a compilation, a derivation, an index, or another

nature. The term includes a digest, an analysis, a selection, a compilation, a derivation, an index, or another method of accessing an item listed in this subdivision.

(7) "State" means Indiana or any agency of state government. The term does not include a political subdivision.

*As added by P.L.222-2005, SEC.23. Amended by P.L.79-2007, SEC.1.*

## IC 5-11-5.5-2
**False claims; civil penalty; reduced penalty for certain disclosures**

Sec. 2. (a) This section does not apply to a claim, record, or statement concerning income tax (IC 6-3).

(b) A person who knowingly or intentionally:

(1) presents a false claim to the state for payment or approval;

(2) makes or uses a false record or statement to obtain payment or approval of a false claim from the state;

(3) with intent to defraud the state, delivers less money or property to the state than the amount recorded on the certificate or receipt the person receives from the state;

(4) with intent to defraud the state, authorizes issuance of a receipt without knowing that the information on the receipt is true;

(5) receives public property as a pledge of an obligation on a debt from an employee who is not lawfully authorized to sell or pledge the property;

(6) makes or uses a false record or statement to avoid an obligation to pay or transmit property to the state;

(7) conspires with another person to perform an act described in subdivisions (1) through (6); or

(8) causes or induces another person to perform an act described in subdivisions (1) through (6);

is, except as provided in subsection (c), liable to the state for a civil penalty of at least five thousand dollars ($5,000) and for up to three (3) times the amount of damages sustained by the state. In addition, a person who violates this section is liable to the state for the costs of a civil action brought to recover a penalty or damages.

(c) If the factfinder determines that the person who violated this section:

(1) furnished state officials with all information known to the person about the violation not later than thirty (30) days after the date on which the person obtained the information;

(2) fully cooperated with the investigation of the violation; and

(3) did not have knowledge of the existence of an investigation, a criminal prosecution, a civil action, or an administrative action concerning the violation at the time the person provided information to state officials;

the person is liable for a penalty of not less than two (2) times the amount of damages that the state sustained because of the violation. A person who violates this section is also liable to the state for the costs of a civil action brought to recover a penalty or damages.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-3
**Duties of inspector general and attorney general; concurrent jurisdiction to investigate; civil actions; when inspector general**

**may bring a civil action; venue**

Sec. 3. (a) The:

(1) attorney general; and

(1) attorney general; and

(2) inspector general;

have concurrent jurisdiction to investigate a violation of section 2 of this chapter.

(b) If the attorney general discovers a violation of section 2 of this chapter, the attorney general may bring a civil action under this chapter against a person who may be liable for the violation.

(c) If the inspector general discovers a violation of section 2 of this chapter, the inspector general shall certify this finding to the attorney general. The attorney general may bring a civil action under this chapter against a person who may be liable for the violation.

(d) If the attorney general or the inspector general is served by a person who has filed a civil action under section 4 of this chapter, the attorney general has the authority to intervene in that action as set forth in section 4 of this chapter.

(e) If the attorney general:

(1) is disqualified from investigating a possible violation of section 2 of this chapter;

(2) is disqualified from bringing a civil action concerning a possible violation of section 2 of this chapter;

(3) is disqualified from intervening in a civil action brought under section 4 of this chapter concerning a possible violation of section 2 of this chapter;

(4) elects not to bring a civil action concerning a possible violation of section 2 of this chapter; or

(5) elects not to intervene under section 4 of this chapter;

the attorney general shall certify the attorney general's disqualification or election to the inspector general.

(f) If the attorney general has certified the attorney general's disqualification or election not to bring a civil action or intervene in a case under subsection (e), the inspector general has authority to:

(1) bring a civil action concerning a possible violation of section 2 of this chapter; or

(2) intervene in a case under section 4 of this chapter.

(g) The attorney general shall certify to the inspector general the attorney general's disqualification or election under subsection (e) in a timely fashion, and in any event not later than:

(1) sixty (60) days after being served, if the attorney general has been served by a person who has filed a civil action under section 4 of this chapter; or

(2) one hundred eighty (180) days before the expiration of the statute of limitations, if the attorney general has not been served by a person who has filed a civil action under section 4 of this chapter.

(h) A civil action brought under section 4 of this chapter may be filed in:

(1) a circuit or superior court in Marion county; or

(2) a circuit or superior court in the county in which a defendant

or plaintiff resides.

