IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

**JOHN C. PRATHER, on behalf of himself and the UNITED STATES OF AMERICA and the several states of CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, MASSACHUSETTS, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, RHODE ISLAND, VIRGINIA, as well as the DISTRICT OF COLUMBIA,**

  **Plaintiff/Relator,**

  v.

**AT&T INC., CELLCO PARTNERSHIP d/b/a VERIZON COMMUNICATIONS, QWEST COMMUNICATIONS INTERNATIONAL, INC., and SPRINT NEXTEL CORP.,**

  **Defendants.**

_____/

No. C 09-02457 CRB

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

In this qui tam action, Relator John C. Prather ("Relator") alleges that Defendants AT&T, Inc., Cellco Partnership d/b/a Verizon Communications, Qwest Communications International, Inc., Sprint Nextel Corp. (collectively "Defendants") defrauded law enforcement agencies by overcharging for electronic surveillance services. Before the Court is Defendants' Motion to Dismiss the First Amended Complaint (dkt. 126) for lack of subject matter jurisdiction, failure to state a claim, and failure to plead fraud with particularity. Upon consideration of the motion, the

opposition thereto, and the arguments of the parties at a hearing, the Court finds that Relator fails to establish by a preponderance of the evidence that he is an original source under 31 U.S.C. § 3730(e)(4)(B). Accordingly, the Court GRANTS Defendants' Motion to Dismiss.

## I.     BACKGROUND

In 1994, Congress recognized that the emergence of digital telephone technologies threatened the availability of wiretaps for criminal investigations, as telephones no longer utilized a physical wire that could be tapped. In response, Congress enacted the Communications Assistance to Law Enforcement Agencies Act ("CALEA") to ensure that law enforcement agencies could rely on telecommunications carriers ("Telecoms") to assist in electronic surveillance. First Am. Compl. (dkt. 86) ¶ 54. CALEA required Telecoms to adapt their infrastructures to provide for continued ability to conduct wiretaps and set aside $500 million to assist Telecoms with that "implementation cost." Id. ¶ 3. Under CALEA, Telecoms may only charge for "reasonable expenses" incurred in providing electronic surveillance and are not permitted to offset their implementation costs when charging for individual wiretaps. Id. ¶ 5.

On March 10, 2004, the United States Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), and Drug Enforcement Agency ("DEA") submitted a joint petition to the Federal Communications Commission ("FCC")—the administrative body in charge of implementing CALEA—asking the FCC to resolve outstanding issues related to CALEA. See Joint Petition for Expedited Rulemaking (Jnt. Pet.) (dkt. 63-3) at 1. Among other things, the FBI and DEA noted that the FCC's publication CALEA Order On Remand explicitly contradicted CALEA by suggesting that Telecoms could recover "at least a portion of their CALEA software and hardware costs" through wiretap provisioning bills. Id. at 68-69. The petition explained that the FCC publication "led some carriers to include their capital costs in the intercept provisioning fees," making "it increasingly cost-prohibitive for law enforcement to conduct intercepts." Id. at 68. In response to the petition, the FCC initiated proceedings and invited comments on CALEA on March 12, 2004. See 4/12/2004 FCC Request for Comment on Proposed Rulemaking (dkt. 86-3).

2

Relator John C. Prather was employed by the Office of the New York Attorney General from 1999 to 2008. At the time of the FCC's request for comment, he served as Deputy Attorney General in charge of the Organized Crime Task Force, and reported directly to then-Attorney General Eliot Spitzer. Over decades of experience as a prosecutor, Relator gained "extensive knowledge of eavesdropping." First Am. Compl. ¶ 38. He observed eavesdropping charges increase tenfold after CALEA despite changes in technology that should have made it easier for Telecoms to provide wiretaps, and believed that the Telecoms were overcharging for wiretaps. Id. ¶¶ 3, 10.

