1   David F. Taylor, Bar No. 129654
    DFTaylor@perkinscoie.com
2   Breena M. Roos (*pro hac vice*)
    BRoos@perkinscoie.com
3   PERKINS COIE LLP
    1201 Third Avenue, Suite 4800
4   Seattle, WA 98101-3099
    Telephone: 206.359.8000
5   Facsimile: 206.359.9000

6   Joshua A. Reiten, Bar No. 238985
    JReiten@perkinscoie.com
7   PERKINS COIE LLP
    Four Embarcadero Center, Suite 2400
8   San Francisco, CA 94111-4131
    Telephone: 415.344.7000
9   Facsimile: 415.344.7050

10  Attorneys for Defendant
    Qwest Communications International, Inc.
11
                    UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13

14  JOHN C. PRATHER on behalf of himself          Case No. CV-09-2457 (CRB) (EDL)
    and the UNITED STATES OF AMERICA
15  and the several states of CALIFORNIA,         **DEFENDANT QWEST COMMUNICATIONS**
    DELAWARE, FLORIDA, ILLINOIS,                  **INTERNATIONAL INC.'S NOTICE OF**
16  INDIANA, MASSACHUSETTS,                       **MOTION AND MOTION FOR ATTORNEY'S**
    NEVADA, NEW HAMPSHIRE, NEW                    **FEES AND EXPENSES; MEMORANDUM OF**
17  JERSEY, NEW MEXICO, NEW YORK,                 **POINTS AND AUTHORITIES IN SUPPORT**
    RHODE ISLAND, VIRGINIA, as well as            **THEREOF**
18  the DISTRICT OF COLUMBIA,
                                                  Date:        January 10, 2014
19                      Plaintiff/Realtor,        Time:        10:00 AM
                                                  Courtroom:   6, 17th Floor
20          v.                                    Judge:       Hon. Charles R. Breyer

21  AT&T INC., CELLCO PARTNERSHIP
    d/b/a VERIZON COMMUNICATIONS,
22  QWEST COMMUNICATIONS
    INTERNATIONAL INC., and SPRINT
23  NEXTEL CORP.,

24                      Defendants.

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

       A.    Procedural History ................................................................................... 2

       B.    The Relator Admits To Having No Knowledge Whatsoever of Any
             Wrongdoing by Qwest ............................................................................. 4

       C.    The Relator Admits to Making False Statements in Filings with this
             Court ........................................................................................................ 5

       D.    Qwest Incurred Attorneys' Fees and Expenses Defending Against
             Relator's Unfounded Claims of Fraud ...................................................... 6

III.   ARGUMENT ....................................................................................................... 7

       A.    The Court Should Award Qwest Its Attorneys' Fees and Expenses
             Pursuant to § 3730(d)(4), the Court's Inherent Power, and Rule 11 ........... 7

             1.    Applicable Legal Standards ............................................................. 7

                   a.    Section 3730(d)(4) of the FCA ............................................. 7

                   b.    The Court's Inherent Power .................................................. 8

                   c.    Rule 11 ................................................................................ 8

             2.    The Record Demonstrates that Relator's Action Was
                   Frivolous ........................................................................................ 9

       B.    The Court Has Authority to Award Fees Under § 3730(d)(4) ................. 12

       C.    Qwest's Attorneys' Fees and Expenses are Reasonable .......................... 15

             1.    The Number of Hours Expended Are Reasonable ...................... 16

             2.    The Hourly Rates Are Reasonable ............................................. 17

IV.    CONCLUSION ................................................................................................. 17

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
421 U.S. 240 (1975) ................................................................................................8

*United States ex rel. Bain v. Georgia Gulf Corp.*,
208 Fed. Appx. 280 (5th Cir. 2006) ......................................................................13

*United States ex rel. Barajas v. Northrop Corp.*,
5 F.3d 407 (9th Cir. 1993) ...............................................................................13, 14

*Branson v. Nott*,
62 F.3d 287 (9th Cir. 1995) ............................................................................14, 15

*Buster v. Greisen*,
104 F.3d 1186 (9th Cir. 1997), *abrogated on other grounds by Fossen v. Blue
Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011) .................9

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ...............................................................................17

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) ...............................................................................11

*Citizens for a Better Env't v. Steel Co.*,
230 F.3d 923 (7th Cir. 2000) ..................................................................................12

*Crawford-El v. Britton*,
523 U.S. 574 .............................................................................................................9

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
801 F.2d 1531 (9th Cir. 1986) ..................................................................................9

*United States ex rel. Grynberg v. Praxair, Inc.*,
389 F.3d 1038 (10th Cir. 2004) ........................................................................12, 14

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .......................................................................................15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................15

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
520 U.S. 939 (1997) ................................................................................................15

*Jordan v. Multnomah County*,
815 F.2d 1258 (9th Cir. 1987) ................................................................................15

-1-

*In re Keegan Mgmt. Co. Sec. Litig.*,
  78 F.3d 431 (9th Cir. 1996).................................................................................8, 11

*Martel v. Maxxam, Inc.*,
  211 F.3d 594, 2000 WL 329354 (5th Cir. Mar. 23, 2000)........................................10, 13

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008)..............................................................................15

*Pfingston v. Ronan Eng'g Co.*,
  284 F.3d 999 (9th Cir. 2002)...............................................................................7, 8

*Primus Automotive Fin. Servs. v. Batarse*,
  115 F.3d 644 (9th Cir. 1997)...................................................................................8

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007).............................................................................................13

*United States v. Vuyyuru*,
  555 F.3d 337 (4th Cir. 2009)................................................................................13

*United States ex rel. Atkinson v. Penn. Shipbuilding Co.*,
  528 F. Supp. 2d 533 (E.D. Penn. 2007) .............................................................13, 15

*Green v. Baca*,
  225 F.R.D. 612 (C.D. Cal. 2005) .........................................................................16

