IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. PRATHER, on behalf of himself and the UNITED STATES OF AMERICA and the several states of CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, MASSACHUSETTS, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, RHODE ISLAND, VIRGINIA, as well as the DISTRICT OF COLUMBIA,<br><br>Plaintiff/Relator,<br><br>v.<br><br>AT&T INC., CELLCO PARTNERSHIP d/b/a VERIZON COMMUNICATIONS, QWEST COMMUNICATIONS INTERNATIONAL, INC., and SPRINT NEXTEL CORP.,<br><br>Defendants. | No. 09-cv-2457-CRB<br><br>**ORDER DENYING MOTIONS FOR ATTORNEYS' FEES** |

In this *qui tam* action, Relator John C. Prather ("Relator") alleges that Defendants AT&T, Inc., Cellco Partnership d/b/a Verizon Communications ("Verizon"), Qwest Communications International, Inc. ("Qwest"), and Sprint Nextel Corp. defrauded law enforcement agencies by overcharging for electronic surveillance services in violation of the False Claims Act ("FCA"). The Court dismissed Plaintiff's First Amended Complaint ("First Am. Compl.") on November 5, 2013. Defendants Qwest and Verizon (collectively "Defendants") now move for attorneys' fees and expenses. Upon consideration of the

motions, the oppositions thereto, and the arguments of the parties at a hearing, the Court DENIES Defendants' motions.

**I. BACKGROUND**

In 1994, Congress enacted the Communications Assistance to Law Enforcement Agencies Act ("CALEA") to ensure that law enforcement agencies could rely on telecommunications carriers ("Telecoms") to assist in the electronic surveillance of digital telephone technologies. See First Am. Compl. ¶ 54 (dkt. 86). Under CALEA, Telecoms may only charge "reasonable expenses" incurred in providing electronic surveillance and are not permitted to offset their implementation costs when charging for individual wiretaps. Id. ¶ 5.

On March 10, 2004, the United States Department of Justice, Federal Bureau of Investigation, and Drug Enforcement Agency submitted a joint petition to the Federal Communications Commission ("FCC")–the administrative body in charge of implementing CALEA–asking the FCC to resolve outstanding issues related to CALEA. See Joint Petition for Expedited Rulemaking at 1 ("Joint Petition") (dkt. 63-3). In response to the Joint Petition, the FCC initiated rule-making proceedings and invited comments on CALEA. See 2004 FCC Request for Comment on Proposed Rulemaking (dkt. 86-3).

Relator John C. Prather worked for the Office of the New York Attorney General from 1999 to 2008. See First Am. Compl. ¶¶ 40, 37. In response to the FCC's request for comment, the Attorney General's Office attached an affidavit by Relator addressing the issue of overcharging. See April 12, 2004 Comment on Proposed Rulemaking (dkt. 86-1). In 2006, the FCC issued its rule, explaining that Telecoms "bear responsibility for CALEA development and implementation costs." See March 12, 2006 FCC 2nd Report and Order at 186 (dkt. 86-2). The FCC made no finding of culpability (one way or the other).

When the government failed to pursue an action against Telecoms, Relator brought this *qui tam* action, alleging that Defendants fraudulently overcharged "the Federal government as well as various State and City governments" for electronic surveillance

2

1  services in violation of the FCA. See First Am. Compl. ¶¶ 2, 145-50. On November 5,
2  2013, the Court dismissed Relator's First Amended Complaint for lack of subject matter
3  jurisdiction, finding that Relator failed to establish by a preponderance of the evidence that
4  he is an original source under 31 U.S.C. § 3730(e)(4)(B). See generally Order (dkt. 159).
5  Defendants now move for attorneys' fees and expenses. See generally Motions for
6  Attorneys' Fees (dkts. 166, 168).

**II. LEGAL STANDARD**

In a *qui tam* action in which the government declines to intervene, the FCA allows a court to award reasonable attorneys' fees and expenses to a prevailing defendant if "the action [is] clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment." See 31 U.S.C. § 3730(d)(4). The Ninth Circuit has described that an action is "clearly frivolous" when "the result is obvious or the appellant's arguments of error are wholly without merit." See Pfingston v. Ronan Eng'g Co., 284 F.3d 999, 1006 (9th Cir. 2002). An action is "'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." Id. (citing Patton v. County of Kings, 857 F.2d 1379, 1381 (9th Cir. 1988)).