(i) The state is not required to file a bond under this chapter.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-4
**Civil action brought by person on behalf of state; dismissal; service on inspector general and attorney general; intervention by inspector general or attorney general; extension of time**

Sec. 4. (a) A person may bring a civil action for a violation of section 2 of this chapter on behalf of the person and on behalf of the state. The action:

(1) must be brought in the name of the state; and

(2) may be filed in a circuit or superior court in:

(2) may be filed in a circuit or superior court in:

    (A) the county in which the person resides;

    (B) the county in which a defendant resides; or

    (C) Marion County.

(b) Except as provided in section 5 of this chapter, an action brought under this section may be dismissed only if:

    (1) the attorney general or the inspector general, if applicable, files a written motion to dismiss explaining why dismissal is appropriate; and

    (2) the court issues an order:

        (A) granting the motion; and

        (B) explaining the court's reasons for granting the motion.

(c) A person who brings an action under this section shall serve:

    (1) a copy of the complaint; and

    (2) a written disclosure that describes all relevant material evidence and information the person possesses; on both the attorney general and the inspector general. The person shall file the complaint under seal, and the complaint shall remain under seal for at least one hundred twenty (120) days. The complaint shall not be served on the defendant until the court orders the complaint served on the defendant following the intervention or the election not to intervene of the attorney general or the inspector general. The state may elect to intervene and proceed with the action not later than one hundred twenty (120) days after it receives both the complaint and the written disclosure.

(d) For good cause shown, the attorney general or the inspector general may move the court to extend the time during which the complaint must remain under seal. A motion for extension may be supported by an affidavit or other evidence. The affidavit or other evidence may be submitted in camera.

(e) Before the expiration of the time during which the complaint is sealed, the attorney general or the inspector general may:

    (1) intervene in the case and proceed with the action, in which case the attorney general or the inspector general shall conduct the action; or

    (2) elect not to proceed with the action, in which case the person who initially filed the complaint may proceed with the action.

---

(f) The defendant in an action filed under this section is not required to answer the complaint until twenty-one (21) days after the complaint has been unsealed and served on the defendant.

(g) After a person has filed a complaint under this section, no person other than the attorney general or the inspector general may:

    (1) intervene; or

    (2) bring another action based on the same facts.

(h) If the person who initially filed the complaint:

    (1) planned and initiated the violation of section 2 of this chapter; or

    (2) has been convicted of a crime related to the person's violation of section 2 of this chapter; upon motion of the attorney general or the inspector general, the court shall dismiss the person as a plaintiff.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-5

**Responsibilities of inspector general or attorney general as intervenors in civil action; venue;**

**Responsibilities of inspector general or attorney general as intervenors in civil action; venue; complainant as party; dismissal; limitations on complainant's participation; alternative proceedings**

   Sec. 5. (a) If the attorney general or the inspector general intervenes in an action under section 4 of this chapter, the attorney general or the inspector general is responsible for prosecuting the action and is not bound by an act of the person who initially filed the complaint. The attorney general or the inspector general may move for a change of venue to Marion County if the attorney general or the inspector general files a motion for change of venue not later than ten (10) days after the attorney general or the inspector general intervenes. Except as provided in this section, the person who initially filed the complaint may continue as a party to the action.

   (b) The attorney general or the inspector general may dismiss the action after:
      (1) notifying the person who initially filed the complaint; and
      (2) the court has conducted a hearing at which the person who initially filed the complaint was provided the opportunity to be heard on the motion.

   (c) The attorney general or the inspector general may settle the action if a court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable in light of the circumstances. Upon a showing of good cause, the court may:
      (1) conduct the settlement hearing in camera; or
      (2) lift all or part of the seal to facilitate the investigative process or settlement.
The court may consider an objection to the settlement brought by the person who initially filed the complaint, but is not bound by this objection.

   (d) Upon a showing by the attorney general, the inspector general, or the defendant that unrestricted participation by the person who initially filed the complaint:
      (1) will interfere with the prosecution of the case by the

attorney general or the inspector general; or
      (2) will involve the presentation of repetitious or irrelevant evidence, or evidence introduced for purposes of harassment;
the court may impose reasonable limitations on the person's participation, including a limit on the number of witnesses that the person may call, a limit to the amount and type of evidence that the person may introduce, a limit to the length of testimony that the person's witness may present, and a limit to the person's cross-examination of a witness.