Susanna Zwerling "led the process" of the Attorney General's response to the FCC's request for comment. She served as the head of the Attorney General's telecommunications bureau, and reported directly to the Attorney General. Zwerling told Relator that "we'd like to have [Attorney General] Eliot [Spitzer] put some comments in, because after all, OCTF is at the forefront" of building a CALEA-compliant network in New York. Prather Dep. (dkt. 131-1) at 145:19-21; 146:3-7; 149:3-4. Zwerling asked Relator if he could "arrange for us to do that." Id. at 146:7. When Relator asked Zwerling if the issue of overcharging could be addressed in the Attorney General's submission, she replied that "there was not a place in the comments for that." Id. at 147:15-18; 149:22-23. Zwerling later changed her mind, stating, "I think – think maybe we will put an affidavit in about [overcharging]. Can you do an affidavit for us?" Id. at 147:21-23. Relator's affidavit was attached to the Attorney General's official comment to the FCC, dated April 12, 2004. See 4/12/2004 Spitzer Comment on Proposed Rulemaking (dkt. 86-1), Exh. A ("Prather 4/12/2004 Aff.").

Relator brings this qui tam action, alleging that Defendants fraudulently overcharged "the Federal government as well as various State and City governments" for electronic surveillance services in violation of the False Claims Act, First Am. Compl. ¶¶ 2, 145-50, as well as sixteen parallel state and municipal laws,[1] ¶ ¶ 46-55.

---

[1] Relator brings claims for violation of the following state and municipal laws: California False Claims Act, Cal. Govt. Code §§ 12650–56; Delaware False Claims Act, Del. Code Ann. tit. 6 §§ 1201–11; District of Columbia False Claims Act, D.C. Code §§ 2-381.01–2-381.07; Florida State False Claims Act, Fla. Stat. Ann. §§ 68.081–68.092; Illinois False Claims Act, 740 Ill. Comp Stat. Ann. 175/1–175/8; Chicago False Claims Act, Municipal Code of Chicago, Title 1, Ch. 1-22; Indiana

In April 2012, the Court granted Defendants' Motion to Dismiss Relator's Complaint (dkt. 63) with leave to amend to allow Relator to include "everything that he believes identifies his duties, and why this wasn't within his duties, and why it was not publicly-released information public disclosure." 4/20/2012 Mot. Hr'g Tr. (dkt. 81) at 28. The Court permitted discovery regarding subject matter jurisdiction, specifically as to the scope of Relator's job responsibilities and how he claims to have received the information that makes him an original source. Id. at 25.

Defendants now move to dismiss Relator's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(1), challenging the Court's subject matter jurisdiction. Defendants alternatively move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).[2]

## II. LEGAL STANDARD

The False Claims Act ("FCA") imposes civil penalties on any person who defrauds the United States Government. See 31 U.S.C. § 3729. The Attorney General is required to investigate and bring civil actions for violations under § 3729(a), but a private person may also bring a qui tam action as a relator on behalf of the government and himself under § 3729(b). "If the relator prevails, he receives a percentage of the recovery, with the remainder being paid to the government." U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ., 161 F.3d 533, 535 (9th Cir. 1998). The FCA bars subject matter jurisdiction if the qui tam action is "based upon the public disclosure of allegations or transactions" unless the suit is brought by "an original source of the information."

---

False Claims Act, Ind. Code Ann. §§ 5-11-5.5-1–5-11-5.5-18; Massachusetts False Claims Act, Mass. Gen. Laws Ann. Ch. 12 §§ 5(A)–5(O); Nevada False Claims Act, Nev. Rev. Stat. Ann. §§ 357.010–357.250; New Hampshire False Claims Act, N.H. Rev. Stat. Ann. § 167:61; New Jersey False Claims Act, N.J. Stat. Ann §§ 2A:32C-1–32C-18; New Mexico False Claims Act, N.M. Stat. Ann. §§ 44-9-1–44-9-14; New York False Claims Act, N.Y. State Fin. Law §§ 187–194; New York City False Claims Act, Title 7, Chapter 8 §§ 7-801–7-810; Rhode Island False Claims Act, R.I. Gen. Law §§ 9-1.1-1–9-1.1-8; Virginia False Claims Act, VA. Code Ann. §§ 8.01-216.1–8.011-216.19.