*United States ex rel. Herbert v. Nat'l Acad. of Sciences*,
  Civ. A. No. 90-2568, 1992 WL 247587 (D.D.C. Sept. 15, 1992) ...............................10, 11, 13

*United States ex rel. J. Cooper & Assocs. v. Bernard Hoes Grp., Inc.*,
  422 F. Supp. 2d 225 (D.D.C. Mar. 23, 2006) .......................................................13, 15

*United States ex rel. Leveski v. ITT Educ. Serv., Inc.*,
  No. 1:07-cv-0867-TWP-MJD, 2012 WL 1028794 (S.D. Ind. Mar. 26, 2012) .......................11

*United States ex rel. Mikes v. Straus*,
  98 F. Supp. 2d 517 (S.D.N.Y. 2000)..................................................................7, 10, 11

*United States ex rel. Minna Rae Winer Children's Class Trust v. Regions Bank of La.*,
  Civ. A. No. 94-4085, 1996 WL 264981 (E.D. La. May 17, 1996) ..........................................10

*United States ex rel. Montgomery v. St. Edward Mercy Medical Center*,
  No. 4:05-CV-00899 GTE, 2008 WL 110858 (E.D. Ark. Jan. 8, 2008) ................................13

*Public Interest Bounty Hunters v. Bd. of Governors of the Fed. Reserve Sys.*,
  548 F. Supp. 157 (N.D. Ga. 1982) .........................................................................11

*United States ex rel. Sampson v. Crescent City E.M.S., Inc.,*
    No. Civ.A 96-3505, 1997 WL 570688 (E.D. La. Sept. 12, 1997) ...........................11

**Federal Statutes**

28 U.S.C. § 1447(c) ...................................................................................12, 13

28 U.S.C. § 1919 .............................................................................................12

31 U.S.C. § 3730 .......................................................................................14, 15

31 U.S.C. § 3730(d)(4) ............................................................................. *passim*

31 U.S.C. § 3730(e)(4) ............................................................................. *passim*

42 U.S.C. § 1983 .............................................................................................14

42 U.S.C. § 1988 .............................................................................................14

42 U.S.C. § 11406(a)(1) ..................................................................................12

**Rules**

Fed. R. Civ. P. 11 .................................................................................... *passim*

Fed. R. Civ. P. 11(b) .........................................................................................9

Fed. R. Civ. P. 11(c)(1) .....................................................................................9

Fed. R. Civ. P. 11(c)(4) .....................................................................................9

Fed. R. Civ. P. 12(b)(6) .....................................................................................2

LR 54-5(1)(b)(1) ................................................................................................1

**Other Authorities**

99 Sen. Rep. 345, 1986 U.S.C.C.A.N. 5266, 196 WL 31937 (July 28, 1986) .........7, 13

DEFENDANT QWEST'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES

**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

TO RELATOR JOHN C. PRATHER, PLEASE TAKE NOTICE that on Friday, January 10, 2014 at 10:00 AM in Courtroom 6, 17th Floor of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, or as soon thereafter as counsel may be heard, Defendant Qwest Communications International, Inc. ("Qwest") will and hereby does move for an Order awarding the attorney's fees and expenses incurred in this action in the amount of $117,326.79.  On November 18, 2013, counsel for the parties telephonically met and conferred pursuant to Local Civil Rule 54-5(1)(b)(1) but were unable to resolve the issues raised by this motion.  This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the Declaration of David F. Taylor, and such other evidences and argument as may be presented to the Court at or before the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Relator John Prather's claims against Qwest never had any factual basis.  Relator admitted in his own sworn deposition testimony that he knows of no wrongdoing by Qwest—none.  Among other things, Relator does not know of anything done by Qwest to defraud any federal or state agency; Relator does not know of a single fact supporting his claims against Qwest; Relator knows nothing about the rates charged by Qwest or the expenses it incurred; Relator could not recall seeing even a single invoice from Qwest; indeed, Relator did not even know whether Qwest submitted any claims to the governments it allegedly defrauded, much less false claims.

Filing a lawsuit without any factual basis—especially one accusing a defendant of fraud—is more than sufficient to warrant an award of attorneys' fees and expenses.  But Relator's conduct in this case is even more egregious.  Relator asserted his baseless claims against Qwest not once, but twice.  Given a second chance by this Court to reconsider his claims and file an Amended Complaint, Relator chose to persist with his baseless claims against Qwest.  Moreover, Relator chose to buttress his claims with false representations about his personal knowledge of

the facts—representations that Relator admitted to be false only when placed under oath and deposed by the defendants.

Doing business as a telecommunications carrier does not violate the False Claims Act ("FCA"), and Relator's filing and pursuit of this case against Qwest based solely on the fact that Qwest is a telecommunications carrier is an abuse of the FCA and of this Court. Now that the Court has dismissed Relator's claims with prejudice, the FCA, the Court's inherent powers, and Federal Rule of Civil Procedure 11 all give this Court the authority to award fees and costs for Relator's frivolous claims. Indeed, Congress has recognized that fee awards are an especially important deterrent in qui tam cases under the FCA, which allows relators to act for the government and provides uniquely powerful remedies. Qwest incurred $117,326.79 in attorneys' fees and costs defending against Relators' claims, which never had any factual basis. Qwest respectfully requests that the Court award it those fees and costs.

## II.  BACKGROUND

### A.  Procedural History

Relator filed his original Complaint under seal on June 3, 2009. *See* Dkt. 1. On July 8, 2011, the United States filed its Notice of Election Not to Intervene at this Time. *See* Dkt. 15. Likewise, none of the state or municipal authorities elected to intervene. *See* Dkt. 9 (setting June 14, 2011 cut-off date for intervention); *see also* Dkt. Nos. 10, 11, 12 & 14 (individual state declinations). The Court unsealed Relator's Complaint concurrent with the filing of the United States' declination notice. *See* Dkt. No. 15.