**III. DISCUSSION**

**A.   Defendants Are Not Entitled To Fees Under The FCA**

Attorneys' fees for prevailing defendants under the FCA are "reserved for rare and special circumstances." Pfingston v. Ronan Eng'g Co., 284 F.3d at 1006-07.[1] Courts "must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be airtight." See Warren v. City of Carlsbad, 58 F.3d 439, 444

---

[1] The standard for awarding attorneys' fees to prevailing defendants under the FCA mirrors that under 42 U.S.C. § 1988. See Pfingston, 284 F.3d at 1005-06 n.4 (citing S.Rep. No. 99-345, at 29 ("[The FCA] standard reflects that which is found in section 1988 of the Civil Rights Attorneys Fees Awards Act of 1976")). Accordingly, "[section] 1988 cases are instructive in deciding whether fees are appropriate under the False Claims Act." Pfingston, 284 F.3d at 1005-06.

United States District Court
For the Northern District of California

(9th Cir. 1995) (internal citations omitted). Additionally, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." See Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421-22 (1978).

The Ninth Circuit has explained that courts may deny attorneys' fees where the "circumstances furnish some basis, albeit somewhat tenuous, for one to theorize" a claim, even if "evidence to support such a theory failed to materialize, and summary judgment was properly granted in favor of the defendants." See Karam v. City of Burbank, 352 F.3d 1188, 1196 (9th Cir. 2003) (reversing a fee award to prevailing defendants under section 1988); see also Boyd v. Accuray, Inc., No. 11-1644, 2012 WL 4936591, at *4 (N.D. Cal. Oct. 17, 2012) (denying the defendant's motion for attorneys' fees under the FCA after finding that "Plaintiff's claim, though weak and ultimately unsuccessful, was not wholly lacking in legal merit").

Here, Relator's claim, though ultimately unsuccessful, does not demonstrate a complete lack of factual or legal merit to rise to the level of "clearly frivolous" under the FCA. Indeed, the parties litigated the issue of subject matter jurisdiction for many months, and the Court carefully considered the parties' briefs and arguments at two hearings before dismissing Relator's case in November 2013. See Order at 1-2. In making its decision, the Court did not find the threshold issue of whether Relator constituted an original source to be clear or unequivocal. See September 13, 2013 Transcript of Proceedings at 3:19-21 (dkt. 158) (explaining that Relator's action presented an "interesting and perhaps somewhat difficult question as to whether or not the relator is entitled to be compensated as a *qui tam* action"). Although Relator lacked sufficient factual support to establish subject matter

4

jurisdiction, the result was not so obvious as to meet the "clearly frivolous" standard required for a fee award under the FCA. See Pfingston, 284 F.3d at 1006.[2]

Further, Defendants fail to show that Relator's action was "clearly vexatious" or "brought primarily for purposes of harassment" as there is no evidence that Relator pursued this litigation merely to annoy or embarrass Defendants. Conversely, Relator asserts that he brought the action "in an attempt to bring to light the fraud of the telecommunications carriers, and to help to insure that the Law Enforcement Agencies would not be hindered in their investigation of crime." See Relator's Opp'n to Verizon's Motion at 14 (dkt. 181). Absent any evidence of improper purpose, Defendants cannot demonstrate that Relator's action meets the "clearly vexatious" or "brought primarily for the purposes of harassment" standards warranting a fee award. As Defendants are unable to show that Relator's action was "clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment," the Court DENIES attorneys' fees and expenses under the FCA.

### B. Defendants Are Not Entitled To Fees Under The Court's Inherent Powers Or Rule 11

Defendants argue that the Court may also award fees under its inherent powers. See Verizon's Motion at 5 (dkt. 168); Qwest's Motion at 8 (dkt. 166). Qwest separately argues that the Court should award fees pursuant to Rule 11. See Qwest's Motion at 8-9. Defendants fail to show that they are entitled to fees under either of these standards.