   (e) If the attorney general or the inspector general elects not to intervene in the action, the person who initially filed the complaint has the right to prosecute the action. Upon request, the attorney general or the inspector general shall be served with copies of all documents filed in the action and may obtain a copy of depositions and other transcripts at the state's expense.

   (f) If the attorney general and the inspector general have elected not to intervene in an action in accordance with section 4 of this chapter, upon a showing of good cause, a court may permit either the attorney general or the inspector general to intervene at a later time. The attorney general may move to intervene at any time. If the attorney general has not moved to intervene, the inspector general may move to intervene by providing written notice to the attorney general of the inspector general's intent to intervene. If the attorney general does not move to intervene earlier than fifteen (15) days after receipt of the notice of intent to intervene, the inspector general may move to intervene. If the attorney general or the inspector general intervenes under this subsection, the attorney general or the inspector general is responsible for prosecuting the action as if the attorney general or the inspector general had intervened in accordance with section 4 of this chapter.

   (g) If the attorney general or inspector general shows that a specific discovery action by the person who

   (g) If the attorney general or inspector general shows that a specific discovery action by the person who initially filed the complaint will interfere with the investigation or prosecution of a civil or criminal matter arising out of the same facts, the court may, following a hearing in camera, stay discovery for not more than sixty (60) days. After the court has granted a sixty (60) day stay, the court may extend the stay, following a hearing in camera, if it determines that the state has pursued the civil or criminal investigation with reasonable diligence and that a specific discovery action by the person who initially filed the complaint will interfere with the state's investigation or prosecution of the civil or criminal matter.

   (h) A court may dismiss an action brought under this chapter to permit the attorney general or the inspector general to pursue its claim through an alternative proceeding, including an administrative proceeding or a proceeding brought in another jurisdiction. The person who initially filed the complaint has the same rights in the alternative proceedings as the person would have had in the original proceedings. A finding of fact or conclusion of law made in the alternative proceeding is binding on all parties to an action under this section once the determination made in the alternative proceeding is

final under the rules, regulations, statutes, or law governing the alternative proceeding, or if the time for seeking an appeal or review of the determination made in the alternative proceeding has elapsed.
*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-6
### Compensation to complainant; exceptions and modifications
   Sec. 6. (a) The person who initially filed the complaint is entitled to the following amounts if the state prevails in the action:
   (1) Except as provided in subdivision (2), if the attorney general or the inspector general intervened in the action, the person is entitled to receive at least fifteen percent (15%) and not more than twenty-five percent (25%) of the proceeds of the action or settlement, plus reasonable attorney's fees and an amount to cover the expenses and costs of bringing the action.
   (2) If the attorney general or the inspector general intervened in the action and the court finds that the evidence used to prosecute the action consisted primarily of specific information contained in:
       (A) a transcript of a criminal, a civil, or an administrative hearing;
       (B) a legislative, an administrative, or another public report, hearing, audit, or investigation; or
       (C) a news media report;
   the person is entitled to receive not more than ten percent (10%) of the proceeds of the action or settlement, plus reasonable attorney's fees and an amount to cover the expenses and costs of bringing the action.
   (3) If the attorney general or the inspector general did not intervene in the action, the person is entitled to receive at least twenty-five percent (25%) and not more than thirty percent (30%) of the proceeds of the action or settlement, plus reasonable attorney's fees and an amount to cover the expenses and costs of bringing the action.
   (4) If the person who initially filed the complaint:
       (A) planned and initiated the violation of section 2 of this chapter; or
       (B) has been convicted of a crime related to the person's violation of section 2 of this chapter;
   the person is not entitled to an amount under this section.
After conducting a hearing at which the attorney general or the inspector general and the person who initially filed the complaint may be heard, the court shall determine the specific amount to be awarded under this section to the person who initially filed the complaint. The award of reasonable attorney's fees plus an amount to cover the

the person who initially filed the complaint. The award of reasonable attorney's fees plus an amount to cover the expenses and costs of bringing the action is an additional cost assessed against the defendant and may not be paid from the proceeds of the civil action.