[2] After the Court heard arguments on Defendants' motion, Relator moved for leave to file a surreply "to correct Defendants' counsel's mischaracterization of the facts" at the hearing. See generally Mot. For Leave (dkt. 151). Upon consideration of the motion and defendants' oppositions, see (dkt. 153, 154, 155), the Court grants Relator's motion and deems the surreply filed.

4

§ 3730(e)(4)(A). Relator, "as the qui tam plaintiff, bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." United States v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir. 1999).

The Court may look beyond the complaint to evaluate subject matter jurisdiction. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (citing Gemtel Corp. v. Cmty. Redevelopment Agency, 23 F.3d 1542, 1544 (9th Cir. 1994)). Because "[f]ederal courts have no power to consider claims for which they lack subject-matter jurisdiction," Wang v. FMC Corp., 975 F.2d 1412, 1415 (9th Cir. 1992) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)), the Court must examine whether Relator's claims "are blocked by the jurisdictional bar of section 3730(e)(4) before [it] can consider any other question." Id.

**III.   DISCUSSION**

    **A.   The 2010 Amendment To The False Claims Act Do Not Apply Here**

In 2010, the Patient Protection and Affordable Care Act amended the public disclosure bar of the FCA by modifying the definitions of "public disclosure" and "original source" and by making the public disclosure an affirmative defense rather than a jurisdictional bar. See Pub. L. 111-148, 124 Stat. 119. Relator concedes that the pre-amendment definitions of "public disclosure" and "original source" apply to this action, which he filed in 2009, because the amended definitions are "substantive changes." Opp'n at 12. He argues, however, that the Court should apply the aspect of the amendment making public disclosure an affirmative defense because that change is merely jurisdictional. Consequently, in Relator's view, Defendants should bear the burden of proving their affirmative defense that the Court lacks subject matter jurisdiction.

The Supreme Court has squarely rejected this position, holding that the amendment to 31 U.S.C. § 3730(e)(4) does not apply to cases pending at the time of the amendment, making no distinction between its various amendments as "substantive" or "jurisdictional." Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 283, n.1 (2010) ("The legislation amending [31 U.S.C. § 3730(e)(4)] makes no mention of retroactivity, which would be necessary

5

for its application to pending cases given that it eliminates petitioners' claimed defense to a qui tam suit.") (citing Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 948 (1997)).[3]

Moreover, addressing the 1986 amendment to the FCA in Hughes Aircraft, the Court held that unlike jurisdiction-related amendments, which "affect only where a suit may be brought, not whether it may be brought at all," an amendment that "creates jurisdiction where none previously existed . . . speaks not just to the power of a particular court but to the substantive rights of the parties as well." Hughes Aircraft, 520 U.S. at 951. As such, "even though phrased in 'jurisdictional' terms," the 1986 amendment was "as much subject to [the] presumption against retroactivity as any other." Id. The 2010 amendment at issue here is no different. By converting the public disclosure bar into an affirmative defense, the amendment creates jurisdiction over claims that would have previously been barred and therefore affect parties' substantive rights. See id., 520 U.S. at 951. Accordingly, the Court finds that no aspect of the 2010 Amendment applies to this case.[4]

**B.  The Court Lacks Subject Matter Jurisdiction Over Relator's FCA Claim Because Relator Is Not An Original Source**

Defendants contend that the Court lacks subject matter jurisdiction under the FCA's public disclosure bar because Realtor is not an original source of the information. The Court agrees. "To qualify as an original source" for the purpose of § 3730(e)(4)(B), a relator "must show that he or she has direct and independent knowledge of the information on which the allegations are based, voluntarily provided the information to the government before filing his or her qui tam action, and had a hand in the public disclosure of allegations that are a part of . . . [the] suit." United States v.