Relator's original Complaint contained no allegations whatsoever specific to Qwest; Qwest was referred to only once in the complaint, where Relator identifies Qwest as a defendant. *See* Cmplt. ¶ 27 (identifying Qwest) (Dkt. 1). Relator obscured his lack of knowledge about Qwest by referring throughout the original complaint to the "Telecoms" as a collective and undifferentiated unit. *E.g.*, *id.* ¶¶ 3, 4, 34, 48, 49. The defendants jointly moved to dismiss Relator's original Complaint on January 17, 2012, on the grounds that the Court lacked subject matter jurisdiction pursuant to the FCA's public disclosure bar and that Relator failed to plead facts sufficient to state a claim in violation of Rules 12(b)(6) and 9(b). *See* Dkt. 63. Qwest and

two other defendants filed a separate pleading specifically noting the lack of allegations specific to Qwest and those defendants. Dkt. 65.

In April 2012, the Court granted defendants' motion to dismiss Relator's original Complaint with leave to amend. The Court specifically instructed Relator to include in any amended complaint "everything that he believes identifies his duties, and why this wasn't within his duties, and why it was not publicly-released information public disclosure." *See* April 20, 2012 Motion Hearing Transcript (Dkt. 81) at 28 (cautioning Relator that any amended complaint must identify "why our fine friends here should be included in the complaint"). The Court also authorized limited discovery. *Id.* at 29-30.

On May 11, 2012, defendants jointly wrote to Relator's counsel and cautioned that they believed Relator's claims to be without merit and that Relator "stands a significant risk of being ordered to pay Defendants' attorneys' fees and expenses . . . and will only increase that risk by pressing forward with an amended pleading." *See* Declaration of David F. Taylor ("Taylor Decl."), Ex. G. Rather than heed the Court's (and defendants') warning, Relator instead filed an Amended Complaint on July 18, 2012, that still failed to identify any specific misconduct by Qwest. *See* Am. Cmplt. (Dkt. 86). Thereafter, pursuant to the Court's April 20 order, defendants scheduled Relator's deposition for December 17, 2012 in San Francisco. On December 4, 2012, Relator moved to delay (or avoid) that deposition because "increased and ongoing job responsibilities" "greatly burdened" Relator; he proposed to reschedule the deposition or avoid an in-person deposition altogether. *See* Dkt. 102 at 4, 9 (proposing video deposition as alternative). The Court denied Relator's motion on December 12, 2012, *see* Dkt. 107, and Relator's deposition finally occurred on December 17, 2012. *See generally* Taylor Decl., Ex. F.

As became clear during Relator's deposition, Relator had no evidence to support his claims against Qwest. *See id.* at 239:7-240:8; *see also* Section II.B, *infra* (detailing Relator's lack of knowledge). Additionally, Relator's admitted that his Amended Complaint contained numerous falsehoods. *See generally* Taylor Decl., Ex. F; *see also* Section II.C, *infra* (detailing Relator's falsehoods). Following Relator's deposition, the defendants moved to dismiss Relator's Amended Complaint. *See* Dkt. No. 123.

The Court dismissed the Amended Complaint with prejudice on November 5, 2013, based upon the Court's finding that it lacked subject matter jurisdiction over Relator's claims under the FCA. *See* Order Granting Defendants' Motion to Dismiss Amended Complaint dated November 5, 2013 (Dkt. 159) ("Order"). The Court's decision was based on the public disclosure bar in 31 U.S.C. § 3730(e)(4) and its findings that Relator lacked the direct and independent knowledge of facts supporting his allegations necessary to qualify as an original source. *Id.* at 2. The Court found that "Relator's allegations were based on little more than conjecture," noting, for example, that his knowledge of the alleged overcharging was limited to "a review of two to five invoices" for which Relator could not provide any detail and that Relator had no knowledge of the defendants' internal costs for services provided so Relator "could only speculate about what they might have been." Order at 9.

## B. The Relator Admits To Having No Knowledge Whatsoever of Any Wrongdoing by Qwest

As discussed above, Relator admitted in his sworn deposition testimony that he had no knowledge of any wrongdoing whatsoever by Qwest when he filed the original Complaint and the Amended Complaint asserting claims under the FCA that Qwest, as a telecommunications carrier, defrauded the United States and numerous state governments. Relator admitted all of the following facts under oath:

- Relator does not know of anything done by Qwest to defraud any federal or state agency. Taylor Decl., Ex. F (Relator's Dep. at 243:12-17).

- Relator has "no knowledge of any particulars" supporting his claims against Qwest. *Id.* at 240:4-8.

- Relator has no knowledge of anything that Qwest did to conspire with any other defendant. *Id.* at 241:13-24.

- Relator is not aware of any facts pled in his Amended Complaint showing any wrongdoing by Qwest. *Id.* at 241:1-4.

- Relator has no knowledge of the expenses that Qwest incurred in providing wiretaps. *Id.* at 242:21-25.

- Relator has never seen even a single invoice from Qwest. *Id.* at 244:14-23.

DEFENDANT QWEST'S MOTION FOR ATTORNEY'S FEES AND EXPENSES

- Relator does not even know whether the governments he purports to represent ever paid Qwest for wiretaps. *Id*. at 237:14-239:6.

- Relator included Qwest as a defendant in this action only because his attorney decided to do so, a decision that Relator never questioned and which he had no information to support. *Id*. at 243:6-17.

These admissions demonstrate that Relator does not have—and never did have—any knowledge supporting his claims against Qwest, much less the direct and independent knowledge of facts supporting his allegations required to show him to be an original source under the FCA. In short, Relator's claims as to Qwest were always baseless and without any factual support.