---

[2] Defendants cite several non-binding cases for the proposition that courts have "often" awarded fees where a plaintiff lacks any factual support for his claims. See Qwest's Motion at 9. These authorities are not persuasive for two reasons. First, it is inaccurate to state that Relator proffered "no factual support whatsoever" for his claims against Defendants. Although there has been no independent finding of fraud or wrongdoing, the FCC proceedings support Relator's contention that Telecoms did include capital and implementation costs in their wiretap provisioning fees, resulting in "an improper shifting of the CALEA allocated cost burden from industry to law enforcement not authorized or contemplated by CALEA." See Joint Petition for Expedited Rulemaking at 67-69. Second, Ninth Circuit precedent stresses that courts should use caution in awarding fees to prevailing defendants where, as here, there is even a "somewhat tenuous" basis for a plaintiff to theorize a claim. See Karam, 352 F.3d at 1196.

### 1. The Court's Inherent Powers

Under its inherent powers, a court may sanction in the form of attorneys' fees when the losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." See Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648 (9th Cir. 1997) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975)). However, "because of their very potency, inherent powers must be exercised with restraint and discretion." See B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1108 (9th Cir. 2002) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)).

Before awarding sanctions, a court must explicitly find that an attorney's conduct "constituted or was tantamount to bad faith." See Primus, 115 F.3d at 648 (internal citations omitted). This requirement is particularly important when a court uses its inherent powers to award attorneys' fees. Id. The Ninth Circuit has described that the bad faith standard "sets a high threshold." Id. at 649. Bad faith exists where "an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." See In re Keegan Mgmt. Co., Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996) (internal citations omitted). In addition, a party demonstrates bad faith by delaying litigation or disrupting enforcement of a court order. See Leon v. IDX Systems Corp., 464 F.3d 951, 961 (9th Cir. 2006) (quoting Primus, 115 F.3d at 649)).

Defendants fail to show that Relator's or his counsel's conduct "constituted or was tantamount to bad faith." Id. at 649. Verizon mentions the Court's inherent powers to award fees but does not provide any explanation as to how Relator or his counsel acted in bad faith. See Verizon's Motion at 1, 5. Qwest contends that Relator's conduct demonstrates bad faith because he "knowingly or recklessly raise[d] a frivolous argument" in asserting that he was an original source of the alleged fraud. See Qwest's Motion at 11 (quoting In re Keegan, 78 F.3d at 436). To support this argument, Qwest relies on a non-binding case where a court awarded sanctions under its inherent powers because the *qui tam* plaintiff previously lost thirteen lawsuits in his individual capacity against the same

6

1 defendant. Id. (citing Pub. Interest Bounty Hunters v. Bd. of Governors of the Fed. Reserve
2 Sys., 548 F. Supp. 157, 160-62 (N.D. Ga. 1982)). This authority is inapplicable here, as
3 Relator's conduct lacks the vexatiousness and objective bad faith that warranted sanctions in
4 that case. Therefore, Defendants have not met the "high threshold" required to establish bad
5 faith. Primus, 115 F.3d at 649.

### 2. Rule 11

Rule 11 permits courts to sanction "attorneys or parties who submit pleadings for an improper purpose or that contain frivolous arguments or arguments that have no evidentiary support." See Warren, 58 F.3d at 444. To award sanctions under Rule 11, the court must determine whether a Rule 11 violation has occurred. See Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1177 (9th Cir. 1996).

Where a party moves for a Rule 11 sanction on a complaint, courts must determine "(1) whether the complaint is legally and factually 'baseless' from an objective perspective, and (2) if the attorney has conducted a 'reasonable and competent inquiry.'" See Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002) (internal citations omitted) (affirming Rule 11 sanctions where counsel consistently attempted to circumvent local rules, "expand[ed] the scope of an already frivolous suit," and failed "to perform even minimal due diligence"); compare Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (affirming Rule 11 sanctions where counsel "conducted absolutely no inquiry before filing" the complaint); with Warren, 58 F.3d at 444 (reversing Rule 11 sanctions and explaining that even if the district court correctly found insufficient evidence to survive summary judgment since "the plaintiff submitted no evidence . . . other than his personal opinion," that did not make plaintiff's claims clearly frivolous or "factually unfounded for purposes of Rule 11").