(b) If:

(1) the attorney general or the inspector general did not

intervene in the action; and

(2) the defendant prevails;

the court may award the defendant reasonable attorney's fees plus an amount to cover the expenses and costs of defending the action, if the court finds that the action is frivolous.

(c) The state is not liable for the expenses, costs, or attorney's fees of a party to an action brought under this chapter.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-7
## Lack of jurisdiction over certain civil actions brought by individual

Sec. 7. (a) This section does not apply to an action brought by:

(1) the attorney general;

(2) the inspector general;

(3) a prosecuting attorney; or

(4) a state employee in the employee's official capacity.

(b) A court does not have jurisdiction over an action brought under section 4 of this chapter that is based on information discovered by a present or former state employee in the course of the employee's employment, unless:

(1) the employee, acting in good faith, has exhausted existing internal procedures for reporting and recovering the amount owed the state; and

(2) the state has failed to act on the information reported by the employee within a reasonable amount of time.

(c) A court does not have jurisdiction over an action brought under section 4 of this chapter if the action is brought by an incarcerated offender, including an offender incarcerated in another jurisdiction.

(d) A court does not have jurisdiction over an action brought under section 4 of this chapter against the state, a state officer, a judge (as defined in IC 33-23-11-7), a justice, a member of the general assembly, a state employee, or an employee of a political subdivision, if the action is based on information known to the state at the time the action was brought.

(e) A court does not have jurisdiction over an action brought under section 4 of this chapter if the action is based upon an act that is the subject of a civil suit, a criminal prosecution, or an administrative proceeding in which the state is a party.

(f) A court does not have jurisdiction over an action brought under section 4 of this chapter if the action is based upon information contained in:

(1) a transcript of a criminal, a civil, or an administrative hearing;

(2) a legislative, an administrative, or another public report, hearing, audit, or investigation; or

(3) a news media report;

unless the person bringing the action has direct and independent knowledge of the information that is the basis of the action, and the person bringing the action has voluntarily provided this information

the action, and the person bringing the action has voluntarily provided this information

to the state.
*As added by P.L.222-2005, SEC.23. Amended by P.L.1-2006, SEC.98.*

## IC 5-11-5.5-8
**Relief for whistleblowers**
    Sec. 8. (a) An employee who has been discharged, demoted, suspended, threatened, harassed, or otherwise discriminated against in the terms and conditions of employment by the employee's employer because the employee:
        (1) objected to an act or omission described in section 2 of this chapter; or
        (2) initiated, testified, assisted, or participated in an investigation, an action, or a hearing under this chapter;
is entitled to all relief necessary to make the employee whole.
    (b) Relief under this section may include:
        (1) reinstatement with the same seniority status the employee would have had but for the act described in subsection (a);
        (2) two (2) times the amount of back pay owed the employee;
        (3) interest on the back pay owed the employee; and
        (4) compensation for any special damages sustained as a result of the act described in subsection (a), including costs and expenses of litigation and reasonable attorney's fees.
    (c) An employee may bring an action for the relief provided in this section in any court with jurisdiction.
*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-9
**Service of subpoena; statute of limitations; burden of proof; estoppel**
    Sec. 9. (a) A subpoena requiring the attendance of a witness at a trial or hearing conducted under this chapter may be served at any place in the state.
    (b) A civil action under section 4 of this chapter is barred unless it is commenced:
        (1) not later than six (6) years after the date on which the violation is committed; or
        (2) not later than three (3) years after the date when facts material to the cause of action are discovered or reasonably should have been discovered by a state officer or employee who is responsible for addressing the false claim. However, an action is barred unless it is commenced not later than ten (10) years after the date on which the violation is committed.
    (c) In a civil action brought under this chapter, the state is required to establish:
        (1) the essential elements of the offense; and
        (2) damages;
by a preponderance of the evidence.
    (d) If a defendant has been convicted (including a plea of guilty or nolo contendere) of a crime involving fraud or a false statement,

the defendant is estopped from denying the elements of the offense in a civil action brought under section 4 of this chapter that involves the same transaction as the criminal prosecution.
*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-10

**Civil investigative demands; procedure**

Sec. 10. (a) If the attorney general or the inspector general has reason to believe that a person may be in possession, custody, or control of documentary material or information relevant to an investigation involving a false claim, the attorney general or the inspector general may, before commencing a civil proceeding under this chapter, issue and serve a civil investigative demand requiring the person to do one (1) or more of the following:

(1) Produce the documentary material for inspection and copying.