---

[3] See also, e.g., Amphastar Pharms. Inc. v. Aventis Pharma SA, EDCV-09-0023 MJG, 2012 WL 5512466, at *4 n.9 (C.D. Cal. Nov. 14, 2012) ("The 2010 amendments to the FCA did not apply retroactively to presentation of false claims occurring before its effective date. Since the Complaint in the instant case was filed in 2009, the pre-amendment text is controlling.").

[4] Relator also raised the issue of retroactivity during the discovery process. See Relator's Discovery Position (dkt. 90). Defendants alternatively argue that Judge Laporte specifically permitted the parties to take discovery regarding the public disclosure bar, see Order (dkt. 99), thereby barring Relator's attempt to revive the issue under the law of the case doctrine. Because the Court finds that Supreme Court law dictates that the amendments do not apply, it need not reach Defendants' law of the case argument.

6

1  Johnson Controls, Inc., 457 F.3d 1009, 1013 (9th Cir. 2006) (quoting United States ex rel. Lujan v.
2  Hughes Aircraft Co., 162 F.3d 1027, 1033 (9th Cir.1998)).

### 1. Relator Does Not Have Direct Knowledge of Fraud

Relator fails to satisfy the first requirement because he does not demonstrate direct knowledge of fraud. To meet this burden, Relator "must show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his own labor unmediated by anything else." United States ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1202 (9th Cir. 2009) (internal quotations and citations omitted). Further, in order to constitute "knowledge" of the fraud, the information Relator obtained firsthand must create an inference of fraud that extends beyond speculation or conjecture. See United States ex rel. Aflatooni v. Kitsap Physicians Servs., 163 F.3d 516, 526 (9th Cir. 1999).

Relator alleges fraud based on perceived increases in wiretap pricing post-CALEA, counter to his belief that post-CALEA technology would make wiretap provision easier and less expensive. He states that he gained direct knowledge of wiretap pricing by reading the Telecoms' fee schedules, occasionally reviewing invoices for wiretap provisioning, setting departmental investigation budgets, and participating in upgrades to his department's statewide eavesdropping network. Opp'n at 3. Although Relator's job did not require him to audit wiretapping invoices or dispute fraudulent charges, he contends that through his experience conducting wiretaps he obtained an operating knowledge of the pricing and technologies involved. First Am. Compl. at ¶ 10. In response, Defendants assert that Relator's knowledge of the invoices and fee schedules is secondhand because he originally learned of wiretap provisioning rates from the Defendants' bills and about the technical aspects of the wiretapping network from his department's technical unit. Id. at 13.

Even if the Court were to find that Relator observed information about wiretap pricing and technology "firsthand," this information does not constitute "knowledge" required to qualify an original source. The Ninth Circuit has explained that "because the purpose of the FCA is to encourage individuals with true 'knowledge' of alleged wrongdoing to come forward and provide such information to the Government, the purposes of the Act would not be served by allowing a

7

1  relator to maintain a qui tam suit based on pure speculation or conjecture." Aflatooni, 163 F.3d at
2  526.  In Aflatooni, relator alleged that the defendants had committed Medicare fraud by, among
3  other things, making referrals that were not medically necessary.  Relator based his allegations on
4  the fact that the defendant physicians referred patients to Northwest Diagnostic Imaging, Inc. (NDI)
5  for 50 percent more tests after the physicians became NDI shareholders. Id. at 519.  Because NDI
6  did not keep any records of referring physicians, defendants had the opportunity to commit fraud
7  without being detected.  The Ninth Circuit held that this evidence was insufficient and that relator's
8  allegations "[did] not amount to anything more than pure speculation." Id. at 526.