**C.    The Relator Admits to Making False Statements in Filings with this Court**

Relator also admitted in his deposition to making a number of false statements in filings with this Court. In his Amended Complaint, Relator alleged that he reviewed hundreds of wiretapping invoices. Am. Cmplt. ¶¶ 38, 84. In fact he reviewed only a handful (and none from Qwest), Taylor Decl., Ex. F (Relator Dep. at 81:10-13, 17:2-10; 53:20-54:13); *see also id.* at 13:4-8 (admitting that "it's erroneous to say that I reviewed and signed off on hundreds of these invoices"). Relator also claimed that one of the other defendants' representatives personally informed him that it based rates on other carriers' charges. Am. Cmplt. ¶ 88. In fact he learned of the purported conversation secondhand. Taylor Decl., Ex. F (Relator Dep. at 35:10-12, 122:7-123:10, 127:23-24). Relator also claimed that he was "uniquely" positioned to determine whether a wiretap overcharging scheme was afoot because of his review and approval of wiretapping invoices. Am. Cmplt. ¶ 4, 10. In fact he has never been responsible for reviewing or approving wiretapping invoices. Taylor Decl., Ex. F (Relator Dep. at 27:6-15, 83:17-19). Similarly, in a sworn statement filed with the Court, Relator alleged that he was the first one to publicly raised concerns about exorbitant wiretap provisions costs. (Dkt. 73-2 ¶ 9). In fact, others raised such concerns before Relator, and Relator admitted in his deposition that his sworn affidavit asserting that he was the first to accuse the carriers of overcharges was wrong. Taylor Decl., Ex. F (Relator Dep. at 172:8-16).

Relator pled or otherwise made these false statements only after the Court expressly cautioned Relator that his Amended Complaint must identify the factual basis of his claims

against each of the defendants. Furthermore, the statements were plainly material to the "original source" issue that Relator sought to address with his Amended Complaint. And Relator admitted these falsehoods only when compelled to answer defendants' deposition questions under oath. Regardless of whether Relator's false statements were intentional or just reckless, there can be no dispute that Relator made material false statements to the Court on a key issue, in the face of warning from both the Court and defendants, which Qwest and the other defendants uncovered only through Relator's deposition.

**D. Qwest Incurred Attorneys' Fees and Expenses Defending Against Relator's Unfounded Claims of Fraud**

In defending Qwest against Relator's baseless and false allegations, Qwest incurred attorneys' fees in a total amount of $115,445.06 for 220.4 hours of work. The following chart summarizes by timekeeper the rates charged and the hours billed.

| Timekeeper | Position | Billed Hourly Rate | Hours Worked | Total Billed |
|---|---|---:|---:|---:|
| A. Gidari | Attorney | $644 | 0.3 | $193.20 |
| | | $681 | 0.7 | $476.56 |
| B. (Roos) Lee | Attorney | $363 | 10.0 | $3,634.00 |
| | | $414 | 46.3 | $19,168.20 |
| | | $428 | 14.0 | $5,989.20 |
| D. Taylor | Attorney | $547 | 5.9 | $3,510.50 |
| | | $584 | 97.9 | $57,193.18 |
| | | $616 | 33.0 | $20,341.20 |
| J. Devaney | Attorney | $501 | 1.2 | $601.68 |
| | | $520 | 6.4 | $3,326.72 |
| | | $585 | 0.4 | $215.28 |
| L. McClard | Paralegal | $184 | 3.4 | $625.60 |
| | | $189 | 0.9 | $169.74 |
| | ***Total, all timekeepers*** | | 220.4 | $115,445.06 |

Taylor Decl. ¶ 1; *see also id.*, Ex. A. Qwest also incurred $1,881.73 in expenses. *Id.* ¶ 2.

DEFENDANT QWEST'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES

III.    **ARGUMENT**

    A.    **The Court Should Award Qwest Its Attorneys' Fees and Expenses Pursuant to § 3730(d)(4), the Court's Inherent Power, and Rule 11**

        1.    **Applicable Legal Standards**

Each of 31 U.S.C. § 3730(d)(4) of the FCA, the Court's inherent power, and Rule 11 authorize the Court to award attorneys' fees and costs to Qwest because Relator filed a frivolous lawsuit against Qwest, admittedly without any factual support.

        a.    **Section 3730(d)(4) of the FCA**

31 U.S.C. § 3730(d)(4) grants this Court discretion to award attorneys' fees and expenses to prevailing defendants in a qui tam action in which the government declined to intervene. Specifically, section 3730(d)(4) provides:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.

"The [Senate] Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes." 99 Sen. Rep. 345 at 29, 1986 U.S.C.C.A.N. 5266, 196 WL 31937 (July 28, 1986).

To award attorneys' fees and expenses under §3730(d)(4), the Court must find that (1) the government did not proceed in the action, (2) the defendant prevailed in the action, (3) the claim was clearly frivolous, clearly vexatious, or primarily for the purposes of harassment, and (4) the requested fees are reasonable. *See, e.g.*, *United States ex rel. Mikes v. Straus*, 98 F. Supp. 2d 517, 526 (S.D.N.Y. 2000) (any one of the grounds—frivolousness, vexatiousness, or harassment—will independently support an award). An action is 'clearly frivolous' when 'the result is obvious or the appellant's arguments of error are wholly without merit.'" *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002). "An action is 'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." *Id.*

### b. The Court's Inherent Power

The Court may also award fees and expenses to Qwest pursuant to its inherent power, which permits a court to "assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975). "Before awarding sanctions under its inherent powers, however, the court must make an explicit finding that [the party]'s conduct constituted or was tantamount to bad faith." *Primus Automotive Fin. Servs. v. Batarse*, 115 F.3d 644, 648-49 (9th Cir. 1997) (quotations omitted). A finding of bad faith is warranted where a party "knowingly or recklessly raises a frivolous argument . . . ." *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (citation omitted).