Here, Qwest relies on Relator's deposition statements to support its argument that Relator filed a frivolous lawsuit against Qwest specifically. See Qwest's Motion at 4.[3] Qwest argues that "[a]t no time, and in no pleading, were Relator's claims against Qwest based on anything other than Qwest's role as a telecommunications provider." Id. at 9 (citing Relator's Dep. at 241:1-4). However, Relator's deposition later disproves this allegation. See Relator's Opp'n to Qwest's Motion at 7-8 (dkt. 182) (citing Relator's Dep., Balestriere Declaration, Ech. E). When Relator worked at the Attorney General's office, he handled wiretaps "where the carrier involved was Qwest." See Relator's Dep. at 268:13-22. In addition, when asked how and why he chose the four defendants named in this action, Relator responded that "[those are the four companies that we had done eavesdropping with when I was at OCT. Those charges, as I recall, were more or less in the same general vicinity." Id. at 269:1-10.

In addition, Relator's counsel conducted an inquiry into Defendants' practices prior to filing Relator's complaint, which is distinguishable from the attorneys in Christian and Townsend who failed to conduct even a minimal inquiry before initiating the action. See Relator's Opp'n to Qwest's Motion at 7-9. Given that Relator knew Qwest, like the other Defendants, provides wiretaps to law enforcement agencies, and that some Telecoms did improperly shift CALEA-implementation costs to law enforcement agencies,[4] Relator had a

---

[3] Qwest alleges Relator made the following admissions at deposition: "Relator does not know of anything done by Qwest to defraud any federal or state agency. Taylor Decl., Ex. F (Relator's Dep. at 243:12-17). Relator has "no knowledge of any particulars" supporting his claims against Qwest. Id. at 240:4-8. Relator has no knowledge of anything that Qwest did to conspire with any other defendant. Id. at 241:13-24. Relator is not aware of any facts pled in his Amended Complaint showing any wrongdoing by Qwest. Id. at 241:1-4. Relator has no knowledge of the expenses that Qwest incurred in providing wiretaps. Id. at 242:21-25. Relator has never even seen a single invoice from Qwest. Id. at 244:14-23. Relator does not even know whether the governments he purports to represent ever paid Qwest for wiretaps. Id. at 237:14-239:6. Relator included Qwest as a defendant in this action only because his attorney decided to do so, a decision that Relator never questioned and which he had no information to support. Id. at 243:6-17." Qwest's Motion at 4-5.

[4] See Joint Petition for Expedited Rulemaking, *supra* note 2, at 67-69.

United States District Court
For the Northern District of California

1 good faith basis for including Qwest as a defendant.[5] Although Relator failed to support his
2 claim with sufficient facts to survive a motion to dismiss, like Warren, Relator's claims are
3 not so "factually unfounded" as to warrant sanctions under Rule 11.

4 Moreover, this Court has noted that public policy would be "entirely undermined if a
5 plaintiff in [this] situation were forced to pay attorney[s'] fees to the defense upon a finding
6 that a good faith and not unreasonable claim lacked merit." See Levine v. City of Alameda,
7 No. 04-1780, 2006 WL 1867532, at *8 (N.D. Cal. July 5, 2006) (denying attorneys' fees to a
8 prevailing defendant under section 1988).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motions for Attorneys' Fees and Expenses.

**IT IS SO ORDERED.**

Dated: February 10, 2014

CHARLES R. BREWER
UNITED STATES DISTRICT JUDGE

---

[5] In addition, Relator voluntarily dismissed all claims against former defendant TDS after it produced documents showing it did not engage in the fraudulent conduct alleged by Relator. See Relator's Opp'n to Qwest's Motion at ii. Relator provided all Defendants with this opportunity to produce documents in exchange for dismissal, and no remaining Defendant, including Qwest, has offered any documentation. Id. While Relator's offer to Defendants does not necessarily speak to Relator's good faith basis in initiating a lawsuit against Qwest, it does speak to Relator's intention to prosecute only those Telecoms that have potentially engaged in the alleged misconduct.

9