(2) Answer an interrogatory in writing concerning the documentary material or information.

(3) Give oral testimony concerning the documentary material or information.

(b) If a civil investigative demand is a specific demand for a product of discovery, the official issuing the civil investigative demand shall:

(1) serve a copy of the civil investigative demand on the person from whom the discovery was obtained; and

(2) notify the person to whom the civil investigative demand is issued of the date of service.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-11

**Civil investigative demands; specificity and contents; time periods**

Sec. 11. (a) A civil investigative demand issued under this chapter must describe the conduct constituting a violation involving a false claim that is under investigation and the statute or rule that has been violated.

(b) If a civil investigative demand is for the production of documentary material, the civil investigative demand must:

(1) describe each class of documentary material to be produced with sufficient specificity to permit the material to be fairly identified;

(2) prescribe a return date for each class of documentary material that provides a reasonable period of time to assemble and make the material available for inspection and copying; and

(3) identify the official to whom the material must be made available.

(c) If a civil investigative demand is for answers to written interrogatories, the civil investigative demand must:

(1) set forth with specificity the written interrogatories to be answered;

(2) prescribe the date by which answers to the written

interrogatories must be submitted; and

(3) identify the official to whom the answers must be submitted.

(d) If a civil investigative demand requires oral testimony, the civil investigative demand must:

(1) prescribe a date, time, and place at which oral testimony will be given;

(2) identify the official who will conduct the examination and the custodian to whom the transcript of the examination will be submitted;

(3) specifically state that attendance and testimony are necessary to the conduct of the investigation;

(4) notify the person receiving the demand that the person has the right to be accompanied by an attorney and any other representative; and

(5) describe the general purpose for which the demand is being issued and the general nature of the testimony, including the primary areas of inquiry.

(e) A civil investigative demand that is a specific demand for a product of discovery may not be returned until at least twenty-one (21) days after a copy of the civil investigative demand has been served on the person from

at least twenty-one (21) days after a copy of the civil investigative demand has been served on the person from whom the discovery was obtained.

(f) The date prescribed for the giving of oral testimony under a civil investigative demand issued under this chapter must be a date that is not less than seven (7) days after the date on which the demand is received, unless the official issuing the demand determines that exceptional circumstances are present that require an earlier date.

(g) The official who issues a civil investigative demand may not issue more than one (1) civil investigative demand for oral testimony by the same person, unless:

(1) the person requests otherwise; or

(2) the official who issues a civil investigative demand, after conducting an investigation, notifies the person in writing that an additional civil investigative demand for oral testimony is necessary.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-12
**Civil investigative demands; protections from disclosure; objections**

Sec. 12. (a) A civil investigative demand issued under this chapter may not require the production of any documentary material, the submission of any answers to written interrogatories, or the giving of any oral testimony if the material, answers, or testimony would be protected from disclosure under the standards applicable:

(1) to a subpoena or subpoena duces tecum issued by a court to aid in a grand jury investigation; or

(2) to a discovery request under the rules of trial procedure;

to the extent that the application of these standards to a civil investigative demand is consistent with the purposes of this chapter.

(b) A civil investigative demand that is a specific demand for a product of discovery supersedes any contrary order, rule, or statutory provision, other than this section, that prevents or restricts disclosure of the product of discovery. Disclosure of a product of discovery under a specific demand does not constitute a waiver of a right or privilege that the person making the disclosure may be otherwise entitled to invoke to object to discovery of trial preparation materials.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-13
**Civil investigative demands; service**

Sec. 13. (a) A civil investigative demand issued under this chapter may be served by an investigator or by any other person authorized to serve process.

(b) A civil investigative demand shall be served in accordance with the rules of trial procedure. A court having jurisdiction over a person not located in the state has the same authority to enforce compliance with this chapter as the court has over a person located in the state.

*As added by P.L.222-2005, SEC.23.*

## IC 5-11-5.5-14
**Civil investigative demands; response**

Sec. 14. (a) The production of documentary material in response to a civil investigative demand served under this chapter shall be made in accordance with Trial Rule 34.

(b) Each interrogatory in a civil investigative demand served under this chapter shall be answered in