9  Relator's proffer here is similarly deficient.  Observing increased pricing over a twenty-year
10 period does not equate to knowledge of fraud any more than noting increased referrals in Aflatooni.
11 Id.  While a lack of itemized charges in Defendants' invoices could provide an opportunity to mask
12 the inclusion of implementation costs in wiretap charges, see First Am. Compl. ¶ 69, it does not
13 serve as evidence of fraud any more than NDI's failure to keep records of referring physicians.  See
14 Aflatooni, 163 F.3d at 526.

15 Contrary to what would be necessary to support an FCA claim, Relator does not take the
16 position that Defendants misrepresented charges or charged for services they did not provide.  Dep.
17 at 260:20-262:4.  He alleges instead that the Attorney General's Office was "being overcharged,"
18 id. 32:35-33:1.  For example, based on how Relator believed Telecoms executed wiretaps in 1999,
19 Relator considered to be an $2,300 an unreasonable charge. Dep. at 116:1-15.  He also states that
20 the OCTF wiretapping budget of $400,000 raised concerns because "[t]his large budget for the
21 number of wiretaps OCTF conduct simply did not comport with [his] prior knowledge of the cost of
22 eavesdropping prior to the enactment of CALEA."  Opp'n at 29-30.  The affidavit Relator provided
23 to the FCC offers no more detailed allegations, only his opinion that the Telecoms' charges
24 "skyrocketed" in recent years and were "needlessly excessive" and "exorbitant."  See Prather
25 4/12/2004 Aff. ¶¶ 17, 20.  Like Aflatooni, Relator's claims do not provide evidence of fraud.  See
26 Aflatooni, 163 F.3d at 520, 526 (relator had no evidence of fraud, only allegations that defendant's
27 auditing procedures were deficient; "Dr. Aflatooni could not recall the name of any medicare
28 patient who was allegedly charged for unnecessary medical services.").

Moreover, Relator's allegations are based on little more than conjecture. His knowledge of pre-CALEA charges was based on a single invoice from 1988, Dep. at 53:19-23, 54:23, his knowledge post-CALEA charges were based on a review of two to five invoices, id. at 81:2-13, and he did not recall the carriers associated with any of these invoices, the services covered, id. at 81:14-25, or how they compared to the published rates at the time, id. at 82:5-8. Relator also admits he had no knowledge of Defendants' internal costs for the services provided and could only speculate about what they might have been. Id. at 100:3-24; Hr'g Tr. at 24. Although he claims to have "connected the dots" on his own by determining that once the equipment paid for by CALEA and law enforcement was installed, the cost of wiretapping should have been equal to or less than pre-CALEA, he lacks the information necessary to evaluate whether Defendants' charges were reasonable or not. See United States ex rel. Hansen v. Cargill, Inc., 107 F. Supp. 2d 1172, 1184 (N.D. Cal. 2000) (relator's allegation that appraisal method were being use to inflate land values was "insufficiently specific to support a finding that [Relator] had direct knowledge of the valuation method used in the Appraisal").

In sum, even if Relator has shown direct knowledge of wiretapping pricing and technology, he has not established that he had direct knowledge of fraud.[5]

### 2. Relator's Initial Disclosure Was Not Voluntary

In addition to demonstrating direct and independent knowledge of the alleged fraud, Relator must also show that he voluntarily disclosed information about the fraud to the government. Defendants argue that Relator's disclosure to the government was not voluntary because he was required to report fraud as part of his job duties, by New York statute governing executive branch employees, by his ethical obligations as an attorney, and in response to the FCC's request for comment. Relator responds that he voluntarily reported the alleged fraud out of a sense of personal, moral obligation. First Am. Compl. ¶ 20-21; Dep. at 86:5-12; 87:7-13. The Court is not persuaded.

---

[5] Defendants also argue that Relator's knowledge was not independent because he submitted his affidavit after other agencies had already made submissions to the FCC. A relator has independent knowledge "when he knows about the allegations before that information is publicly disclosed." Meyer, 565 F.3d at 1202. Because Relator fails the knowledge requirement, the Court need not address the issue of whether he has shown independent knowledge.