### c. Rule 11

Finally, Rule 11 provides, in relevant part, as follows:

> By presenting to the court a pleading, written motion, or other paper
> . . . an attorney . . . certifies that to the best of the person's
> knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances
>
> (1)   it is not being presented for any improper purpose, such as
> to harass, cause unnecessary delay, or needlessly increase
> the cost of litigation
>
> *****
>
> (3)   *the factual contentions have evidentiary support*, or if
> specifically identified, will likely have evidentiary support
> after a reasonable opportunity for further investigation or
> discovery . . . .

Fed. R. Civ. P. 11(b) (emphasis added). Rule 11 allows the Court to sanction "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The Court's sanctions may include reasonable attorneys' fees and expenses incurred as a result of the violation. Fed. R. Civ. P. 11(c)(4). One of the fundamental purposes of Rule 11 is to "reduce frivolous claims, . . . [thereby] avoid[ing] delay and unnecessary expense in litigation." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986) (internal quotation marks and citations omitted); *see also Crawford-El v. Britton*, 523 U.S. 574. 600 (1998) (Rule 11

"authorizes sanctions for the filing of papers that are frivolous, lacking in factual support, or presented for any improper purpose, such as to harass").

Where, as here, the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually "baseless" from an objective perspective, and (2) if the attorney has conducted "a reasonable and competent inquiry" before signing and filing it. *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997), *abrogated on other grounds by Fossen v. Blue Cross and Blue Shield of Montana, Inc.*, 660 F.3d 1102 (9th Cir. 2011).

## 2. The Record Demonstrates that Relator's Action Was Frivolous

In this case, Relator filed and pursued a lawsuit against Qwest without any factual support for his claims. At no time, and in no pleading, were Relator's claims against Qwest based on anything other than Qwest's role as a telecommunications provider. *See* Taylor Decl., Ex. F (Relator's Dep. at 241:1-4) (admitting that he is not aware of any facts pled in his Amended Complaint showing any wrongdoing by Qwest); *see also id.* at 237:1-239:6 (Relator does not even know whether the government ever paid Qwest for wiretaps). Relator knew, when he filed his original Complaint and when he filed his Amended Complaint, that he had no basis for his claims against Qwest. Relator simply had no knowledge of any facts showing wrongdoing by Qwest. *See* Taylor Decl., Ex. F.

Courts have often awarded fees and expenses where, as here, a plaintiff has no factual support whatsoever for his claims. *E.g., Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001) ("[s]ince plaintiff's allegations were bereft of any objective factual support, they clearly had no chance of success . . . [and] an award of attorneys' fees to defendants was fully justified."); *Martel v. Maxxam, Inc.*, 211 F.3d 594, 2000 WL 329354, at *2-3 (5th Cir. Mar. 23, 2000) (per curiam) (unpublished decision) (upholding ruling that suit was frivolous because plaintiff knew he was not the original source of information); *United States ex rel. Herbert v. Nat'l Acad. of Sciences*, Civ. A. No. 90-2568, 1992 WL 247587, at *7 (D.D.C. Sept. 15, 1992) (awarding fees under Rule 11 and § 3730(d)(4) where relator's "action is not really based on facts at all. Rather it is based on his opinion . . . ."); *United States ex rel. Minna Rae Winer Children's Class Trust v.*

*Regions Bank of La.*, Civ. A. No. 94-4085, 1996 WL 264981, at *7 (E.D. La. May 17, 1996) (awarding fees to defendant where the court found that the action was "clearly frivolous and meant primarily to harass" because relator's claim had "no support" and "is in reality not based upon the facts at all, but rather, on personal opinion that the great disparity in acquisition and selling price of the property at issue could only be the result of some collusive scheme . . . to defraud the Government.").

Relator's admissions conclusively demonstrate that he filed an objectively meritless claim against defendant Qwest. Only *after* filing his original Complaint and his Amended Complaint and seeking to delay (or avoid) his deposition, did Relator finally admit that he does not know of any wrongdoing by Qwest and does not know of anything done by Qwest to defraud any federal or state agency. Taylor Decl., Ex. F (Relator's Dep. at 239:7-240:8, 243:12-17). It is well-established that, under the FCA, a relator must be an original source of publicly disclosed information and thus must show both that he has "direct and independent knowledge" of the information on which his allegations against Qwest are based. 31 U.S.C. § 3730(e)(4). Relator cannot dispute that his complaint was legally and factually baseless where his own sworn admissions demonstrate that he has no knowledge of any information supporting any allegation of fraud against Quest. It is simply impossible to have direct and independent knowledge without *any* knowledge.

Additionally, Relator conducted no investigation whatsoever concerning Qwest. Based upon the Complaint, it appears he named Qwest as a defendant simply because it is a telecommunications carrier. Failure to investigate falls below the requisite Rule 11 standard. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002). Because Relator's complaint is both factually and legally meritless, the Court should award Qwest its attorneys' fees and expenses pursuant to Rule 11. *See, e.g.*, *United States ex rel. Herbert v. Nat'l Academy of Sciences*, Civ. A. No. 90-2568, 1992 WL 247587, at *8-9 (D.D.C. Sept. 15, 1992) (awarding fees under both § 3730(d)(4) and Rule 11 in part because relator's claims were unsupported by facts and "little more than . . . his personal grievance against" the defendant); *United States ex rel. Leveski v. ITT Educ. Serv., Inc.*, No. 1:07-cv-0867-TWP-MJD, 2012 WL 1028794, at *12 (S.D.

Ind. Mar. 26, 2012) (rejecting relator's counsel's argument that her complaint cannot be frivolous because it survived a motion to dismiss because her "lack of firsthand knowledge could not be demonstrated until she was deposed.  In other words [defendant] was required to do some digging before ferreting out the frivolousness of this case" and awarding fees under Rule 11 against relator's counsel).