9

1   For the purposes of the FCA, a relator's disclosure of information pursuant to his
2 employment duties is not voluntary because an "employee should not receive a windfall for merely
3 doing his job." Biddle, 161 F.3d at 540-42; compare United States ex rel. Fine v. Chevron, U.S.A.,
4 Inc., 72 F.3d 740, 742, 743 (9th Cir. 1995) (where auditor's "job required him to supervise audits
5 that other employees had conducted," he was "compelled to disclose fraud by the very terms of his
6 employment") with Hagood v. Sonoma Cnty. Water Agency, 81 F.3d 1465, 1476 n.19 (9th Cir.
7 2001) (disclosure by attorney handling negotiation of allegedly fraudulent contract was voluntary
8 because his "job was not to expose fraud, but to draft contracts and perform other legal services").

9   As head of the OCTF,[6] Relator's job duties included conducting hearings, administering
10 oaths, subpoenaing witnesses, and applying for wiretapping warrants. First Am. Compl. ¶ 42.
11 When evaluating when to use wiretapping techniques, Relator needed to consider the cost of
12 wiretapping, but his job responsibilities did not include evaluating the reasonableness of the
13 Defendants' bills. Id. ¶ 108.

14   Even assuming that disclosing fraud was not a part of Relator's regular job description, his
15 disclosure was involuntary because it was prompted by the FCC's request for comment and
16 submitted in his capacity as Deputy Attorney General in Charge of the Statewide Organized Crime
17 Task Force, in support the official comments of his superior, the Attorney General. See Prather Aff.
18 ¶ 1. Although Relator asked Zwerling whether "there was a way to address" the issue of
19 overcharging in the comments, Dep. at 147:14-16, he did not attempt to include any information
20 himself and did so only after Zwerling asked him to provide an affidavit. The fact that the request
21 came from Zwerling rather than a superior is immaterial. Given that Zwerling was tasked with
22 preparing the Attorney General's comments to the FCC, her request for Relator's affidavit to
23 support the Attorney was tantamount to a request from the Attorney General himself. Under these
24 circumstances, the Court cannot conclude that Relator's disclosure was voluntary. See Fine, 72

---

[6] The mandate of the OCTF is "[t]o conduct investigations and prosecutions of organized crime activities carried on either between two or more counties of this state or between this state and another jurisdiction; (b) To cooperate with and assist district attorneys and other local law enforcement officials in their efforts against organized crime." N.Y. Exec. Law § 70-a(1).

F.3d at 744 (relator "acted in exchange for valuable consideration– his salary–and under an employment-related obligation to do the very acts he claims were voluntary").

Contrary to Relator's assertion that he went "out of his way to make this submission," Hrg Tr. at 6, he did just the opposite. Relator claims to have suspected overcharging for at least five years, First Am. Compl. ¶ 9, Dep. at 32:14-33:4, and told "everyone he could" including a variety of state officials, Hr'g at 5, but apparently never even attempted to report his concerns to anyone in the federal government. Had he mailed the FCC a letter making including the same information in his affidavit, for example, the Court would have before it a very different set of facts for the voluntariness analysis. Instead, it was not until the FCC issued its request for comment and Zwerling asked him to support the Attorney General's response that Relator conveyed his suspicions to the federal government.

Rewarding Relator for providing information in response to the FCC's inquiry is plainly outside the intent of the FCA. See U.S. ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 704 (8th Cir. 1995). In Barth, the Eight Circuit held that relator's disclosure was not voluntary because it was prompted by a federal investigator. Finding such a submission voluntary would "ignore[] the clear intent of the Act which is to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible time and to discourage persons with relevant information from remaining silent." Id. at 704 (citing Wang, 975 F.2d at 1419) (citation omitted). Similarly, in U.S. ex rel. Paranich v. Sorgnard, 396 F.3d 326, 340-41 (3d Cir. 2005), the Third Circuit found that relator's disclosure in response to a subpoena was not voluntary. The court recognized that the voluntariness requirement would be undermined by "allow[ing] a relator to extract the benefit of a qui tam action where his participation in the investigation was precipitated by a subpoena and sustained by self-interest, with all indications suggesting that the relator would not have come forward otherwise" Id. at 341.