Finally, because Relator filed a claim against Qwest without any factual support with the knowledge that he therefore could not meet the requirements the FCA places on a relator, Relator's conduct demonstrates that he "knowingly or recklessly raise[d] a frivolous argument," *In re Keegan*, 78 F.3d at 436, that supports a finding of bad faith for the imposition of attorneys' fees pursuant to the Court's inherent powers.  *See, e.g.*, *Public Interest Bounty Hunters v. Bd. of Governors of the Fed. Reserve Sys.*, 548 F. Supp. 157 (N.D. Ga. 1982) (awarding fees to FCA defendants pursuant to court's inherent powers where plaintiff's prior lawsuits against defendants in his individual capacity had failed, so although plaintiff now styled the "identical facts" as a qui tam action, plaintiff knew the court would not grant the relief sought; plaintiff's litigation was "vexatious and unfounded"); *see also United States ex rel. Sampson v. Crescent City E.M.S., Inc.*, No. Civ.A 96-3505, 1997 WL 570688, at *2 (E.D. La. Sept. 12, 1997) (awarding attorneys' fees and expenses as Rule 11 sanction against relator because prior related qui tam proceedings "eviscerate[d]" any "good faith" belief that relator's "case would not summarily suffer the same fate (i.e., dismissal for lack of subject matter jurisdiction)").

Taken together, Relator's filing of not only the original Complaint but also the Amended Complaint was frivolous where Relator knew that he had no factual support whatsoever for his claims against Qwest and thus knew he could not be the original source of any information supporting his claims against Qwest.  And Relator filed his Amended Complaint even after the district court directed him to plead facts showing why each defendant was liable and after defendants' cautioned Relator that he risked sanctions by filing a baseless amended complaint. Although an award of fees under the FCA is "reserved for rare and special circumstances," *Pfingston*, 284 F.3d at 1006-07, this is such a case.  There is no dispute that no government intervened in this case or that Qwest prevailed in this action.  And Relator has admitted in sworn

testimony that he has no information—much less independent evidence—of any wrongdoing by Qwest.  As explained more thoroughly below, Qwest has been forced to incur substantial fees to defend itself against this baseless lawsuit, fees that were increased due to Relator's false statements to the Court and his persistence in pursuing unsupported claims against Qwest.  Because Relator's claims were frivolous, Relator's conduct constitutes "bad faith" pursuant Rule 11.  The Court should thus award Qwest its attorneys' fees and expenses pursuant to § 3730(d)(4), the Court's inherent power, and Rule 11.

## B.    The Court Has Authority to Award Fees Under § 3730(d)(4)

Relator may argue that because the Court dismissed his action pursuant to the public disclosure bar of § 3730(e)(4), that the Court is without authority to award fees and expenses under § 3730(d)(4).  This is wrong.  Although the Ninth Circuit has not directly addressed whether a district court retains jurisdiction to award attorneys' fees pursuant to § 3730(d)(4) where the district court dismissed relator's complaint pursuant to the public disclosure bar, each of the courts—including the only circuit court of appeal—that has addressed this issue has held that courts have authority to award fees under § 3730(d)(4) in cases dismissed for lack of jurisdiction pursuant to § 3730(e)(4).

The Tenth Circuit in *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038 (10th Cir. 2004), reasoned that "'[c]ourts that lack jurisdiction with respect to one kind of decision may have it with respect to another.  A court, for example, always has jurisdiction to consider its own jurisdiction.'"  389 F.3d at 1056 (quoting *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 926 (7th Cir. 2000) (permitting fee award under 42 U.S.C. § 11406(a)(1))).  The court identified statutes such as 28 U.S.C. § 1919 and 1447(c) that specifically "permit awards of litigation expenses in suits that federal courts are not authorized to decide on the merits" and the "[u]se of this fee-shifting power has been uncontroversial."  *Id.* (quotations omitted).  Accordingly, the court concluded that "[t]here is no Article III roadblock" to awarding fees under § 3730(d)(4).  *Id.* at 1057.  The court reasoned that the defendant had suffered an injury as a result of a frivolous lawsuit that may be redressed by an award of attorneys' fees.  *Id.* at 1056-57; *see also United States ex rel. Atkinson v. Penn. Shipbuilding Co.*, 528 F. Supp. 2d 533, 539-41 (E.D. Penn. 2007);

*cf. United States v. Vuyyuru*, 555 F.3d 337, 357 (4th Cir. 2009) (affirming district court's award of fees under § 3730(d)(4) following dismissal pursuant to the public disclosure bar); *Martel*, 2000 WL 329354, at *2 (same); *United States ex rel. Bain v. Georgia Gulf Corp.*, 208 Fed. Appx. 280, 2006 WL 3093637, at *3-4 (5th Cir. Oct. 26, 2006) (same); *United States ex rel. J. Cooper & Assocs. v. Bernard Hoes Grp., Inc.*, 422 F. Supp. 2d 225, 237-239 (D.D.C. Mar. 23, 2006) (awarding fees under § 3730(d)(4) following dismissal pursuant to the public disclosure bar); *Herbert*, 1992 WL 247587, at *8 (same).[1]

These decisions are consistent with congressional intent. By enacting § 3730(d)(4), Congress intended to dissuade litigation that is frivolous. *See* 99 Sen. Rep. 345 at 29 ("The Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes."). As the Ninth Circuit has recognized, "[t]o balance the incentive to bring suit provided by the 'original source' and damages provisions [under the FCA], Congress authorized the award of attorney's fees and expenses to prevailing defendants if an action is frivolous, harassing, or vexatious." *United States ex rel. Barajas v. Northrop Corp.*, 5 F.3d 407, 410 n.9 (9th Cir. 1993). As part of this balancing act, § 3730(d)(4) removes jurisdiction over one type of case that Congress deemed unnecessary: suits, like this one, brought by persons who do not have first-hand knowledge of fraudulent conduct that instead could be brought by the government based on publicly available information. Eliminating jurisdiction to award attorneys' fees and expenses in such cases would have the illogical consequence of disallowing fees in cases specifically identified by Congress as undesirable.