To be sure, Relator did not provide the information upon confrontation by an investigator as in Barth or pursuant to subpoena as in Paranich, but, like the relators in those cases, he did not provide the information voluntarily under the intent of the FCA. See Barth, 44 F.3d at 704 ("Although Barth had been aware of [defendant's] possible fraud against the government for some

1  time he remained silent until the government itself heard of the fraud and began its own
2  investigation. In this sense, Barth did not "voluntarily" bring the information to the government and
3  now rewarding him for merely complying with the government's investigation is outside the intent
4  of the Act."). "Information not specifically compelled but nonetheless brought forward as a result of
5  the government's pointed contact should not be deemed 'voluntarily' provided." Paranich, 396
6  F.3d at 341.  There is no indication that Relator would have approached the federal
7  government absent the FCC's request.  His eventual disclosure through his affidavit was neither
8  brought at the earliest possible time, nor on his own volition.[7]

### 3. Relator Did Not Have a Hand in the Original Public Disclosure

Defendants also argue that Relator is not an original source because he did not have a hand in the original public disclosure of the allegations that are a part of his suit.  See Wang, 975 F.2d at 1418.  The Ninth Circuit imposes this additional requirement because "it discourages persons with relevant information from remaining silent and encourages them to report such information at the earliest possible time."  Id.

Relator fails to meet this requirement because the DOJ published substantially similar allegations before Relator submitted his affidavit.  The DOJ's Joint Petition for Expedited Rulemaking, published March 10, 2004, included an entire section regarding provisioning costs, see Jnt. Pet. at 67-70, and specifically expressed concerns regarding Telecoms' passing off their implementation costs through provisioning charges.  Id. at 68-69 (A "statement by the Commission has unfortunately led some carriers to include their capital costs in the intercept provisioning fees. Permitting carriers to pass their capital costs for CALEA compliance on to law enforcement . . . constitutes an improper shifting of the CALEA allocated cost burden from industry to law

---

[7] The Court also rejects Relator's explanation that he was reluctant to come forward with his allegations because he wanted to preserve his working relationship with Defendants. Hr'g Tr. at 12. The qui tam provision is intended to encourage individuals with information to speak out despite the possible consequences and to compensate them for the risk and effort involved. See Biddle, 161 F.3d at 539 (private individuals who serve as relators are given a "financial incentive to disclose evidence of fraud" to encourage and reward those "who have no duty to disclose fraud, i.e., who do so voluntarily, . . . to take 'significant personal risks to bring such wrongdoing to light'") (quoting S. Rep. No. 99-345, at 14 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5279).

enforcement not authorized or contemplated by CALEA."). Relator did not provide his first affidavit until April 12, 2004, and admits he had nothing to do with the Joint Petition. Dep. at 151:15-24.

In sum, Relator fails to establish that he is an original source of information.[8]

### C.  Relator's State Law Claims Must Be Dismissed

Because the Court lacks subject matter jurisdiction over Relator's FCA claim, his remaining state law claims must be dismissed. Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 806 (9th Cir. 2001) ("If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims."); see United States v. Univ. of San Francisco, C 04-03440 JSW, 2006 WL 2884331, at *6 (N.D. Cal. Oct. 10, 2006) (after dismissing Relator's FCA claim for lack of subject matter jurisdiction, district court was required to dismiss state law claims without prejudice to refiling in state court).

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED, and the Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated:   November 5, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[8] Having concluded that it lacks subject matter jurisdiction over Relator's FCA claim, the Court need not—and indeed cannot—address Defendants' alternate grounds for dismissal under Federal Rules Of Civil Procedure 12(b)(6) and 9(b). See Wang, 975 F.2d at 1415.