Although the Ninth Circuit has held under different circumstances and under a different statute that in those instances where 42 U.S.C. § 1983 jurisdiction is lacking, the district court

---

[1] The court in *United States ex rel. Montgomery v. St. Edward Mercy Medical Center*, No. 4:05-CV-00899 GTE, 2008 WL 110858 (E.D. Ark. Jan. 8, 2008), declined to decide the jurisdictional issue because, even assuming jurisdiction, the court denied attorneys' fees and expenses under § 3730(d)(4) because the public disclosure bar was not clearly established when the relator filed his amended complaint. *See id.* at * 3, 6 (the Supreme Court's decision in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007), the Supreme Court's first substantive decision on the public disclosure bar, was issued after relator had filed his amended complaint).

DEFENDANT QWEST'S MOTION FOR ATTORNEY'S FEES AND EXPENSES

lacks the power to award attorneys' fees under § 1988, that case is distinguishable and does not govern. *See Branson v. Nott*, 62 F.3d 287, 293 (9th Cir. 1995). First, the Ninth Circuit has never held that the ruling in *Branson* extends to an award of attorneys' fees and expenses under § 3730(d)(4) for claims in an action dismissed under § 3730(e)(4). Second, as discussed above, extension of the *Branson* holding to the FCA would be contrary to every other case that has addressed this issue. As the Tenth Circuit held, "[t]here is no Article III roadblock" to awarding fees under § 3730(d)(4). *Grynberg*, 389 F.3d at 1057. Third, as also discussed above, extending *Branson* to awards under § 3730(d)(4) against would-be relators who file frivolous qui tam actions would be directly contrary to Congressional intent. *Barajas*, 5 F.3d at 410 n.9 (Congress intended § 3730(d)(4) as strong deterrent against filing frivolous qui tam lawsuits by relators).

Finally, the reasoning of *Branson* does not apply here. The Ninth Circuit in *Branson* reasoned that a court does not retain jurisdiction to award fees following dismissal of the underlying action for subject-matter jurisdiction where the fee-shifting statute does not independently confer jurisdiction. *Branson*, 62 F.3d at 293. The Ninth Circuit reasoned that §1988 does not by its terms confer subject matter jurisdiction, but rather must be read in conjunction with other statutes, such as § 1983. *Id.* But here, unlike the statutes at issue in *Branson*, the fee-shifting provision of the FCA, § 3730(d)(4), is a *subpart* of the very statute that confers jurisdiction over an FCA action, i.e., § 3730 (and even more broadly, the FCA itself). *See* 31 U.S.C. §3730 ("Civil action for false claims."). Accordingly, the concern present in *Branson* is simply not present here.[2] Indeed, Congress enacted § 3730(d)(4) *at the same time* that it enacted the public disclosure bar at § 3730(e)(4) and clearly intended these two subparts of § 3730 to complement each other. *See* 99 Sen. Rep. 345, *supra*. Thus, given the plain language of the statute and the purpose of § 3730(d)(4)—to deter qui tam relators who have no first-hand

---

[2] The Ninth Circuit acknowledged in *Branson* that "there are some circumstances in which attorneys' fees or costs may be imposed even where the court proves to be without subject matter jurisdiction" and identified several examples, including Rule 11. *Branson*, 62 F.3d at 293 & n.10. Accordingly, even the Ninth Circuit recognizes that *Branson* will not apply in every case dismissed for lack of subject matter jurisdiction. This is such a case.

DEFENDANT QWEST'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES

knowledge of fraudulent conduct from filing frivolous lawsuits in pursuit of a substantial bounty—the Court should decline to extend *Branson* to the FCA.[3]

### C. Qwest's Attorneys' Fees and Expenses are Reasonable

A prevailing party's attorneys' fees are calculated using the lodestar method. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). Under the loadstar calculation, the court must determine a reasonable hourly rate and then multiply that rate by the number of hours reasonably expended on the litigation. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). There is a strong presumption that the lodestar figure represents a reasonable fee. *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994).

In determining a fee's reasonableness, courts must consider, inter alia: (i) the number of hours reasonably expended by counsel; (ii) the propriety of the hourly rate requested by counsel; (iii) the skill and experience of counsel given the legal services at issue; (iv) the results obtained; and (v) whether the hours requested are excessive, redundant, or otherwise unnecessary. *Green v. Baca*, 225 F.R.D. 612, 614 (C.D. Cal. 2005) (citing *Hensley*, 461 U.S. at 433-35). In exercising its discretion in setting a fee, a court must examine "the reasonableness of the fee in light of the totality of the circumstances." *Id.* at 615 (quotations omitted).

#### 1. The Number of Hours Expended Are Reasonable

Qwest's attorneys billed 220.4 hours on this matter. These hours are reflected in contemporaneous time records that Qwest's counsel maintained electronically and were invoiced to Qwest on a monthly basis. Taylor Decl. ¶¶ 3, 5-6. This amount is reasonable, considering,

---

[3] Additionally, the Ninth Circuit stated that a dismissal for lack of subject matter jurisdiction typically does not adjudicate the merits of the underlying claim. *See Branson*, 62 F.3d at 293. But that is not the case with the FCA. Under the FCA a dismissal under the public disclosure provision is functionally with prejudice because the relator cannot bring the same claim on the same facts again in any court. *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 951 (1997) (the public disclosure provision of the FCA "speaks not just of the power of a particular court to but to the substantive rights of the parties as well."). Thus, dismissal under the public disclosure bar alters the legal relationship of the parties, and where, as here, a defendant successfully dismisses the relator's claim pursuant to the public disclosure bar, the defendant is a prevailing party. *See, e.g., Cooper & Assocs.*, 422 F. Supp. 2d 225, 238-39 (defendants were "prevailing parties" following dismissal under the public disclosure bar); *Atkinson*, 528 F. Supp. 2d at 542 (same).

DEFENDANT QWEST'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES

among other things: the interests of Qwest in dismissing Relator's frivolous claims of fraud against it, the nature of the issues, the research and writing involved in deposing Relator (required to ferret out his lack of knowledge) and the motions to dismiss, the fact that the work was performed by attorneys with experience appropriate to the tasks, and the results obtained. A review of the invoices demonstrates that the hours were generally expended on legal research, discovery, and fact development; drafting two motions to dismiss and attending two oral arguments; and deposing Relator (a total of 194.7 hours was expended on these material tasks):

- Draft Motion to Dismiss Original Complaint, Including Communications, Legal Research Regarding Motion to Dismiss, and Oral Argument: 60 hours;

- Draft Motion to Dismiss Amended Complaint, Including Opposition to Request to File Sur-Reply, Communications, Legal Research Regarding Motion to Dismiss, and Oral Argument: 42 hours;

- Deposition of Relator John C. Prather, Including Communications, Preparation, and Response to Motion for a Protective Order Regarding Relator's Deposition: 18.9 hours;

- Legal Research and Analysis Regarding Relator's Claims, Including Fact Development, Witness Interviews, and Communications with Relator's Counsel Regarding Deficiencies in Pleadings: 45.2 hours; and

- Discovery-Related Tasks, Including Document Production, Analysis of Access to Government Confidential Documents, and Preparation of Case Management Schedule and Conference: 28.6 hours.

The remaining 25.7 hours were expended on a variety of tasks, including communications with other defense counsel, and preparing filings such as counsel's notice of appearance, and support provided by other attorneys (and paralegal). *See* Taylor Decl. ¶¶ 1, 3-5, Ex. A.

## 2. The Hourly Rates Are Reasonable

As set forth in the Declaration of David F. Taylor filed concurrently herewith, Qwest incurred $115,445.06 in attorneys' fees and $1,881.73 in expenses in this matter. Taylor Decl. ¶¶ 1-2. Qwest respectfully submits that the fees and costs incurred in defending Relator's frivolous claims against it are reasonable. Qwest's counsel billed its services at its established rates, which rates are comparable to the prevailing market rates in the markets in which Qwest's counsel practice for "similar work performed by attorneys of comparable skill, experience, and

reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1201-11 (9th Cir. 1986); Taylor Decl. ¶ 5.

The time devoted to the matter was, moreover, reasonable, especially in light of the stakes for Qwest. The FCA imposes treble damages and a $5,500 to $11,000 civil penalty per claim upon a judicial determination that a defendant submitted false claims. Given the number of false claims allegedly submitted in this case, the potential liability was in the tens of millions (or more) of dollars. Given the gravity of the allegations and the potential liability, Qwest rightfully sought experienced counsel with FCA litigation experience. For all these reasons, Qwest respectfully submits that the fees and expenses incurred in this matter are reasonable.

## IV.    CONCLUSION

Qwest respectfully requests that it be awarded the total amount of $117,326.79, which reflects the actual attorneys' fees and expenses incurred by Qwest in defending Relator's legally and factually frivolous claims against it.

DATED:  November 19, 2013           **PERKINS COIE LLP**

By: /s/ David F. Taylor
David F. Taylor

Attorneys for Defendant Qwest
Communications International Inc.

# CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses indicated on the Court's Electronic Mail Notice List.

- **Sheila Anil Gogate Armbrust**
  sarmbrust@sidley.com,grodriguez@Sidley.com,kcochran@Sidley.com
- **Douglas Aaron Axel**
  daxel@sidley.com
- **John Gerard Balestriere**
  john.balestriere@balestriere.net,thomas.martecchini@balestriere.net,ecf@balestriere.net,jillian.mcneil@balestriere.net
- **Edward Coleman Barnidge**
  ebarnidge@wc.com
- **Jonathan Hugh Blavin**
  jonathan.blavin@mto.com,rachel.mullinax@mto.com
- **Jennifer Yvette McClory Hamilton**
  Jennifer.McClory@doj.ca.gov
- **David James Miclean**
  DMiclean@MicleanGleason.com,dmiclean@micleangleason.com,Smurphy@micleangleason.com
- **Kristin Linsley Myles , Esq**
  kristin.myles@mto.com,maureen.lechwar@mto.com
- **Richard John O'Brien , Jr**
  robrien@sidley.com,efilingnotice@sidley.com,sfdocket@sidley.com
- **Joshua A. Reiten**
  jreiten@perkinscoie.com,ecarmichael@perkinscoie.com,docketsflit@perkinscoie.com
- **Breena Michelle Roos**
  broos@perkinscoie.com,mwalsh@perkinscoie.com
- **Jerome Cary Roth**
  Jerome.Roth@mto.com,susan.ahmadi@mto.com
- **Steven J. Saltiel**
  Steven.Saltiel@usdoj.gov,Manik.Bowie@usdoj.gov
- **Anand Singh**
  anand.singh@sidley.com
- **State of New York**
  randall.fox@ag.ny.gov
- **Benjamin Michael Stoll**
  bstoll@wc.com
- **Laura K Sullivan**
  Laura.Sullivan@mto.com,Sandra.Chao@mto.com

DEFENDANT QWEST'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Dane H. Butswinkas
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Kimberly A. Dunne
Sidley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013

R. Hackney Wiegmann
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005


DATED: November 19, 2013                    **PERKINS COIE LLP**

By: /s/ David F. Taylor
David F. Taylor

Attorneys for Defendant Qwest
Communications International Inc.

DEFENDANT QWEST'S MOTION FOR
ATTORNEY'S FEES AND EXPENSES